## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
Richmond Division

MICHAEL FRAZIER,                    :
CHARDONNEY VICK,          :
KIERA ROSS,                       :
JARROD COLLIER,            :
CHERYL GLENN,              :
SHANTELLE GREGORY,     :
SHAVON SMITH,              :
BRITTANY HARRIS,         :
NICHOLAS NORTHINGTON, :    Civil Action No.: ___3:17cv030_____
ALEXANDRA BOOKER,       :
DONALD BRASHER,         :
NICOLE BOLDEN,           :
SHEROD DAVIS,             :
JAUNITRA SMITH,          :
SHAMAAR MACK,           :
RUCHANDA GILLIAM,      :
CHRISTOPHER CAMPBELL,   :
AMILIA THOMAS,  and        :
PAUL VENZOR,             :
*for themselves and on behalf of all*  :
*similarly situated individuals,*     :
                           :
       Plaintiffs,           :
                           :
 v.                         :
                           :
FIRST ADVANTAGE BACKGROUND :
SERVICES CORP.,           :
                           :
Serve:  Corporation Service Company :
       Bank of America Center, 16th Fl. :
       1111 East Main Street     :
       Richmond, VA 23219      :
                           :
           Defendant.        :

## CLASS ACTION COMPLAINT

The Plaintiffs, Michael Frazier, Chardonney Vick, Kiera Ross, Jarrod Collier, Cheryl

Glenn, Shantelle Gregory, Shavon Smith, Brittany Harris, Nicholas Northington, Alexandra

Booker, Donald Brasher, Nicole Bolden, Sherod Davis, Jaunitra Smith, Shamaar Mack, Ruchanda

Gilliam, Christopher Campbell, Amilia Thomas, and Paul Venzor on behalf of themselves and all similarly situated individuals, allege the following claims against Defendant, First Advantage Background Services Corporation:

## INTRODUCTION

1.      This action is brought under the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681a–x. The FCRA imposes several important procedural requirements for credit reporting agencies ("CRAs"), like First Advantage Background Services Corporation ("First Advantage"), that sell employee and job applicant background checks and consumer reports.

2.      Plaintiffs are all prior class members who pursued and settled FCRA claims against Wells Fargo Bank, N.A. ("Wells Fargo"), in a case before this Court styled *Manuel v. Wells Fargo National Association*, No. 3:14-cv-00238-REP-DJN (E.D. Va.). First Advantage performed all of the background checks for Wells Fargo that were at issue in *Manuel*. However, as part of the *Manuel* settlement, the class members retained their right to claims against First Advantage.

3.      As established in this Court's *Manuel* summary judgment decision, First Advantage was integral in Wells Fargo's hiring process:

> Wells Fargo refers individuals subject to criminal background screenings to a website operated by First Advantage Background Services Corporation. Such individuals use this website to complete a number of application forms, including disclosure and authorization forms related to the criminal background screening. After all application forms are completed First Advantage Background Services Corporation generates the criminal background screening report and provides its findings to Wells Fargo. Specifically, First Advantage enters the criminal background screening report into a database to which both First Advantage and Wells Fargo have access.

> * * *

> The background check process was conducted as follows: all current and prospective employees subject to a background check were asked to visit First Advantage's website. Once on the website, the individuals filled out several forms. One of these forms was a disclosure and authorization form that contained the following release language: "You hereby release the Company, First Advantage

and all Third Parties to the full extent permitted by law, from any liability or claims arising from retrieving and/or reporting information concerning you and/or from using the Report for employment purposes."

Once the applicant completed the forms, First Advantage generated a background check on the individual and forwarded the results to Wells Fargo by uploading the results into a database that Wells Fargo and First Advantage could both access. Members of Wells Fargo's Background Screening Compliance Team then reviewed these results and determined whether the applicant appeared to be ineligible for employment based on the contents of the background check. That determination was entered into the shared database in the form of a code. Although Wells Fargo refers to this as a "preliminary" determination, Manuel correctly points out that it was the only affirmative step taken by Wells Fargo in the process. According to Manuel, this was a final hiring decision.

Once the code was entered into the database, First Advantage would generate and send a notice titled "Pre–Adverse Action Notice", a summary of the consumer's FCRA rights, and the applicant's background check to that applicant. The applicant then had five business days after that notice was mailed to dispute the report. If no dispute or appeal was made, First Advantage's system automatically generated what it called an "Adverse Action Notice" and sent it to the applicant. At that point, the process was complete.

*Manuel v. Wells Fargo Nat'l Ass'n*, 123 F. Supp. 3d 810, 814–15 (E.D. Va. 2015).

4.      The Plaintiffs and putative class members all applied for jobs at Wells Fargo. Wells Fargo obtained a background check on each of the Plaintiffs and putative class members from First Advantage. The application process was completed using First Advantage's Internet portal.

5.      First Advantage provided all relevant content for the portal, including the FCRA-mandated disclosure form that consumers must sign to permit someone like Wells Fargo to obtain their employment-purposed consumer report. The disclosure form contained prohibited language designed to induce applicants into waiving any rights they have against Wells Fargo and First Advantage, which this Court and others have concluded violates the FCRA.

6.      When CRAs, like First Advantage, provide consumer reports for employment purposes, they must obtain a certification from employers which states that the employer has properly disclosed their intent to obtain an applicant's consumer report to the job applicant. First

Advantage provided Wells Fargo with a disclosure form that violates the FCRA on its face; therefore, First Advantage knew or should have known that the certification it obtained from Wells Fargo was ineffective.

7.      In connection with their employment applications, Wells Fargo obtained the Plaintiffs' and putative class members' consumer background reports from Defendant First Advantage. The First Advantage reports contained public record information likely to have an adverse effect on Plaintiffs' and putative class members' ability to obtain employment. However, First Advantage failed to notify the Plaintiffs and putative class members at the time it provided Wells Fargo with the reports.

8.      First Advantage then used the consumer reports and "adjudicated" Plaintiffs and the putative class members as eligible or ineligible for employment based on criteria that Wells Fargo provided. After receiving the adjudication results from First Advantage, Wells Fargo entered its final hiring decision into a computer system to which both entities share access.

9.      As set forth more fully below, First Advantage failed to: (a) obtain a valid certification from Wells Fargo that complied with the employment-specific disclosure requirements of the FCRA, namely that Wells Fargo would provide a clear and conspicuous written disclosure to the Plaintiffs and putative class members that his or her consumer report may be obtained for employment purposes in a document that consisted solely of the disclosure; (b) provide each Plaintiff and putative class member with at-the-time notice that it was furnishing  his or her consumer report for employment purposes to an employer,  which contained information likely to have an adverse effect on the consumer's ability to obtain employment; and (c.) provide the Plaintiffs and putative class members with notice that it intended to take an adverse action

4

against them based in whole or in part on the information contained in the consumer report at least five days prior to taking the adverse action.

## JURISDICTION & VENUE

10.    The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

11.    Plaintiffs all reside within this judicial District.

12.    Defendant does business and maintains the office of its registered agent in Richmond, Virginia, which is in this District and Division.

13.    Defendant maintains its records electronically and, therefore, has access to them in this District and Division.

## PARTIES

14.    Plaintiffs are all natural persons and at all times relevant to this Complaint, each was a "consumer" as defined in the FCRA.

15.    Defendant, First Advantage, is a CRA with its principal place of business in Atlanta, Georgia. At all times relevant to this Complaint, First Advantage operated as a "consumer reporting agency" as defined and governed by the FCRA. It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties, including within this District and Division.

16.    At all times relevant hereto, First Advantage also was a "user" of the Plaintiffs' and putative class members' consumer reports, as governed by the FCRA.

## ALLEGATIONS OF COMMON FACTS

17.    The following facts are relevant and attributable to each of the Plaintiffs and putative class members.

18.     Non-party Wells Fargo, the defendant in the *Manuel* action, obtained consumer reports about the Plaintiffs and putative class members during its hiring process.

19.     Wells Fargo and First Advantage are not related by common ownership or affiliated by corporate control. Furthermore, the consumer reports that First Advantage provided to Wells Fargo were not communicated among persons related by common ownership or affiliated by corporate control.

20.     Wells Fargo used (and still uses) Defendant First Advantage to generate consumer reports for its job applicants, obtain consumer authorization for the reports as required under 15 U.S.C. § 1681b(b)(2), disclose the intended use of the reports pursuant to the same section, and provide the required notice under 15 U.S.C. §§ 1681b(b)(3) and 1681m.

21.     During the relevant class period and as to all Plaintiffs and putative class members, Wells Fargo relied entirely upon First Advantage for the notice and authorization form mandated by 15 U.S.C. § 1681b(b)(2).  Wells Fargo's standard policy was to refer new applicants to the First Advantage portal, where the consumer was required to authorize the use of his or her First Advantage report by signing an electronic version of First Advantage's standard form.

22.     First Advantage's standard form does not comply with the FCRA. For example, instead of being a clear and conspicuous disclosure contained in a stand-alone document, the Defendant's electronic disclosure form attempts to eviscerate the consumer's right to statutory legal remedies when the FRCA is violated.  The liability waiver language attempts to take clear "advantage" of the use of consumer information, leaving consumers with no legal power over the CRA, the information generated by the CRA, or how the information is potentially used against the consumer.

23.     All consumers who applied for work at Wells Fargo using the First Advantage portal signed (or electronically approved) the disclosure form.

24.     Because First Advantage knew that its disclosure form violated the FCRA, it therefore knew or should have known that Wells Fargo's certification of compliance with the FCRA's disclosure requirements was void. First Advantage therefore violated (and continues to violate) the FCRA with each background report it supplied to Wells Fargo.

25.     Defendant routinely performs background checks on job applicants for clients like Wells Fargo, and those background checks often contain public-record information that is likely to have an adverse effect on consumers' ability to obtain employment.

26.     Defendant offers the additional service of adjudication of applicants, in which it compares the results of its just-performed background check against the employer's hiring criteria and attaches to those results a "score," such as "eligible" or "ineligible" for employment.

27.     Defendant is therefore a "user" of consumer reports as that term is defined in the FCRA and decisions like *Goode v. LexisNexis Risk & Information Analytics Group, Inc.*, 848 F. Supp. 2d. 532 (E.D. Pa. 2012), in which the court concluded that a CRA is a "user" under the statute when it performs adjudications. Defendant was aware of the *Goode* decision not only because it follows FCRA decisions when attempting to comply with the statute, but also because that decision was rendered against LexisNexis, an entity that First Advantage purchased in early 2013.

## FACTS AS TO MICHAEL FRAZIER

28.     On or around June 3, 2014, Plaintiff Frazier applied for a job with Wells Fargo.

29.     Notwithstanding the failure of its disclosure form set forth above, in or around June 2014, Wells Fargo ordered Plaintiff Frazier's employment-purposed background report from First Advantage.

30.     Upon information and belief, First Advantage supplied Plaintiff Frazier's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

31.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Frazier contained adverse public record information.

32.     First Advantage did not provide Plaintiff Frazier with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

33.     Upon information and belief, First Advantage completed the consumer report in June 2014, and determined that Plaintiff Frazier could not be hired under Wells Fargo's hiring requirements based on his consumer report. As a result, Wells Fargo refused to hire Plaintiff Frazier.

## FACTS AS TO CHARDONNEY VICK

34.     On or around July 7, 2014, Plaintiff Vick applied for a job with Wells Fargo.

35.     Notwithstanding the failure of its disclosure form set forth above, in or around July 2014, Wells Fargo ordered Plaintiff Vick's employment-purposed background report from First Advantage.

36.     Upon information and belief, First Advantage supplied Plaintiff Vick's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

37.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Vick contained adverse public record information.

38.     First Advantage did not provide Plaintiff Vick with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

39.     Upon information and belief, First Advantage completed the consumer report in July 2014, and determined that Plaintiff Vick could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Vick.

## FACTS AS TO KIERA ROSS

40.     On or around July 31, 2014, Plaintiff Ross applied for a job with Wells Fargo.

41.     Notwithstanding the failure of its disclosure form set forth above, in or around August 2014, Wells Fargo ordered Plaintiff Ross's employment-purposed background report from First Advantage.

42.     Upon information and belief, First Advantage supplied Plaintiff Ross's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

43.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Ross contained adverse public record information.

44.     First Advantage did not provide Plaintiff Ross with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

45.     Upon information and belief, First Advantage completed the consumer report in August 2014, and determined that Plaintiff Ross could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Ross.

## FACTS AS TO JARROD COLLIER

46.     On or around September 16, 2014, Plaintiff Collier applied for a job with Wells Fargo.

47.     Notwithstanding the failure of its disclosure form set forth above, in or around October 2014, Wells Fargo ordered Plaintiff Collier's employment-purposed background report from First Advantage.

48.      Upon information and belief, First Advantage supplied Plaintiff Collier's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

49.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Collier contained adverse public record information.

50.     First Advantage did not provide Plaintiff Collier with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

51.     Upon information and belief, First Advantage completed the consumer report in October 2014, and determined that Plaintiff Collier could not be hired under Wells Fargo's hiring

requirements based on his consumer report. As a result, Wells Fargo refused to hire Plaintiff Collier.

## FACTS AS TO CHERYL GLENN

52.     On or around September 19, 2014, Plaintiff Glenn applied for a job with Wells Fargo.

53.     Notwithstanding the failure of its disclosure form set forth above, in or around October 2014, Wells Fargo ordered Plaintiff Glenn's employment-purposed background report from First Advantage.

54.     Upon information and belief, First Advantage supplied Plaintiff Glenn's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

55.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Glenn contained adverse public record information.

56.     First Advantage did not provide Plaintiff Glenn with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

57.     Upon information and belief, First Advantage completed the consumer report in October 2014, and determined that Plaintiff Glenn could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Glenn.

## FACTS AS TO SHANTELLE GREGORY

58.     On or around November 21, 2014, Plaintiff Gregory applied for a job with Wells Fargo.

59.     Notwithstanding the failure of its disclosure form set forth above, in or around December 2014, Wells Fargo ordered Plaintiff Gregory's employment-purposed background report from First Advantage.

60.      Upon information and belief, First Advantage supplied Plaintiff Gregory's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

61.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Gregory contained adverse public record information.

62.     First Advantage did not provide Plaintiff Gregory with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

63.     Upon information and belief, First Advantage completed the consumer report in December 2014, and determined that Plaintiff Gregory could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Gregory.

## FACTS AS TO SHAVON SMITH

64.     On or around April 8, 2015, Plaintiff Shavon Smith applied for a job with Wells Fargo.

65.     Notwithstanding the failure of its disclosure form set forth above, in or around May 2015, Wells Fargo ordered Plaintiff Shavon Smith's employment-purposed background report from First Advantage.

66.     Upon information and belief, First Advantage supplied Plaintiff Shavon Smith's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

67.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Shavon Smith contained adverse public record information.

68.     First Advantage did not provide Plaintiff Shavon Smith with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

69.     Upon information and belief, First Advantage completed the consumer report in May 2015, and determined that Plaintiff Shavon Smith could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Shavon Smith.

## FACTS AS TO BRITTANY HARRIS

70.     On or around April 9, 2015, Plaintiff Harris applied for a job with Wells Fargo.

71.     Notwithstanding the failure of its disclosure form set forth above, in or around April 2015, Wells Fargo ordered Plaintiff Harris's employment-purposed background report from First Advantage.

72.     Upon information and belief, First Advantage supplied Plaintiff Harris's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

73.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Harris contained adverse public record information.

74.     First Advantage did not provide Plaintiff Harris with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

75.     Upon information and belief, First Advantage completed the consumer report in April 2015, and determined that Plaintiff Harris could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Harris.

## FACTS AS TO NICHOLAS NORTHINGTON

76.     On or around April 10, 2015, Plaintiff Northington applied for a job with Wells Fargo.

77.     Notwithstanding the failure of its disclosure form set forth above, in or around April 2015, Wells Fargo ordered Plaintiff Northington's employment-purposed background report from First Advantage.

78.      Upon information and belief, First Advantage supplied Plaintiff Northington's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

79.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Northington contained adverse public record information.

80.     First Advantage did not provide Plaintiff Northington with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

81.     Upon information and belief, First Advantage completed the consumer report in April 2015, and determined that Plaintiff Northington could not be hired under Wells Fargo's hiring requirements based on his consumer report. As a result, Wells Fargo refused to hire Plaintiff Northington.

## FACTS AS TO ALEXANDRA BOOKER

82.     On or around September 24, 2014, Plaintiff Booker applied for a job with Wells Fargo.

83.     Notwithstanding the failure of its disclosure form set forth above, in or around October 2014, Wells Fargo ordered Plaintiff Booker's employment-purposed background report from First Advantage.

84.      Upon information and belief, First Advantage supplied Plaintiff Booker's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

85.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Booker contained adverse public record information.

86.     First Advantage did not provide Plaintiff Booker with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

87.     Upon information and belief, First Advantage completed the consumer report in October 2014, and determined that Plaintiff Booker could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Booker.

## FACTS AS TO DONALD BRASHER

88.     On or around August 17, 2012, Plaintiff Brasher applied for a job with Wells Fargo.

89.     Notwithstanding the failure of its disclosure form set forth above, in or around September 2012, Wells Fargo ordered Plaintiff Brasher's employment-purposed background report from First Advantage.

90.      Upon information and belief, First Advantage supplied Plaintiff Brasher's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

91.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Brasher contained adverse public record information.

92.     First Advantage did not provide Plaintiff Brasher with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

93.     Upon information and belief, First Advantage completed the consumer report in September 2012, and determined that Plaintiff Brasher could not be hired under Wells Fargo's hiring requirements based on his consumer report. As a result, Wells Fargo refused to hire Plaintiff Brasher.

## FACTS AS TO NICOLE BOLDEN

94.     On or around January 31, 2013, Plaintiff Bolden applied for a job with Wells Fargo.

95.     Notwithstanding the failure of its disclosure form set forth above, in or around March or April 2013, Wells Fargo ordered Plaintiff Bolden's employment-purposed background report from First Advantage.

96.     Upon information and belief, First Advantage supplied Plaintiff Bolden's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

97.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Bolden contained adverse public record information.

98.     First Advantage did not provide Plaintiff Bolden with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

99.     Upon information and belief, First Advantage completed the consumer report in March or April 2013, and determined that Plaintiff Bolden could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Bolden.

## FACTS AS TO SHEROD DAVIS

100.    On or around January 30, 2013, Plaintiff Davis applied for a job with Wells Fargo.

101.    Notwithstanding the failure of its disclosure form set forth above, in or around March 2013, Wells Fargo ordered Plaintiff Davis's employment-purposed background report from First Advantage.

102.     Upon information and belief, First Advantage supplied Plaintiff Davis's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

103.     Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Davis contained adverse public record information.

104.     First Advantage did not provide Plaintiff Davis with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

105.     Upon information and belief, First Advantage completed the consumer report in March 2013, and determined that Plaintiff Davis could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Davis.

### FACTS AS TO JUANITRA SMITH

106.     On or around March 4, 2013, Plaintiff Jaunitra Smith applied for a job with Wells Fargo.

107.     Notwithstanding the failure of its disclosure form set forth above, in or around March 2013, Wells Fargo ordered Plaintiff Smith's employment-purposed background report from First Advantage.

108.     Upon information and belief, First Advantage supplied Plaintiff Juanitra Smith's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

109.   Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Juanitra Smith contained adverse public record information.

110.   First Advantage did not provide Plaintiff Juanitra Smith with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

111.   Upon information and belief, First Advantage completed the consumer report in March 2013, and determined that Plaintiff Juanitra Smith could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Juanitra Smith.

## FACTS AS TO SHAMAAR MACK

112.   On or around April 16, 2013, Plaintiff Mack applied for a job with Wells Fargo.

113.   Notwithstanding the failure of its disclosure form set forth above, in or around May 2013, Wells Fargo ordered Plaintiff Mack's employment-purposed background report from First Advantage.

114.    Upon information and belief, First Advantage supplied Plaintiff Mack's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

115.   Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Mack contained adverse public record information.

116.    First Advantage did not provide Plaintiff Mack with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

117.    Upon information and belief, First Advantage completed the consumer report in May 2013, and determined that Plaintiff Mack could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Mack.

### FACTS AS TO RUCHANDA GILLIAM

118.    On or around October 31, 2013, Plaintiff Gilliam applied for a job with Wells Fargo.

119.    Notwithstanding the failure of its disclosure form set forth above, in or around December 2013, Wells Fargo ordered Plaintiff Gilliam's employment-purposed background report from First Advantage.

120.    Upon information and belief, First Advantage supplied Plaintiff Gilliam's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

121.    Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Gilliam contained adverse public record information.

122.    First Advantage did not provide Plaintiff Gilliam with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

123.    Upon information and belief, First Advantage completed the consumer report in May 2013, and determined that Plaintiff Gilliam could not be hired under Wells Fargo's hiring

requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Gilliam.

## FACTS AS TO CHRISTOPHER CAMPBELL

124.    On or around November 15, 2013, Plaintiff Campbell applied for a job with Wells Fargo.

125.    Notwithstanding the failure of its disclosure form set forth above, in or around December 2013, Wells Fargo ordered Plaintiff Campbell's employment-purposed background report from First Advantage.

126.    Upon information and belief, First Advantage supplied Plaintiff Campbell's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

127.    Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Campbell contained adverse public record information.

128.    First Advantage did not provide Plaintiff Campbell with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

129.    Upon information and belief, First Advantage completed the consumer report in December 2013, and determined that Plaintiff Campbell could not be hired under Wells Fargo's hiring requirements based on his consumer report. As a result, Wells Fargo refused to hire Plaintiff Campbell.

## FACTS AS TO AMILIA THOMAS

130.    On or around December 20, 2013, Plaintiff Thomas applied for a job with Wells Fargo.

131.    Notwithstanding the failure of its disclosure form set forth above, in or around December 2013 and January 2014, Wells Fargo ordered Plaintiff Thomas's employment-purposed background report from First Advantage.

132.    Upon information and belief, First Advantage supplied Plaintiff Thomas's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

133.    Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Thomas contained adverse public record information.

134.    First Advantage did not provide Plaintiff Thomas with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

135.    Upon information and belief, First Advantage completed the consumer report in December 2013 or January 2014, and determined that Plaintiff Thomas could not be hired under Wells Fargo's hiring requirements based on her consumer report. As a result, Wells Fargo refused to hire Plaintiff Thomas.

## FACTS AS TO PAUL VENZOR

136.    On or around April 19, 2013, Plaintiff Venzor applied for a job with Wells Fargo.

137.    Notwithstanding the failure of its disclosure form set forth above, in or around May 2013, Wells Fargo ordered Plaintiff Venzor's employment-purposed background report from First Advantage.

138.    Upon information and belief, First Advantage supplied Plaintiff Venzor's employment-purposed background report without obtaining the FCRA's required certification that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3).

139.    Upon information and belief, the employment-purposed background report that First Advantage sold to Wells Fargo regarding Plaintiff Venzor contained adverse public record information.

140.    First Advantage did not provide Plaintiff Venzor with a letter or any other communication from First Advantage "at the time" the report was furnished to the user. In this case and with regard to all Plaintiffs, First Advantage was the user.

141.    Upon information and belief, First Advantage completed the consumer report in May 2013, and determined that Plaintiff Venzor could not be hired under Wells Fargo's hiring requirements based on his consumer report. As a result, Wells Fargo refused to hire Plaintiff Venzor.

## ALLEGATIONS REGARDING THE DEFENDANT'S PRACTICES

142.    The actions that First Advantage took with respect to the Plaintiffs and the putative class members violated three distinct provisions of the FCRA.

**A.      Defendant failed to obtain the required certification prior to selling its reports.**

143.    First Advantage's standard FCRA authorization form did not comply with 15 U.S.C. § 1681b(b)(2), since it contained a release-of-liability clause and thus was not a stand-alone document consisting only of the FCRA disclosure and authorization.

23

144.    Before a CRA, like First Advantage, may furnish an employment-purposed consumer report to an employer, like Wells Fargo, it must obtain a certification from that employer that the employer's disclosure form meets the requirements of Section 1681b(b)(2).

145.    The FCRA requires that the disclosure be "in writing" in a stand-alone document.

146.    Wells Fargo's disclosure, which was signed by the Plaintiffs and putative class members, was buried in a lengthy application and contained unnecessary, additional language including a purported release of Plaintiffs' and putative class members' FCRA rights and thus was not contained in a stand-alone document consisting solely of the disclosure.

147.    As a result of the defective disclosure, Wells Fargo procured employment-purposed consumer report for the Plaintiffs and putative class members without first obtaining a proper, written authorization accompanied by a stand-alone disclosure of that intent.

148.    Because First Advantage supplied Wells Fargo with the defective disclosure form, Wells Fargo's certification that it complied with Section 1681b(b)(2) was ineffective and First Advantage knew this.

149.    Despite this knowledge, First Advantage furnished employment-purposed consumer reports to Wells Fargo in violation of the FCRA.

150.    First Advantage's defective form injured the Plaintiffs and putative class members when it deprived them of their FCRA-guaranteed rights that their employment-purposed consumer reports are only to be procured by a specific, stand-alone disclosure and authorization.

151.    This resulted in their consumer reports being issued without the appropriate authorization for that the access of the reports. These protections have been part of the FCRA since its enactment and exist to prevent consumers' information from being distributed without their knowledge or for impermissible purposes.

152. Plaintiffs and the putative class members have a common-law right to keep their personal information from being distributed and used without their knowledge. Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer-oriented safeguards, which restrict the distribution of consumer reports only for the reasons listed "and no other." Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and the FCRA expresses Congress's finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4).

153. Defendant invaded Plaintiffs' and the putative class members' right to privacy when it provided their highly confidential personal information without proper authorization.

154. The conduct that Defendant engaged in is precisely the type that Congress sought to prevent with the restrictions it has imposed on access to consumers' sensitive, personal information.

155. Plaintiffs and the putative class members suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

**B.      Defendant failed to provide notice regarding the provision of adverse public record information.**

156. First Advantage failed to provide Plaintiffs and the putative class members with at-the-time notice that it reported adverse public record information that was likely to have an adverse effect on their ability to obtain employment, as required by the FCRA. This failure injured the Plaintiffs and the putative class members because it deprived them of the ability to dispute inaccurate information in their reports or proactively discuss negative information with Wells

Fargo before it decided not to hire them. Courts frequently recognize this type of informational injury.

157. Plaintiffs and the putative class members have a common-law right to know the information that entities like First Advantage report. Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer-oriented safeguards, including that consumers receive notice "at the time" the information is reported for employment purposes. The FCRA expresses Congress's mandate that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

158. First Advantage also cannot comply with 15 U.S.C. § 1681k(a)(2). If at-the-time notice is not utilized when providing adverse public record information in an employment-purposed consumer report, a CRA may employ "strict procedures" designed to ensure that the information it reports is "complete and up-to-date." 15 U.S.C. § 1681k(a)(2). First Advantage cannot meet the strict procedures requirement because the public-record information it obtains for use in its background reports is never the true court record from the original courthouse source. Instead, First Advantage buys bulk data consisting of incomplete and outdated abstracts of courthouse records, which do not meet the requirements of § 1681k(a)(2).

159. The conduct that Defendant engaged in is precisely the type that Congress sought to prevent with the restrictions it has imposed on access to consumers' sensitive, personal information.

160.    Plaintiffs and putative class members therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

**C.      Defendant did not provide the proper pre-adverse action notice.**

161.    First Advantage violated the FCRA when it took adverse actions against the Plaintiffs and putative class members, but did not provide them with notice of its intent to do so prior to the adverse action.

162.    The FCRA requires that before an entity takes an adverse action against an employee or potential employee—like the denial of employment—that it first provide the employee with notice that it intends to take an adverse action against him or her based on the contents of a consumer report.

163.    This notice requirement is wholly separate from the at-the-time requirement explained above, but it injured the Plaintiffs and putative class members in the same way when First Advantage failed to provide it.

164.    The conduct that Defendant engaged in is precisely the type that Congress sought to prevent with the restrictions it has imposed on access to consumers' sensitive, personal information.

165.    Plaintiffs and the putative class members therefore suffered a concrete, in-fact injury that is directly traceable to Defendant's conduct and that is likely to be redressed by a favorable decision here.

## DEFENDANT ACTED WILLFULLY

166.    First Advantage knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions

27

interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

167.    First Advantage obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

168.    Before CRAs provide consumer reports for employment purposes, they must obtain a written certification that the recipient has (a.) provided the consumer with an FCRA-compliant disclosure that a report will be sought; and (b.) received that consumer's written authorization. *Obabuecki v. Int'l Business Machines Corp.*, 145 F. Supp. 2d 371, 393 (S.D.N.Y. 2001).

169.    The employer's written disclosure form that it uses to obtain an employment-purposed consumer report, must be presented in a clear, conspicuous, standalone form. *Manuel v. Wells Fargo Bank, Nat. Ass'n*, 123 F. Supp. 3d 810, 817–18 (E.D. Va. 2015); *Reardon v. ClosetMaid Corp.*, No. 2:08-CV-01730, 2013 WL 6231606, at *5 (W.D. Pa. Dec. 2, 2013).

170.    Upon information and belief, First Advantage knowingly allowed Wells Fargo to execute an ineffective certification that Wells Fargo would comply with the disclosure and authorization provisions of the FCRA whenever it obtained consumer reports for employment purposes.

171.    First Advantage knew Wells Fargo's certification was ineffective because First Advantage provided Wells Fargo the disclosure and authorization form that violated 15 U.S.C. § 1681b(b)(2).

172.    At the time a CRA provides a consumer's report with adverse information to a user, a CRA must also notify the consumer of the provision of the report. First Advantage is acutely aware of this requirement, since LexisNexis, an entity it acquired in early 2013, settled those very

claims in a case over which this Court presided approximately ten years ago, *Williams v. LexisNexis Risk Mgmt., Inc.*, No. 3:06-cv-241 (E.D. Va.).

173.     First Advantage does not comply with the strict procedures option set forth in section 1681k(a)(2), because the information it obtains is not updated through actual court records immediately before the reports are issued; and, even when that information is updated, it is incomplete because it does not include the complete contents of the original court records.

174.     First Advantage is also aware of the requirement that employers intending to take adverse actions based upon an employment-purposed consumer report must first provide the report and summary-of-rights disclosures to consumers, as the FCRA requires that CRAs obtain a certification of compliance with this requirement from employers like Wells Fargo before a consumer report is furnished. 15 U.S.C. § 1681b(b)(1)(A).

175.     Despite knowledge of these legal obligations, First Advantage acted consciously in breaching its known duties and depriving the Plaintiffs and putative class members of their rights under the FCRA.

176.     As a result of these FCRA violations, Defendant is liable to Plaintiffs and to each putative class member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorney's fees and costs pursuant to § 1681n and § 1681o.

## **COUNT ONE: VIOLATION OF THE FCRA § 1681b(b)(1)(A)**

177.     Plaintiffs restate each allegation in the preceding paragraphs as if fully set forth herein.

178.     Plaintiffs bring this action on behalf of the following Class:

All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position

with Wells Fargo or any of its subsidiaries within the five years immediately preceding the filing of the Complaint in this matter, and as part of this application process were the subject of a First Advantage consumer report obtained by Wells Fargo, and to whom Wells Fargo attempted to use the disclosures required by 15 U.S.C. § 1681b(b)(2)(A), through the First Advantage forms and/or portal.

Excluded from the class definition are any employees, officers and directors of Defendant, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

179.    **Numerosity.  Fed. R. Civ. P. 23(a)(1).**   There are thousands of class members. Therefore, joinder of all is impractical. The class members' names and addresses are identifiable through First Advantage's documents, and they may be notified of the pendency of this action by published and mailed notice.

180.    **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2), (b)(3).**   Common questions of law and fact exist as to all class members.  These questions predominate over the questions affecting only individual members.  These common legal and factual questions include, but are not limited to, whether First Advantage's standard certification process violated 15 U.S.C. § 1681b(b)(1)(A), by allowing Wells Fargo to obtain consumer reports via a certification that First Advantage knew or should have known was ineffective;  whether First Advantage's actions were willful; and the proper measure of statutory damages.

181.    **Typicality. Fed. R. Civ. P. 23(a)(3)**.  Plaintiffs' claims are typical of the claims of each class member. In addition, Plaintiffs are entitled to relief under the same causes of action as the other class members.

182.    **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiffs are adequate representatives of the Class because their interests coincide with, and are not antagonistic to, the interests of the class members they seek to represent, they have retained counsel competent and experienced in such

litigation, and they intend to prosecute this action vigorously. Plaintiffs and their Counsel will fairly and adequately protect the interests of class members.

183. **Superiority. Fed. R. Civ. P. 23(b)(3).** Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The statutory and punitive damages sought by each class member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the class members to individually and effectively redress the wrongs done to them. Even if the class members could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

## COUNT TWO: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(i)

184. Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

185. Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of the "FCRA § 1681b(b)(3)(A)(i) Class" initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), who applied for an employment position with Wells Fargo or any of its subsidiaries within the five years immediately preceding the filing of the Complaint in this matter, and as part of this application process were the subject of a consumer report obtained by Defendant, (a) against whom Defendant took an adverse employment action based in whole or

in part on the report; (b) and to whom Defendant did not provide a copy of the consumer report as stated at 15 U.S.C. § 1681b(b)(3)(A) at least five business days before the date the consumer's report at First Advantage was first coded as ineligible for hire.

Excluded from the class definition are any employees, officers and directors of Defendant, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

186.     **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  There are hundreds of class members. Therefore, joinder of all is impractical. The class members' names and addresses are identifiable through Defendant's documents, and they may be notified of the pendency of this action by published and mailed notice.

187.     **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all class members.  These questions predominate over the questions affecting only individual members.  These common legal and factual questions include, among other things, whether Defendant provided a copy of the consumer report to the applicant or employee before coding them as ineligible for employment based on the report results (§1681b(b)(3)(A)(i)); whether this act constituted an adverse action; whether Defendant did so willfully; and the proper measure of statutory damages.

188.     **Typicality. Fed. R. Civ. P. 23(a)(3)**.  Plaintiffs' claims are typical of the claims of each class member.  Plaintiffs, for class certification purposes, seek only statutory and punitive damages. In addition, Plaintiffs are entitled to relief under the same causes of action as the other class members.

189.     **Adequacy.**  Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the interests of the class members they seek to represent, they have retained counsel competent and experienced in such litigation, and they intend to

prosecute this action vigorously.  Fed. R. Civ. P. 23(a)(4).  Plaintiffs and their Counsel will fairly and adequately protect the interests of class members.

190.  **Superiority.**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the class members to individually and effectively redress the wrongs done to them.  Even if the class members could afford such individual litigation, it would be an unnecessary burden on the courts.  Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

191.  Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), as to the Class, because it failed to provide a copy of the consumer report used to make an employment decision to Plaintiffs and all other similarly situated applicants and employees at least five days before taking an adverse action that was based in whole or in part on the consumer report.

192.  Plaintiffs and the Class are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of its violations and punitive damages under 15 U.S.C. § 1681n.

193.    Plaintiffs and the Class are entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

**COUNT THREE: VIOLATION OF THE FCRA 15 U.S.C. § 1681k**

194.    Plaintiffs restate each of the allegations in the preceding paragraphs as if set forth at length herein.

195.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of the "FCRA § 1681k Class" initially defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a) who were the subject of a First Advantage consumer report issued within the five years immediately preceding the filing of the Complaint in this matter, and furnished to a third party that falls within the Red classification of First Advantage's customers, (b) that was furnished for an employment purpose, (c) that contained at least one public record obtained from First Advantage's National Criminal File database, and (d) to whom First Advantage did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

> Excluded from the class definition are any employees, officers and directors of Defendant, any attorney appearing in this case and any judge assigned to hear this action, as well as any customer who is a member of a previous settlement class or who executed an individual settlement agreement releasing the Defendant.

196.    **Numerosity.  Fed. R. Civ. P. 23(a)(1).**  There are hundreds of class members. Therefore, joinder of all is impractical. The class members' names and addresses are identifiable through Defendant's documents, and they may be notified of the pendency of this action by published and/or mailed notice.

197.    **Existence and Predominance of Common Questions of Law and Fact.  Fed. R. Civ. P. 23(a)(2).**  Common questions of law and fact exist as to all class members.  These questions predominate over the questions affecting only individual members. These common legal and factual questions include, among other things whether Defendant provided a copy of the consumer

report to the applicant or employee at the time it provided the report to itself for coding, whether Defendant failed to do so willfully, and the proper measure of statutory damages.

198.  **Typicality. Fed. R. Civ. P. 23(a)(3)**.  Plaintiffs' claims are typical of the claims of each class member.  Plaintiffs, for class certification purposes, seek only statutory and punitive damages. In addition, Plaintiffs are entitled to relief under the same causes of action as the other class members.

199.  **Adequacy.** Plaintiffs are adequate class representatives because their interests coincide with, and are not antagonistic to, the interests of the class members they seek to represent. They have retained counsel competent and experienced in such litigation and they intend to prosecute this action vigorously. Fed. R. Civ. P. 23(a)(4). Plaintiffs and their Counsel will fairly and adequately protect the interests of class members.

200.  **Superiority.**  Questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for the class members to individually and effectively redress the wrongs done to them.  Even if the class members could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.  By contrast, the class action device will result in substantial

benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

201.    Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), as to the Class, because it failed to provide a copy of the consumer report used to make an employment decision to Plaintiffs and all other similarly situated applicants and employees at least five days before taking an adverse action that was based in whole or in part on the consumer report.

202.    Plaintiffs and the Class are entitled to statutory damages of not less than $100 and not more than $1,000 for each and every one of its violations and punitive damages under 15 U.S.C. § 1681n.

203.    Plaintiffs and the Class are entitled to recover their costs and attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiffs, on behalf of themselves and others similarly situated, respectfully request an order: (1.) certifying the proposed FCRA classes herein under Federal Rule 23 and appointing Plaintiffs and their undersigned counsel of record as class counsel; (2.) creating a common fund available to provide notice of and remedy Defendant's FCRA violations; (3.) declaring that Defendant committed multiple, separate willful violations of the FCRA; (4.) awarding statutory and punitive damages, attorney's fees, expenses and costs, pre-judgment and post-judgment interest as provided by law; and (5.) awarding such other equitable and injunctive relief  that the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**Respectfully submitted,**
**PLAINTIFFS,**
*for themselves and on behalf of all*
*similarly situated individuals,*


_____/s/_____
Matthew J. Erausquin, VSB No. 65434
Casey S. Nash, VSB No. 84261
**Consumer Litigation Associates, P.C.**
1800 Diagonal Rd, Suite 600
Alexandria, VA 22314
Phone: (703) 273-7770
Fax: (888) 892-3512
Email:  matt@clalegal.com
Email: casey@clalegal.com

Leonard Anthony Bennett, VSB # 37523
Susan Mary Rotkis, VSB #40693
Craig C. Marchiando, VSB #89736
**Consumer Litigation Associates, P.C.**
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, VA 23601
Phone:  (757) 930-3660
Fax:  (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com
Email: craig@clalegal.com

*Attorney for Plaintiffs*