# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

MICHAEL FRAZIER, *et al.*,
*for themselves and on behalf of all*
*similarly situated individuals,*

      **Plaintiffs,**

v.                                                   Civil Action No. 3:17cv30

**FIRST ADVANTAGE BACKGROUND**
**SERVICES CORP.,**

      **Defendant.**

## MEMORANDUM OPINION

This matter comes before the Court on Defendant First Advantage Background Services Corporation's ("First Advantage") Motion to Dismiss. (ECF No. 18.) Plaintiffs Michael Frazier, *et al.* ("Plaintiffs") responded, (ECF No. 22), and First Advantage replied, (ECF No. 25). Accordingly, the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion to Dismiss but grant Plaintiffs leave to amend the Amended Complaint.

# I. Factual and Procedural Background

## A. Summary of Allegations in the Complaint[1]

Plaintiffs' two-count[2] amended class complaint (the "Amended Complaint"), (ECF No.

14), alleges violations of the the the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 *et*

*seq.*, by First Advantage. Plaintiffs' Amended Complaint does not parse easily, largely because

their allegations against First Advantage flow entirely from circumstances surrounding their

applications for employment with Wells Fargo.[3] Accordingly, understanding Plaintiffs'

allegations against First Advantage requires a discussion of Wells Fargo's application

procedures.

### 1. Wells Fargo's Application Process

Plaintiffs allege that, using First Advantage's website, they each applied for jobs with

Wells Fargo on dates between August 17, 2012, (Donald Brasher), and April 10, 2015, (Nicholas

---

[1] For purposes of the Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Plaintiffs. *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[2] Plaintiffs' Amended Complaint initially contained three counts. In their Response to First Advantage's Motion to Dismiss, Plaintiffs stated their intent to withdraw Count Three. (Pls.' Resp. Mot. Dismiss 4, ECF No. 22.) Although First Advantage initially opposed Plaintiffs' attempt to withdraw Count Three without prejudice, asserting that it should be dismissed *with* prejudice, (*see* Def.'s Reply 19, ECF No. 25), Plaintiffs later filed a stipulation of dismissal, stating that First Advantage consented to the dismissal of Count Three without prejudice. (*See* ECF No. 26.) The Court dismissed Count Three without prejudice. (ECF No. 27.)

[3] Plaintiffs are all prior class members who pursued and settled FCRA claims against Wells Fargo in *Manuel v. Wells Fargo Nat'l Assoc.*, No. 3:14cv238, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016). Plaintiffs assert, and First Advantage does not contest, that "as part of the *Manuel* settlement, the class members retained their right to [pursue] claims against First Advantage." (Am. Compl. ¶ 2, ECF No. 14.) As discussed more fully below, some of Plaintiffs' allegations in the Amended Complaint appear to conflict with stipulations entered in the *Manuel* settlement.

Northington). During this process, First Advantage obtained each plaintiff's consumer report to use in evaluating his or her eligibility for employment. Before sending each plaintiff's consumer report[4] to Wells Fargo, First Advantage adjudicated the applicants, "compar[ing] the results of its just-performed background check against [Wells Fargo's] hiring criteria and attach[ing] to those results a 'score,' such as 'eligible' or 'ineligible' for employment." (Am. Compl. ¶ 28.) First Advantage then sent each plaintiff's employment-purposed consumer report, with an eligible or ineligible adjudication, to Wells Fargo. "Wells Fargo [thereafter] entered its final hiring decision into a computer system to which both entities share access." (Am. Compl. ¶ 9.) Plaintiffs contend that First Advantage coded each of them as "ineligible," thereby determining "that [each plaintiff] could not be hired under Wells Fargo's hiring requirements based on his [or her] consumer report. As a result, Wells Fargo refused to hire" any plaintiff. (Am. Compl ¶ 37.)

In a manner not entirely consistent with the stipulated facts outlined in the *Manuel* settlement,[5] Plaintiffs describe the division of labor during the employment background check as follows:

---

[4] For ease of reference, the Court will refer to these consumer reports as "employment-purposed consumer reports."

[5] Plaintiffs' allegations that First Advantage—not Wells Fargo—adjudicated them as eligible or ineligible seem to conflict with stipulated facts in *Manuel* that Wells Fargo—not First Advantage—determined Plaintiffs' eligibility. Most puzzling, the facts seem to diverge from the stipulations in *Manuel* exactly as to facts that support Plaintiffs' theory that First Advantage is not just a CRA, (as it was treated throughout *Manuel*) but also a "user."
Consistent with their allegations in this case, Plaintiffs in *Manuel* stipulated that "[a]fter all application forms are completed[,] [First Advantage] generates the criminal background screening report and provides its findings to Wells Fargo" by entering it into a database to which both First Advantage and Wells Fargo have access. *Manuel v. Wells Fargo Bank Nat'l Assoc.*, 123 F. Supp. 3d. 810, 814 (E.D. Va. 2015). In seeming contrast to this case, Plaintiffs also stipulated that "[m]embers of Wells Fargo's Background Screening Compliance Team *then review the results to make a determination as to whether the current or prospective employee was ineligible for the relevant employment position in whole or in part* because of the content of the criminal background check." *Id.* (emphasis added). If the employee was deemed ineligible,

3

In the procedure and system used by Wells Fargo and First Advantage, both of those entities participated in taking an adverse action against Plaintiffs. First Advantage initially used a consumer report for determining whether or not an applicant should be adjudicated as "ineligible" based on pre-defined Wells Fargo hiring criteria. *Once First Advantage made that decision, it entered it within the applicant's file with the brand or code of "ineligible."* While Wells Fargo would have to later confirm and second that decision, the initial First Advantage adjudication was a necessary condition for the rejection of a consumer applicant and itself constituted an adverse action.

(Am. Compl. ¶ 4 (emphasis added).) The Amended Complaint does not describe the process by which Wells Fargo reviewed First Advantages's "decision." For instance, the Amended Complaint is silent as to whether—when Wells Fargo "confirm[ed] and second[ed]" First Advantage's determination—Wells Fargo could, could not, or ever did, change the adjudication.[6]

---

"the reviewing members [of the Wells Fargo Background Screening Compliance Team] would then access the database . . . and *enter a code or other notation that the applicant would not be eligible for the employment* position based . . . on the contents of his or her criminal background screening report." *Id.* (emphasis added).

First Advantage does not raise these seeming inconsistencies as a basis for dismissal. One court in this district has rightly balked when a plaintiff alleged internally inconsistent facts in the single complaint before it. *See Witt v. Corelogic Saferent, LLC*, No. 3:15cv3862016, WL 4424955, at *11 (E.D. Va. Aug. 18, 2016) ("The Court recognizes the right to plead alternative legal theories, but is aware of no authority that allows the pleading of alternative facts where one set which is entirely opposite the other."). The inconsistencies between the facts alleged in this Complaint and those stipulated to in *Manuel*—and what, if any, legal implication flows from those inconsistencies—give the Court great pause.

[6] Plaintiffs apparently seek to address this omission by improperly attempting to add facts that expand on the "stage" of review that followed First Advantage's adjudication. (Pls.' Resp. Mot. Dismiss 8, ECF No. 22 ("Wells Fargo adopts First Advantage's grading of applicants as 'ineligible' wholesale, electronically parroting back that decision to First Advantage who then sends the (now late) pre-adverse action notice based on Wells Fargo's confirmation of First Advantage's grade of 'ineligible.'"); *see also id.* at 21 (inaccurately stating that "Plaintiffs have alleged that Wells Fargo did nothing with the grades of ineligible but parrot them back to First Advantage").)

But the Court, in ruling on the Motion to Dismiss, must consider only those facts in Plaintiffs' Amended Complaint. "[I]t is axiomatic that [a] complaint may not be amended by the briefs in opposition to a motion to dismiss." *Mylan Labs, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

During the application process, each plaintiff signed a disclosure authorizing First Advantage to obtain his or her consumer report. According to Plaintiffs, this disclosure "was buried in a lengthy application and contained unnecessary, additional language including a purported release of Plaintiffs' . . . FCRA rights and thus was not contained in a stand-alone document consisting solely of the disclosure." (Am. Compl. ¶ 150.) Plaintiffs contend that this form injured them "when it deprived them of their FCRA-guaranteed rights that their employment-purposed consumer reports are only to be procured by a specific, stand-alone disclosure and authorization." (Am. Compl. ¶ 154.) Moreover, because First Advantage supplied this form for Wells Fargo, it "knew or should have known" that the form did not comply with the FCRA. (Am. Compl. ¶ 152.)

## 2. First Advantage's Purported FCRA Violations

Based on these aspects of Wells Fargo's application procedures, Plaintiffs contend that First Advantage violated the FCRA in two ways. First, Plaintiffs assert that First Advantage violated 15 U.S.C. § 1681b(b)(1)(A)[7] because it did not "obtain a valid certification from Wells Fargo" that Wells Fargo's disclosure form complied with the relevant parts of the FCRA. (Am. Compl. ¶ 10.) Although Wells Fargo did in fact "execute a[] . . . certification that [it] would comply with the disclosure and authorization provisions of the FCRA,"[8] Plaintiffs contend that

---

[7] Section 1681b(b)(1)(A) limits the circumstances under which a consumer reporting agency may furnish consumer reports for employment purposes. That section provides in relevant part that "[a] consumer reporting agency may furnish a consumer report for employment purposes only if . . . the person who obtains such report from the agency certifies to the agency that . . . the person has complied with paragraph (2) with respect to the consumer report. . . ." 15 U.S.C. § 1681b(b)(1)(A)(i).

[8] Plaintiffs also allege, as to each named plaintiff, that "[u]pon information and belief, First Advantage supplied [each plaintiff's] employment-purposed background report *without obtaining the FCRA's required certification* that Wells Fargo would comply with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3)." (*See, e.g.*, Am. Compl. ¶ 34 (emphasis added).)

the disclosure was "ineffective." (Am. Compl. ¶ 174.) Moreover, Plaintiffs allege that "First Advantage knew these certifications were ineffective because First Advantage provided the [violative] disclosure and authorization form" for Wells Fargo. (Am. Compl. ¶ 175.)

Plaintiffs assert that First Advantage's failure to obtain a proper certification from Wells Fargo "deprived them of their FCRA-guaranteed rights that their employment-purposed consumer reports are only to be procured by a specific, stand-alone disclosure and authorization." (Am. Compl. ¶ 154.) According to Plaintiffs, this "resulted in their consumer reports being issued without the appropriate authorization" to access such reports. (Am. Compl. ¶ 155.) They allege that First Advantage thereby invaded their "right to privacy" by providing their confidential personal information without proper authorization. (Am. Compl. ¶ 157.)

Second, Plaintiffs contend that First Advantage violated 15 U.S.C. § 1681b(b)(3)(A)[9] by failing to provide each plaintiff "with notice that it intended to take an adverse action against

---

However, viewing the allegations in Plaintiffs' Amended Complaint as a whole, Plaintiffs clearly do not contend that First Advantage receive *no* certification from Wells Fargo regarding its compliance.

Rather, Plaintiffs carefully allege that Wells Fargo never provided First Advantage with a "*lawful* certification," (Am. Compl. ¶ 7 (emphasis added)), a "*valid* certification," (*id.* ¶ 10 (emphasis added)), or an "*accurate, truthful*[,] and *effective* FCRA certification," (*id.* ¶ 187 (emphasis added)). Ultimately, Plaintiffs complain that "First Advantage knowingly allowed Wells Fargo . . . to execute an *ineffective* certification," (*id.* ¶ 174 (emphasis added)), not that First Advantage received no certification at all.

Of course, this distinction matters because First Advantage's failure to receive *any certification at all* from Wells Fargo could, under certain circumstances, constitute a FCRA violation. *See, e.g., Obabueki v. IBM*, 145 F. Supp. 2d 371, 394–96 (S.D.N.Y. 2001) (granting summary judgment to plaintiffs on their § 1681b(b)(1)(A)(i) claim because defendant "failed to demonstrate that there is any issue of material fact as to their failure to obtain the required certification before providing" plaintiff's credit report to the employer). Whether obtaining a certification that a CRA knew was untruthful states a claim for a FCRA violation remains undetermined.

[9] Subject to exceptions not relevant here, § 1681b(b)(3)(A) provides that, before taking any "adverse action" based on a consumer's employment-purposed consumer report, "the person intending to take such adverse action shall provide to the consumer to whom the report

6

them based in whole or in part on the information contained in the consumer report at least five days prior to taking the adverse action." (Am. Compl. ¶ 10.) According to Plaintiffs, First Advantage acted as a "user" of Plaintiffs' consumer reports when it "acted on behalf of the customer to adjudicate the consumer's employment eligibility based on the report." (Am. Compl. ¶ 31.) Accordingly, Plaintiffs assert "First Advantage violated the FCRA when it took adverse actions against the Plaintiffs . . . , but did not provide them with notice of its intent to do so prior to the adverse action." (Am. Compl. ¶ 165.) Plaintiffs allege that, by not sending them pre-adverse action notice, First Advantage "deprived them of the ability to dispute inaccurate information in their reports or proactively discuss negative information with Wells Fargo before it decided not to hire them." (Am. Compl. ¶ 160.)

Plaintiffs contend that First Advantage knew of its obligations under the FCRA, and that those obligations "are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations." (Am. Compl. ¶ 170.) Plaintiffs argue that the disclosure form Wells Fargo used violated the requirement that the written disclosure "be presented in a clear, conspicuous, standalone form." (Am. Compl. ¶ 173 (citing cases).) Moreover, because First Advantage provided the disclosure form for Wells Fargo, First Advantage "knew that its disclosure form violated the FCRA, [and] therefore knew or should have known that Wells Fargo's and its comparable customers' certifications of compliance with the FCRA's disclosure requirements w[ere] void." (Am. Compl. ¶ 26.) Finally, Plaintiffs state that First Advantage knows that "it acts in dual roles as both consumer reporting agency and user when it both generates the consumer report for an employer customer and also adjudicates that applicant's

---

relates . . . a copy of the report[] and . . . a description in writing of the rights of the consumer under this subchapter. . . ." 15 U.S.C. § 1681b(b)(3)(A).

eligibility for hire." (Am. Compl. ¶ 176.) Accordingly, Plaintiffs contend, First Advantage knew that it took an adverse action against Plaintiffs when it adjudicated their consumer reports "ineligible," and it knew that it was therefore required to comply with the requirements of § 1681b(b)(3)(A). (Am. Compl. ¶¶ 176–77.)

## B. Procedural History

Plaintiffs filed their Class Complaint on January 13, 2017. (ECF No. 1.) After First Advantage filed a Motion for More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e),[10] (ECF No. 12), Plaintiffs filed an Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).[11] First Advantage then filed the Motion to Dismiss, arguing that Plaintiffs' Amended Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1)[12] and 12(b)(6).[13] After the Motion to Dismiss was fully briefed, Plaintiffs

---

[10] Rule 12(e) provides in full:

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

[11] Rule 15(a)(1)(B) allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (e), or (f). . . ." Fed. R. Civ. P. 15(a)(1)(B). Plaintiffs filed their Amended Complaint fourteen days after First Advantage filed its Motion for a More Definite Statement. (*See* ECF Nos. 12, 14.)

[12] Rule 12(b)(1) allows a party to seek dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1).

[13] Rule 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

filed a Stipulation of Dismissal as to Count Three of the Complaint, which the Court entered.

(ECF Nos. 26, 27.)

Two class claims remain in Plaintiffs' Amended Complaint:

**Count One:** **Violation of the FCRA, 15 U.S.C. § 1681b(b)(1)(A), the "Certification Claim"** – First Advantage furnished a consumer report for employment purposes without receiving a valid certification from Wells Fargo, and based on a disclosure and authorization form that it knew or should have known was unlawful. (Am. Compl. ¶¶ 191–92.)

**Count Two:** **Violation of the FCRA, 15 U.S.C. § 1681b(b)(3)(A), the "Adverse Action Claim"** – First Advantage failed to timely provide a copy of the consumer reports and FCRA summaries of rights to Plaintiffs before taking adverse employment action. (Am. Compl. ¶¶ 202–03.)

Plaintiffs allege that both purported violations were willful. They seek statutory and punitive damages, and costs and attorney's fees for both counts. They also seek to certify two classes and one subclass,[14] with definitions that are not relevant to the Motion to Dismiss.

## II. Analysis: Motion to Dismiss for Lack of Standing

First Advantage argues that Plaintiffs lack standing to pursue their claims against First Advantage because Plaintiffs have alleged no injury-in-fact or, alternatively, because Plaintiffs' injuries are not fairly traceable to First Advantage's purported wrongdoing. Because standing is

---

[14] One of the proposed classes, the "§ 1681b(b)(1) Class" includes all people in the United States regarding whom First Advantage furnished an employment-purposed consumer report within the five years before the Complaint was filed. (Am. Compl. ¶ 183.) This proposed class, by definition, contains individuals who did not apply for employment with Wells Fargo. Relevant to this class, Plaintiffs allege "[o]n information and belief, . . . First Advantage followed a similar process for other of its customers – it either provided or reviewed and approved a § 1681b(b)(2) consumer disclosure and authorization form that contained a 'release of claims' sentence." (Am. Compl. ¶ 25.)

Because of this allegation and the proposed § 1681b(b)(1) Class, Plaintiff sometimes makes allegations relating specifically to Wells Fargo, and sometimes refers to "customers" generally. Although somewhat confusing, the distinction is of no moment to the Court's ruling. For readability, the Court refers to Plaintiffs' allegations as regarding Wells Fargo only.

a jurisdictional question, the Court examines First Advantage's standing argument first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'") (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884)). The Court finds that Plaintiffs indeed lack standing to pursue Count One, the Certification Claim, but have standing to pursue Count Two, the Adverse Action Claim.

## A. Legal Standard: Standing

### 1. The Three-Part Test Used to Evaluate Article III Standing

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. As the Supreme Court has explained, an "essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must establish Article III standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In *Spokeo, Inc. v. Robins*, the Supreme Court reiterated that, in order to establish standing, a plaintiff must have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant;[15] and[,] (3) that is likely to be redressed by a favorable judicial decision.[16]" 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

---

[15] To show a causal connection, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

[16] A party may establish the third element of standing by showing "that the injury will be [likely] 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43). A plaintiff cannot have standing where redressability of an injury is merely "speculative." *Id.*

As the party invoking federal jurisdiction, Plaintiffs bear the burden of properly alleging standing. *Lujan*, 504 U.S. at 560; *see also Balzer & Assoc., Inc. v. Union Bank & Trust Co.*, 3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction." (citing *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In a class action matter, courts analyze standing "based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269–70 (4th Cir. 2017). "'Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing.'" *Id.* at 270 (quoting *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011)).

## 2. Standard to Demonstrate an Injury in Fact

In *Spokeo,* the Supreme Court discussed the manner in which a plaintiff must allege "injury in fact" in order to establish standing for what courts call a "statutory violation" resulting in an "informational injury." The Supreme Court confirmed that, in order to establish an injury in fact, a plaintiff must demonstrate that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at 560). In doing so, the *Spokeo* court refined standing law by defining "particularized" and "concrete" with specificity.

Although not determinative of the outcome of this case, the *Spokeo* court first found that, for an injury to be "'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S.Ct. at 1548 (citing *Lujan*, 504 U.S. at 560 n.1). Thus, an "undifferentiated, generalized grievance" that all citizens share would not qualify as

11

particularized. *Lance v. Coffman*, 549 U.S. 437, 442 (2007). "The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 136 S. Ct. at 1548 n.7. The proper inquiry is whether "each individual suffers a particularized harm." *Id.*

Second, the *Spokeo* Court stated that for an injury to be "concrete," it must be "de facto," meaning that it must be "real," and not "abstract." *Spokeo*, 136 S. Ct. at 1548 (quotation omitted). That said, an injury need not be "tangible" in order to be "concrete." *Id.* at 1549 (quotation omitted). An intangible injury may constitute injury in fact. *Id.* The *Spokeo* court noted that even the risk of real harm might satisfy concreteness. *Id.* In evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court reiterated two important considerations: (1) history, which may reveal "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and, (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

With respect to this congressionally-defined, or statutory, standing, the *Spokeo* Court explained: "Article III standing requires a concrete injury even in the context of a statutory violation."[17] *Id.* Thus, a plaintiff "could not, for example, allege a bare procedural violation,

---

[17] *Spokeo* favorably discussed several cases that upheld congressional power to create a legally cognizable right to specific information, the deprivation of which would constitute a concrete injury sufficient to satisfy Article III. Many courts describe this statutory standing as flowing from an "informational injury." For instance, the Supreme Court explained in *Federal Election Commission v. Akins*:

divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.")). Regarding the FCRA, the Supreme Court noted that "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550. By way of example, the Supreme Court suggested that it would be "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

The Court also observed that in cases in which "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a

---

The "injury in fact" that respondents have suffered consists of their inability to obtain information—[including donor lists and campaign-related contributions and expenditures]. . . . There is no reason to doubt their claim that the information would help them (and others to whom they would communicate it) to evaluate candidates for public office . . . . Respondents' injury consequently seems concrete and particular. *Indeed, this Court has previously held that a plaintiff suffers an "injury in fact" when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute.*

524 U.S. 11, 21 (1998) (citing *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)) (emphasis added)). In *Public Citizen*, relied on by *Akins*, the Supreme Court held that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitute[d] a sufficiently distinct injury to provide standing to sue." 491 U.S. at 449.

Other pre-*Spokeo* Supreme Court cases confirm that the violation of a statutorily-prescribed procedural right can constitute injury in fact in some circumstances. *See, e.g., Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–75 (1982) (finding that housing-discrimination tester had standing to bring claims under the Fair Housing Act based on the "alleged injury to her statutorily created right to truthful housing information," even though the tester "may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home"); *see also Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) ("The Supreme Court consistently has held that a plaintiff suffers an Article III injury when he [or she] is denied information that must be disclosed pursuant to a statute, notwithstanding '[t]he fact that other citizens or groups of citizens might make the same complaint after unsuccessfully demanding disclosure.'" (quoting *Pub. Citizen*, 491 U.S. at 449–50)).

plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (citing *Akins*, 524 U.S. at 20–25; *Pub. Citizen*, 491 U.S. at 449). A plaintiff may therefore suffer "a concrete informational injury where [she or] he is denied access to information required to be disclosed by statute, *and* [she or] he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). In such a situation, an informational injury can become constitutionally cognizable when "a person lack[s] access to information to which [she or] he is legally entitled *and* . . . the denial of that information creates a 'real' harm with an adverse effect." *Id.* at 345 (citing *Spokeo*, 136 S. Ct. at 1548; *Akins*, 524 U.S. at 21).

### 3.    Standard to Demonstrate Causation

At the motion to dismiss stage, a plaintiff seeking to establish standing must also plead facts that support a reasonable inference that the defendant caused the plaintiff's particularized and concrete harm. In the standing context, this requires a showing that the plaintiff's "injury [is] 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon*, 426 U.S. at 41–42); *see also Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) ("Because any harm to the plaintiffs results from the actions of third parties not before this court, the plaintiffs are unable to demonstrate traceability.").

### B.    Analysis: Standing

### 1.    Count One: The Certification Claim

In the Certification Claim, Plaintiffs assert that First Advantage violated the FCRA by furnishing their employment-purposed consumer reports without receiving a valid certification

14

from Wells Fargo. Plaintiffs allege that the disclosure form they each signed "was buried in a lengthy application and contained unnecessary, additional language including a purported release of Plaintiffs' and putative class members' FCRA rights," and thus violated 15 U.S.C. § 1681b(b)(2). (Am. Compl. ¶ 150.) This form, Plaintiffs contend, "deprived them of their FCRA-guaranteed rights that their employment-purposed consumer reports are only to be procured by a specific, stand-alone disclosure and authorization," and "resulted in their consumer reports being issued without the appropriate authorization for . . . access of the reports." (Am. Compl. ¶¶ 154–55.) Even assuming that Plaintiffs allege a sufficiently concrete injury flowing from the improper disclosure forms, that injury is not traceable to First Advantage's alleged failure to obtain a proper certification from its customers. Plaintiffs therefore lack standing to pursue Count One, their Certification Claim.

### a. Section 1681b(b)'s Requirements for CRAs Furnishing Consumer Reports

Section 1681b(b) governs the conditions for furnishing and using consumer reports for employment purposes. It applies to both CRAs and users of consumer reports.[18] That section provides that a CRA may furnish an employment-related consumer report only if "the person who obtains such report from the agency certifies to the agency" that it has complied with 15U.S.C. § 1681b(b)(2), and will comply with § 1681b(b)(3) if that section becomes applicable. 15 U.S.C. § 1681b(b)(1)(A)(i). The user must further certify that information from the report will not be used in violation of federal or state laws.[19] 15 U.S.C. § 1681b(b)(1)(A)(ii).

---

[18] Neither party disputes that, for purposes of Count One, the Certification Claim, First Advantage acted as a CRA.

[19] Section 1681b(b)(1) also requires that the CRA provide a summary of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(1)(B). This requirement is not at issue here.

Section 1681b(b)(2) provides that "a person may not procure a consumer report, or cause a consumer report to be procured" for employment purposes unless:

> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and[,]

> **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).

### b. Plaintiffs' Injuries Are Not Fairly Traceable to First Advantage's Alleged Wrongful Conduct

Plaintiffs contend that the disclosure form Wells Fargo provided to Plaintiffs violated § 1681b(b)(2)(A)(i) because it included language attempting to waive each Plaintiffs' "right to statutory legal remedies when the F[CR]A is violated." (Am. Compl. ¶ 23.) Plaintiffs further attribute this failure to First Advantage, alleging that "First Advantage supplied and reviewed . . . the defective disclosure form." (Am. Compl. ¶ 152.) Therefore, according to Plaintiffs, First Advantage "invaded [their] right to privacy when it provided their highly confidential personal information without proper authorization." (Am. Compl. ¶ 157.) Plaintiffs seek to impose liability on First Advantage for this harm. These harms, however, were "caused by decisions and actions of third parties not before this court," rather than by First Advantage's alleged FCRA violation. *Lane*, 703 F.3d at 673.

Although Plaintiffs allege that First Advantage violated § 1681b(b)(1), they rest their purported invasion of privacy claims on actions that actually stemmed from violations of § 1681b(b)(2), not § 1681b(b)(1). (*See* Am. Compl. ¶ 154–55 (alleging that Plaintiffs were injured when they were "deprived . . . of their FCRA-guaranteed rights that their employment-purposed consumer reports . . . only . . . be procured by a specific, stand-alone disclosure and

authorization [and when] their consumer reports [were] issued without the appropriate authorization for . . . access of the reports").) Section 1681b(b)(2) makes it the responsibility of the "person . . . procur[ing] a consumer report" to provide the stand-alone disclosure and to ensure that proper authorization is given before the consumer report is procured. 15 U.S.C. § 1681b(b)(2). The CRA's responsibility is limited to not furnishing an employment-purposed consumer report without obtaining a certification from "the person who obtains such report." 15 U.S.C. § 1681b(b)(1). Plaintiffs assert that First Advantage "supplied and reviewed . . . the defective disclosure form," (Am. Compl. ¶ 152), but nowhere do they allege that First Advantage's alleged failure to "obtain a valid certification from Wells Fargo," (Am. Compl. ¶ 10), *caused* Wells Fargo's supposed noncompliance with § 1681b(b)(2).[20]

Plaintiffs' alleged deprivation of "their FCRA-guaranteed rights that their employment-purposed consumer reports are only to be procured by a specific, stand-alone disclosure and authorization," (Am. Compl. ¶ 154), is not traceable to First Advantage "'because an intermediary . . . stands directly between the plaintiffs and the challenged conduct in a way that breaks the causal chain.'" *Lane*, 703 F.3d at 674 (quoting *Frank Krasner Enters., Ltd. v. Montgomery Cnty., Md.*, 401 F.3d 230, 236 (4th Cir 2005)). Accordingly, even assuming that the injuries Plaintiffs suffered from the allegedly inadequate disclosure and authorization forms are sufficiently concrete to constitute an injury-in-fact, Plaintiffs do not plead facts sufficient to support a reasonable inference that these injuries are "'fairly . . . trace[able] to the challenged

---

[20] Plaintiffs also assert that First Advantage "knew or should have known" that the form did not comply with the FCRA. (Am. Compl. ¶ 152.) This allegation, however, does not necessarily make First Advantage liable for alleged harms caused by Wells Fargo. As discussed, the harm Plaintiffs contend they suffered as a result of First Advantage's § 1681b(b)(1) violation flows from Wells Fargo's § 1681b(b)(2) violation. The Court declines to address whether a CRA's knowledge of a defective certification, in factual circumstances not alleged here, could render a resulting harm fairly traceable to the CRA.

action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (quoting *Simon*, 426 U.S. at 41–42). On the facts Plaintiffs have alleged, the Court must dismiss Count One, the Certification Claim.

### 2.  Count Two:  The Adverse Action Claim

In the Adverse Action Claim, Plaintiffs assert that First Advantage violated the FCRA by taking adverse action against them without first providing notice that it intended to do so. Plaintiffs contend that First Advantage's action in adjudicating them as ineligible for employment constituted an adverse action and entitled them to a copy of their consumer report and a summary of their rights under the FCRA. Plaintiffs allege that this failure "deprived them of the ability to dispute inaccurate information in their reports or proactively discuss negative information with Wells Fargo before it decided not to hire them." (Am. Compl. ¶¶ 160.)

### a.  Section 1681b(b)'s Pre-Adverse Action Notice Requirements

Plaintiffs assert that First Advantage violated 15 U.S.C. § 1681b(b)(3) when it failed to provide them with notice before coding their consumer reports as "ineligible." Section 1681b(b)(3) provides, in relevant part:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> **(i)** a copy of the report; and[,]
>
> **(ii)** a description in writing of the rights of the consumer under this subchapter . . . .

15 U.S.C. § 1681b(b)(3)(A). The purpose of this so-called "pre-adverse action notice" is to "afford employees time to 'discuss reports with employers or otherwise respond before adverse action is taken,'" and to give employees the opportunity to explain any negative aspects of their consumer reports. *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532,

537 (E.D. Pa. 2012) (citation omitted); *accord Tyus v. United States Postal Serv.*, No. 15-cv-1467, 2017 WL 2656181, at *3 (E.D. Wis. June 20, 2017) ("The 'clear purpose' of the notice requirement is 'to provide individuals an opportunity to contest inaccurate information and to avoid an adverse decision by a potential employer based on erroneous information.'") (quoting *Ramos v. Genesis Healthcare, LLC,* 141 F. Supp. 3d 341, 347 (E.D. Pa. 2015)); *cf. Demmings v. KKW Trucking, Inc.*, No. 3:14cv494, 2017 WL 1170856, at *9 (D. Or. Mar. 29, 2017) ("The Court can envision numerous reasons why such protections were put in place, regardless of accuracy.").

Section 1681b(b)(3) thus provides consumers with a legally cognizable right to specific information at a specific time. As such, a violation of § 1681b(b)(3) could qualify as an informational injury—"a type of intangible injury that can constitute an Article III injury in fact." *Dreher*, 856 F.3d at 345 (citing *Akins*, 524 U.S. at 24; *Pub. Citizen*, 491 U.S. at 449). As the Fourth Circuit has recently held "a constitutionally cognizable informational injury requires that a person lack access to information to which [she or] he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." *Id.* (internal citation omitted). In order to determine whether a party has suffered a sufficiently concrete informational injury, the judgment of Congress is "instructive and important." *Spokeo*, 136 S. Ct. at 1549; *see also Dreher*, 856 F.3d at 345–46. A plaintiff may suffer "a concrete informational injury where he [or she] is denied access to information required to be disclosed by statute, *and* [she or] he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher*, 856 F.3d at 345 (quoting *Friends of Animals*, 828 F.3d at 992).

#### b.     <u>Plaintiffs Sufficiently Establish Standing</u>

Based on these principles, Plaintiffs sufficiently plead a concrete injury.[21] Plaintiffs

allege that First Advantage violated § 1681b(b)(3) by failing to provide them with notice before

taking adverse action against them. Plaintiffs contend that this failure "deprived them of the

ability to dispute inaccurate information in their reports or proactively discuss negative

information with Wells Fargo before it decided not to hire them." (Am. Compl. ¶¶ 160.) Absent

irregularities between the facts at bar and those in *Manuel*, this harm is precisely the "type of

harm *Congress sought to prevent* by requiring disclosure," and Plaintiffs therefore have standing

to pursue this claim. *Dreher*, 856 F.3d at 345 (internal quotation marks omitted).

### III. Analysis: Motion to Dismiss for Failure to State a Claim

Because the Court finds that Plaintiffs have standing to pursue Count Two, the Adverse

Action Claim, the Court must next evaluate whether Plaintiffs plead facts sufficient to state a

claim for that violation. Because Plaintiffs fail to allege facts supporting a reasonable inference

that First Advantage used their consumer reports for employment purposes when it adjudicated

---

[21] First Advantage half-heartedly argues that "the harms [Plaintiffs] allege are not tied to the violations they assert." (Mem. Supp. Mot. Dismiss 11, ECF No. 19.) First Advantage contends that Plaintiffs' alleged harm of an inability to "discuss negative information with Wells Fargo," (Am. Compl. ¶ 160), defeats causation in this instance because "the notices at issue would have only mentioned First Advantage and not Wells Fargo." (Mem. Supp. Mot. Dismiss 11.) Accordingly, any notices "would not have led Plaintiffs to believe that their reports had been sent to Wells Fargo." (*Id.*)

At the motion to dismiss stage, the Court declines to take such a narrow view of Plaintiffs' allegations, and will instead view all the facts pleaded in the light most favorable to Plaintiffs. *See Matkari*, 7 F.3d at 1134. The factual foundation of Plaintiffs' Adverse Action Claim here is that First Advantage coded the applicants as "ineligible" based on Wells Fargo's hiring criteria, and although Wells Fargo later "confirm[ed] and second[ed] that decision, the initial First Advantage adjudication was a necessary condition for the rejection of a consumer applicant and itself constituted an adverse action." (Am. Compl. ¶ 4.) Plaintiffs' grievance, as plausibly alleged, clearly is that First Advantage's adjudication of "ineligible" contributed to Wells Fargo's ultimate adjudication of ineligible.

Plaintiffs as eligible or ineligible for hire based on Wells Fargo's criteria, Plaintiffs fail to state a claim for a violation of § 1681b(b)(3).

### A.    Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Matkari*, 7 F.3d at 1134; *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Plaintiffs cannot proceed by asserting only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those that "show" a claim that is "plausible on its face." *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 570; Fed. R. Civ. P. 8(a)(2)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

**B.** **Plaintiffs Fail to State a Claim for a Violation of § 1681b(b)(3)**

Section 1681b(b)(3) requires that, when "using a consumer report for employment

purposes, before taking any adverse action based in whole or in part on the report, the person

intending to take such adverse action[22] shall provide to the consumer to whom the report

---

[22] The FCRA contains several definitions for "adverse action," two of which could be relevant here. Specifically in the employment context, adverse action is "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee." 15 U.S.C. § 1681a(k)(1)(B)(ii). Also, under the FCRA's catch-all definition, adverse action is "an action taken or determination that is . . . made in connection with an application that was made by . . . any consumer [and] . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv).

Courts, even courts within this district, have disagreed over which definition of "adverse action" applies to employment decisions. Some courts have held that both definitions apply to adverse actions within the employment context. *See, e.g., Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 781 (E.D. Va. Dec. 19, 2017) (quoting 15 U.S.C. § 1681a(k)(1)(B)(ii) and (k)(1)(B)(iv) and holding that both definitions are relevant in the FCRA context); *Muir v. Early Warning Servs., LLC*, No. 16-521, 2016 WL 4967792, at *4 (D.N.J. Sept. 16, 2016) ("The FCRA defines 'adverse action' [under] 15 U.S.C. § 1681a(k)(1)(B)(ii); or, under the 'catch-all' provision, . . . . 15 U.S.C. § 1681a(k)(1)(B)(iv)."). Others have held that the employment-specific definition, not the catch-all provision, applies to claims based on adverse actions taken in the employment context. *See, e.g., Costa v. Family Dollar Stores of Va., Inc.*, 195 F. Supp. 3d 841, 845 n.8 (E.D. Va. 2016) ("In addition to providing [a] definition of "adverse action" in the employment context, the FCRA's definition of 'adverse action' includes a definition in two other specific contexts and a broad catch-all definition. The Court follows the lead of other courts that look only to the employment-specific definition." (citations omitted)); *Javid v. SOS Int'l, LTD*, No. 1:12cv1218, 2013 WL 2286046, at *4 (E.D. Va. May 23, 2013) ("For purposes of the employment context, the F[CR]A defines an 'adverse action' as 'a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee.'" (quoting 15 U.S.C. § 168la(k)(B)(ii))).

In the context of the Motion to Dismiss, the Court need not decide which definition applies. The parties do not actually dispute whether one or both govern; neither party cites to *either* definition in any of the briefing. Moreover, under either definition, Plaintiffs fail to state a claim. However, given the well-established principle of statutory interpretation that the specific governs the general, the Court would be inclined to agree with the courts applying only the employment-specific definition in cases, like this one, involving employment. *See, e.g., RadLax Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) ("The general/specific canon [applies] . . . . to statutes such as the one here, [where] the canon avoids . . . the superfluity of a specific provision that is swallowed by the general one, violating the cardinal rule that, if possible, effect shall be given to every clause and part of a statute." (internal quotations, citations, and alterations omitted).)

relates" a copy of the report and a description in writing of the consumer's rights under the FCRA. 15 U.S.C. § 1681b(b)(3)(A). A consumer reporting agency, as defined by the FCRA is "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or *evaluating* consumer credit information or other information on consumers *for the purpose of furnishing consumer reports to third parties.*" 15 U.S.C. § 1681a(f) (emphases added). Under the plain language of this statute, the facts Plaintiffs allege (absent inconsistencies) establish that First Advantage acted as a CRA when it adjudicated Plaintiffs' background checks and then sent the results to Wells Fargo.

Plaintiffs allege that, when they each applied for employment with Wells Fargo, "Wells Fargo requested that First Advantage obtain a background check on each of the [p]laintiffs." (Am. Compl. ¶ 5.) After Plaintiffs completed their applications, First Advantage adjudicated Plaintiffs as eligible or ineligible, "based on criteria that Wells Fargo" provided. (Am. Compl. ¶¶ 8, 9.) In doing this, First Advantage "acted on behalf of [its customers] to adjudicate the consumer's employment eligibility based on the report." (Am. Compl. ¶ 31.) After adjudicating Plaintiffs' consumer reports, First Advantage sent the consumer background reports and adjudication results to Wells Fargo, and "Wells Fargo [made] its final hiring decision."[23] (Am. Compl. ¶ 9.) Again putting aside any inconsistencies with *Manuel*, the facts alleged here do not indicate that First Advantage goes beyond its role as a CRA providing employment-purposed

_____

[23] As noted, Plaintiffs' attempt to bootstrap factual allegations to their case by asserting them in their Response cannot succeed. (*See* Resp. Mot. Dismiss 8 ("Wells Fargo adopts First Advantage's grading of applicants as 'ineligible' wholesale, electronically parroting back that decision to First Advantage who then sends the (now late) pre-adverse action notice based on Wells Fargo's confirmation of First Advantage's grade of ineligible.").) The Court cannot consider facts outside Plaintiffs' Amended Complaint in ruling on the Motion to Dismiss, *see Akzo*, 770 F. Supp. at 1068, and remains especially reluctant to rely on facts potentially at odds with those stipulated to in *Manuel*.

consumer reports to employers when it adjudicates an applicant as eligible or ineligible for hire. But because the factual record must be clarified, the Court cannot find that First Advantage performs this task as an entity "using a consumer report for employment purposes," which could make it liable for a violation of § 1681b(b)(3).[24]

Here, no party disputes that First Advantage is a person "regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties." (Am. Compl. ¶ 16.) Moreover, Plaintiffs plainly allege that First Advantage "acted on behalf of the customer [when it] adjudicate[d] the consumer's employment eligibility based on the report." (Am. Compl. ¶ 31.) And First Advantage's act of adjudicating Plaintiffs as eligible or ineligible, is expressly contemplated and allowed by the statute. *See* 15 U.S.C. § 1681a(f) (defining a CRA as "any person which . . . regularly engages in whole or in part in the practice of . . . *evaluating* consumer credit information or other information on consumers *for the purpose of furnishing consumer reports to third parties.*" (emphasis added).) Accordingly, based on the allegations in Plaintiffs' Amended Complaint, First Advantage was acting as a CRA. But the Court cannot, even considering the Complaint in the light most favorable to Plaintiffs, infer that First Advantage adjudicated Plaintiffs' eligibility or ineligibility for employment, and used "a consumer report

---

[24] Plaintiffs state in their Amended Complaint that "First Advantage . . . was a 'user' of [their] . . . consumer reports, as governed by the FCRA." (Am. Compl. ¶ 17.) Of course, such legal conclusions are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 679. For the same reason, Plaintiffs' allegation that "[a]t all times relevant to this Complaint, First Advantage operated as a 'consumer reporting agency' as defined and governed by the FCRA" does not control. (Am. Compl. ¶ 16.)

for employment purposes." 15 U.S.C. § 1681b(b)(3).  Plaintiffs fail to state a claim for Count

Two, the Adverse Action Claim.[25]

## IV.  Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss.  However, given

the seeming inconsistencies between the stipulated facts in the *Manuel* settlement and the facts

alleged in Plaintiffs' Amended Complaint, *see supra* n.5, Plaintiffs' reference to additional facts

relevant to the amount of control First Advantage exercised over the employment decisions, *see*

*supra* n.6, and the most recent enunciation of standing law, *see Dreher*, 856 F.3d 337 (4th Cir.

2017), the Court will allow Plaintiffs to amend their complaint.

An appropriate Order shall issue.

_____/s/_____
M. Hannah Lauck
United States District Judge

Date: 9/24/18
Richmond, Virginia

---

[25] The Court does not conclude that a CRA can *never* "us[e] a consumer report for employment purposes" and thus face liability for a violation of § 1681b(b)(3).  The Court can imagine, for instance, a situation in which a CRA might conduct its own background checks and furnish them to itself for use in its own hiring practices.

Here, however, Plaintiffs allege that First Advantage conducted consumer background checks, evaluated them based on criteria Wells Fargo provided, and then furnished them to Wells Fargo.  The facts, even considered in the light most favorable to Plaintiffs and putting aside any possible inconsistencies with those stipulated to in *Manuel*, indicate that First Advantage acted as a CRA in *this situation*.  The Court leaves open the possibility that a plaintiff could plausibly allege facts to prove otherwise.