## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**MICHAEL FRAZIER, *et al.*,**

      **Plaintiffs,**

**v.**                                              **Civil Action No. 3:17-cv-30-MHL**

**FIRST ADVANTAGE BACKGROUND**
**SERVICES CORP.,**

      **Defendant.**


### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT

# I.    OVERVIEW.

First Advantage compiles and sells personal information about consumers who apply for jobs, and is thus regulated as a "consumer reporting agency" ("CRA") governed by the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq.  When this statute was enacted in 1970, nearly all of its requirements were imposed *on CRAs*, such as First Advantage, and almost none were imposed on users of FCRA reports.  In fact, it was not until 1996 that the statute was extended to employers.  In those first 26 years and those that followed through today, Congress' focus has remained almost entirely on those CRA obligations.  And nearly every other right, rule or remedy that has arisen under the statute has been enacted as a means to facilitate the CRA's compliance and fulfillment of the FCRA's statutory mandates.1  It was *the CRA* to whom Congress wrote and directed this law and it is the CRA that is most responsible for following it.

This case is brought against First Advantage as a CRA and under the provisions of law initially enacted in 1970.  A CRA is and has always been prohibited from furnishing a consumer report about a consumer unless expressly permitted to do so under 15 U.S.C. § 1681b.   Here, Plaintiffs allege that First Advantage knowingly created and followed a process whereby it systematically furnished such reports without complying with the rigorous restrictions on its doing so.  Plaintiffs allege that First Advantage violated § 1681b(b)(1).  This provision requires nothing of an employer – that party cannot violate its prohibition.  Instead, it begins and states that, "***A consumer reporting agency may  furnish*** a consumer report  for employment  purposes ***only if***—".  Id. (emphasis added).  Plaintiffs here allege simply that First Advantage knowingly ignored

---

1 *See e.g.* 15 U.S.C. § 1681s-2(b) (requiring furnishers to cooperate with, respond to and investigate disputes from CRAs); §1681m (requiring users who take general adverse actions to tell the consumer the identity and contact information of the CRA from who the disqualifying report was obtained).

this restriction.  It furnished employment reports regarding the Plaintiffs when it knew that this "only if" condition was not actually met.

Plaintiffs also allege that First Advantage violated § 1681b(b)(3), which demands that anyone using a consumer report to take an adverse employment action (such as denial of employment or promotion) first provide the subject consumer with a copy of the report and a written summary of the consumer's FCRA rights. But in this capacity, First Advantage is not sued because it is a CRA, but rather under its other hat in its relationship with Wells Fargo—that of a "user." As part of its relationship with Wells Fargo, First Advantage compiled its background searches and then, using Wells Fargo's hiring criteria, "adjudicated" or "scored" those results as "eligible" or "ineligible" for employment at Wells Fargo. Wells Fargo then adopts the ineligible decision wholesale, without question, and parrots that information back to First Advantage so it can send the notice required by Section 1681b(b)(3). This action of coding by First Advantage is an adverse action against Plaintiffs and Class Members, as it results in the denial of employment, but that decision is made before First Advantage even prints, let alone provides, the Section 1681b(b)(3) pre-adverse action notice. First Advantage raises several arguments in opposition to this claim, but this Court has rejected them all. And importantly. First Advantage itself has already aware of its status as a user and its obligations under § 1681b(b)(3), as it was a party when the Eastern District of Pennsylvania so held in 2012. *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532, 543 (E.D. Pa. 2012).[2]

As to First Advantage's challenge to Plaintiffs' Section 1681k(a) claim, Plaintiffs have still not yet been permitted to discover (let alone receive) their First Advantage reports. They therefore ask that the Court's dismissal of this claim be without prejudice, subject to their receipt and review of those reports in discovery. (*See* ECFs 26, 27.)

---

[2] LexisNexis and First Advantage merged before this decision.

## II.   CRA PROTECTION OF CONSUMER PRIVACY IS A PRIMARY GOAL OF THE FCRA, AND COMPLIANCE WITH THE ACT'S STRICTURES MATTERS.

The protection of consumer privacy by strictly limiting the reasons for which information may be distributed by a CRA was one of the core objectives of Congress in enacting the FCRA. "Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy . . . [and] seeks to accomplish these goals by requiring credit reporting agencies to [among other procedures] limit the furnishing of [credit reports] to certain statutorily enumerated purposes." *TRW Inc. v. Andrews*, 534 U.S. 18, 23 (2001) (internal citations and quotations omitted).  Senator Proxmire explained that his bill, which would be enacted as the FCRA, would require "that credit bureaus have in effect procedures for guaranteeing the confidentiality of the information they collect and that no such information be released to noncreditors such as governmental investigative agencies without the express consent of the person involved." 114 Cong. Rec. 24902 (1968).  In the record of the House of Representatives Subcommittee on Consumer Affairs of the Committee on Banking and Currency, 91st Cong.2d Session, "Hearings on H.R. 16340", evidenced that the Subcommittee, at least, felt a purpose of the bill was to keep CRAs from furnishing credit reports that were unauthorized.

Every available chronicle of the statute's legislative enactment describes it as Congress' attempt to regulate consumer reporting agencies. "The Act was passed after it became increasingly evident in congressional hearings that a law was needed to regulate the credit reporting industry." Sheldon Feldman, The Fair Credit Reporting Act--From  the Regulators Vantage Point, 14 Santa Clara Law. 459, 459 (1974).  It was "an attempt to regulate a vast network of consumer reporting agencies that furnish approximately 100 million credit reports annually through 2,600 credit bureaus and an additional thirty to forty million investigative reports annually through a handful of investigative consumer reporting agencies."  Id. at 460.  "This Act [was] the first federal effort

3

to protect the consumer's right to privacy" and "represent[ed] landmark steps by Congress to protect citizens from unwarranted intrusions into their personal lives." Id. at 463.

Courts during the period post-enactment shared this understanding of Congress' purpose. As one court explained,

> The Congressional purpose behind the Act is set forth in § 1681, which provides in part:
> '(a) The Congress makes the following findings:
>  (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.
>  (b) It is the purpose of this subchapter to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer * * *.'
>
> *Congress' concern was to protect consumers from the misuse of information acquired by credit reporting agencies*.
>
> […]
> If a consumer report is only a report made for one of the purposes enumerated in § 1681a(d), then § 1681b(3), restricting the uses to which a consumer report may be put, adds nothing to the Act. In order for § 1681b(3) to be meaningful, 'consumer report' must be interpreted to mean any report made by a credit reporting agency of information that could be used for one of the purposes enumerated in § 1681a. Only then can § 1681b be given the meaning Congress intended. *Section 1681b states the purposes for which such reports legitimately may be used. Its clear implication is that there are some purposes for which consumer reports may not be furnished*.

*Belshaw v. Credit Bureau of Prescott*, 392 F. Supp. 1356, 1359–60 (D. Ariz. 1975) (emphasis added). *See also Greenway v. Info. Dynamics, Ltd.*, 399 F. Supp. 1092, 1094 (D. Ariz. 1974), *aff'd*, 524 F.2d 1145 (9th Cir. 1975) ("The FRCA was enacted by Congress in 1970 to inject a much-needed degree of responsibility into the burgeoning consumer credit reporting industry. In passing the Act, Congress specifically found, in 15 U.S.C. § 1681(a)(4), 'There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.' To assure that this need

4

was served, Congress imposed various requirements upon 'consumer reporting agencies' in their compilation and dissemination of 'consumer reports.'")

Even today, the FCRA is recognized almost exclusively as a statute directed towards the CRAs.  The Federal Trade Commission summarized that, "The FCRA regulates the practices of consumer reporting agencies ("CRAs") that collect and compile consumer information into consumer reports for use by credit grantors, insurance companies, employers, landlords, and other entities in making eligibility decisions affecting consumers." Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* 2–3 (July 2011), https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–**fair**–**credit**–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf (summarizing history of amendments to FCRA).

In 1996, Congress amended the Act to further refine this core objective and better protect "job applicants' privacy rights." S. Rep. No. 104-185 at 35 (1995)). In setting out the terms of that amendment, "The Committee [was] concerned, however, that [allowing the furnishing of reports to employers] may create an improper invasion of privacy."  Id.  It imposed the requirements on employers/users we now see as §1681b(b)(2) and (b)(3).  However, importantly §1681b(b) was not described in the Senate Report as imposing requirements in only one direction or part of the CRA to user exchange.  As the Senate Report explained,

> Section 403 [of the amendment] ***prohibits a consumer reporting agency*** from providing a report for employment purposes unless the person obtaining the report certifies to the agency that the required disclosures have been provided to the employee and that the information from the report will not be utilized in violation of Federal or state equal employment opportunity laws. Further, the agency must include with the report a summary of the consumer's rights under the FCRA.

S. Rep. No. 104-185 at 35 (emphasis added). Requiring CRAs to meet specific strictures before they distribute information about consumers has been the bedrock of the FCRA for decades. This was fully consistent with the interpretation and structure of the FCRA generally and §1681b specifically at the time of the 1996 amendment.

And this makes complete sense, as CRAs are entrusted with troves of information that consumers have no control over—it is collected, parsed, categorized, warehoused, and sold without consumers' consent or input into a great number of these tasks. Because so many things may occur in this context without consumers' knowledge or acquiescence, Congress imposed strict duties **on CRAs** to protect, among other things, consumers' privacy. *See* 15 U.S.C. § 1681(a)(4) ("There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy").

In creating the statutory scheme relating to employment background checks, Congress deemed the restriction of their distribution of such importance that it enacted a specific, easy-to-follow set of prerequisites that must be met before a CRA like First Advantage may provide a background check to a potential employer. First Advantage has failed to meet the first, most-fundamental of these requirements, meaning it distributed Plaintiffs' and tens of thousands of consumers' background checks illegally. Yet, First Advantage would have the Court allow First Advantage to violate the law with impunity because Plaintiffs have supposedly suffered no concrete harm due to First Advantage's violations. First Advantage is wrong. Plaintiffs have suffered the most-basic harm the FCRA sought to prevent—a violation of their privacy by having their private information trafficked outside the protections of the statute. There could be no cleaner, clearer violation of the FCRA than that which Plaintiffs allege. Article III harm attaches to such a privacy violation, meaning First Advantage's Motion should be denied.

Congress's judgment in crafting the employment-related provisions of the FCRA demonstrates that the certification CRAs receive from employers under Section 1681b(b)(1) cannot be a sham. It matters. Otherwise, there would be no point in having the law. Yet, that is what First Advantage asks the Court to conclude. The disclosure form First Advantage provided to Wells Fargo was defective, objectively and as a matter of law, so First Advantage knew it was receiving a false and ineffective certification of Wells Fargo's compliance with Section 1681b(b)(2). Any reasonable person would come to this conclusion based on the language of the form and the statutory demand, but First Advantage soldiered-on knowing Wells Fargo's certification was void and invalid. Courts take FCRA compliance seriously, as they should, but First Advantage asks the Court to look the other way as to First Advantage's knowledge of Wells Fargo's void certification. The Court should not, as meeting the FCRA's demands means compliance attempts must be real rather than pretend. And the violation alleged here is a key protection the FCRA provides consumers in the employment context. *See Sanders*, 2019 WL 118044, at *5 ("Here, the injuries alleged in the Amended Complaint are not mere 'procedural' statutory violations; rather, they are precisely a kind of harm the FCRA aims to prevent. Namely, the distribution of consumer reports without the proper, required disclosures.").

In a similar vein, courts have widely accepted that false information renders an act void or ineffective. *See United States v. Finley*, 612 F.3d 998, 1002 (8th Cir. 2010) (setting out analysis for determining whether a probable-cause affidavit containing a false statement makes a search warrant and the search pursuant to that warrant invalid); *see also Davis v. Strain*, 676 F. App'x 285, 287 (5th Cir. 2017) ("'[W]hen an affidavit contains inaccurate statements which materially affect its showing of probable cause, any warrant based upon it is rendered invalid.'"); *United States v. MTU Am. Inc*., 105 F. Supp. 3d 60, 62 (D.D.C. 2015) (explaining that an attempt to comply with the Clean Air Act by executing a certificate of conformity that contains, among other

things, false or incomplete information, is void); *Sorias v. Nat'l Cellular USA, Inc.*, No. 14-CV-2897 WFK SMG, 2015 WL 3767285, at *3 (E.D.N.Y. June 15, 2015) (discussing unenforceability of patents due to inequitable conduct such as securing patent by use of false or misleading information). First Advantage falls directly into this category, as it knew that Wells Fargo's certification was void because Wells Fargo falsely represented compliance with Section 1681b(b)(2).

### III.   STATEMENT OF FACTS.

Plaintiffs all applied for work with Wells Fargo, who hired Defendant First Advantage to perform background checks on them and other applicants. (ECF 34 ¶¶ 2–3.) In taking on this role, First Advantage is obliged to follow simple demands of the FCRA, such as the requirement that it obtain a certification from employers like Wells Fargo that they will abide by the FCRA in using First Advantage's background-check reports in their hiring process. (*Id.* ¶¶ 20, 168); 15 U.S.C. § 1681b(b)(1). As part of its relationship with Wells Fargo, First Advantage hosted an employment-related website through which Wells Fargo applicants could complete their job applications and other associated paperwork. (ECF 34 ¶¶ 3, 28, 30.)

Part of this process included the presentation to Wells Fargo applicants the FCRA-required disclosure and authorization form, which must inform applicants of Wells Fargo's intent to obtain consumer reports about them in, as the statute demands, "a document that consists solely of the disclosure." (*Id.* ¶¶ 28, 30); 15 U.S.C. § 1681b(b)(2)(A)(i). Plaintiffs allege, and this Court has already found, disclosure forms similar to the one First Advantage supplied Wells Fargo's applicants did not meet Section 1681b(b)(2)'s standalone disclosure requirement. *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071571, at *5 (E.D. Va. Mar. 15, 2016). Notably absent from Defendant's recitation of the facts of the case is one key point that forms the foundation of Plaintiffs' claim for violation of 15 U.S.C. § 1681b(b)(1)—that First Advantage

*created and supplied* the violative disclosure form to Wells Fargo's applicants through its web portal. (ECF 34 ¶¶ 3, 28, 30.) This act places First Advantage front-and-center for violations of Section 1681b(b)(1), as it allowed Wells Fargo to certify to FCRA compliance when First Advantage knew that Wells Fargo could not so certify because the disclosure form First Advantage supplied violated the FCRA. (*Id.* ¶ 29, 32.)

After completing the background searches for Wells Fargo's applicants, First Advantage also applied a score or grade—such as eligible or ineligible for employment—to the search results based on Wells Fargo's hiring criteria. (*Id.* ¶¶ 5, 37–38.) Through this conduct, First Advantage is a "user" of employment-purpose consumer reports such that it must take additional steps, including the provision of notice to applicants before it takes an adverse action (such as the denial of employment) against them. 15 U.S.C. § 1681b(b)(3). Wells Fargo adopts First Advantage's grading of applicants as "ineligible" wholesale, electronically parroting back that decision to First Advantage who then sends the (now late) pre-adverse action notice based on Wells Fargo's confirmation of First Advantage's grade of ineligible. (ECF 34 ¶¶ 42–43, 46, 196, 198–99.) Despite taking an adverse action against applicants with its grade of "ineligible," First Advantage sends no notice to these applicants. (*Id.* ¶¶ 4–5, 38–40, 196–97.) This failure violates Section 1681b(b)(3) on its face.

## IV.   LEGAL FRAMEWORK.

### A.   The Applicable FCRA Requirements.

The FCRA provisions at issue set forth simple, easy-to-follow demands for entities creating and using reports in the employment context. A CRA may furnish a report to an employer such as Wells Fargo "only if" the CRA has first received its certification that the employer/user has obtained the consumer's appropriate authorization and provided the required disclosure. 15 U.S.C. § 1681b(b)(1)(A) (prohibiting furnishing a report without certification of the requirements of 15

U.S.C. § 1681b(b)(2)). This provision is a strict prohibition on First Advantage's ability to issue reports—it can do so, as the statute states, "only if" it receives the certification from Wells Fargo that Wells Fargo has met the disclosure and authorization requirements before it provides Wells Fargo with a report. *See Sanders v. Glob. Radar Acquisition, LLC*, No. 2:18-CV-555-FTM-99CM, 2019 WL 118044, at *6 (M.D. Fla. Jan. 7, 2019) (finding Article III injury where defendant CRA is accused of providing reports for employment purposes without obtaining the Section 1681b(b)(1) certification from employers); *Robles v. AMPAM Parks Mech., Inc.*, No. EDCV 14-02362-VAP, 2015 WL 1952311, at *4 (C.D. Cal. Apr. 28, 2015) (holding that the employer must certify compliance under Section 1681b(b)(1) each time it requests an employment-purpose consumer report).

Contrary to First Advantage's argument, such constitutes more than a mere statutory violation bereft of Article III injury. (ECF 40 at 8–9.) Plaintiffs' claim is a simple one—because First Advantage knew Wells Fargo did not provide a standalone disclosure and therefore could not have obtained a proper authorization from Plaintiffs to obtain background checks about them, First Advantage also knew that Wells Fargo's certification of compliance with Section 1681b(b)(1) was void. As such, First Advantage issued thousands of reports to Wells Fargo and other employers without the statutory grant of permission to do so. Absent a statutory basis for issuing those reports, Wells Fargo invaded Plaintiffs' and Class Members' privacy. *Sanders*, 2019 WL 118044, at *5.

## B.   Article III Standing.

The Article III standing requirements are well-settled. To sue in federal court, a plaintiff must plead he suffered an injury in fact, caused by the challenged conduct, which is redressible by the Court. *S. Car. v. United States*, __ F.3d __, No. 18-1684, 2019 WL 124267, at *4 (4th Cir. Jan. 8, 2019). The purported injury in fact must be both concrete and particularized. *Id*. To satisfy Article III, Plaintiffs' factual allegations must plausibly show such injury in fact plus a causal

connection between that fact and the complained-of injury. *Rhoades v. Kinsman*, No. 3:18-cv-558-HEH, 2018 WL 6681207, at \*4 (E.D. Va. Dec. 19, 2018).

At base, an injury in fact is a concrete and particularized invasion of a legally protected right, and such must be actual and imminent as opposed to conjectural or hypothetical. *S. Car.*, 2019 WL 124267, at \*4; *Griffin v. Dep't of Labor Fed. Credit Union*, __ F.3d __, No. 18-1312, 2019 WL 80704, at \*2 (4th Cir. Jan. 3, 2019). In addition to the employment-context standing decisions cited above, courts—including this one—generally conclude that allegations of someone illegally accessing or distributing information protected by the FCRA confer Article III injury and therefore standing. *Gillison v. Lead Express, Inc.*, No. 3:16-cv-41, 2017 WL 1197821, at \*7 (E.D. Va. Mar. 30, 2017) ("[I]t has long been the case that an unauthorized dissemination of one's personal information, even without a showing of actual damages, is an invasion of one's privacy that constitutes a concrete injury sufficient to confer standing to sue.'"); *Sanders*, 2019 WL 118044, at \*5; *Ruk v. Crown Asset Mgmt., LLC*, No. 1:16-cv-3444-LMM-JSA, 2017 WL 3085282, at \*6 (N.D. Ga. Mar. 22, 2017), *report & recommendation adopted*, No. 1:16-CV-03444-LMM, 2017 WL 3085686 (N.D. Ga. June 8, 2017) (finding Article III injury where plaintiff alleged creditor accessed her consumer report without a permissible purpose, in violation of 15 U.S.C. § 1681b(a)); *see Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir.), *cert. denied*, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017) (finding violation of Section 1681b(b)(2)'s protections invades a right to privacy and sets in motion a chain of causation that gives rise to Article III standing); *Gambles v. Sterling Infosystems, Inc.*, 234 F. Supp. 3d 510, 524 (S.D.N.Y. 2017) (concluding standing existed for FCRA violations and collecting "other cases holding that the dissemination of information about a plaintiff in violation of a statute aimed at securing privacy or consumer protection results in concrete injury conferring standing to sue"); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 640 (3d Cir. 2017) (finding standing to sue under FCRA when laptops

containing plaintiffs' personal information were stolen from defendants, as this "unauthorized dissemination of their own private information—the very injury that FCRA is intended to prevent" constituted "a *de facto* injury that satisfies the concreteness requirement" regardless of "whether or not the disclosure of that information increased the risk of identity theft or some other future harm").

V.     ARGUMENT AND AUTHORITIES.

**A.     Plaintiffs Meet The Requirements For Article III Standing.**

    **1.     Plaintiffs All Suffered An Article III Injury In Fact From First Advantage's Violations Of Section 1681b(b)(1).**

        **a.     Issuing consumer reports without a statutory basis for doing so violates one of the fundamental tenets of the FCRA and works Article III injury.**

First Advantage's arguments for dismissal badly misconstrue Plaintiffs' Section 1681b(b)(1) claim in the hopes of garnering a victory. It asserts that "[t]he Complaint does not include any allegations (or even a legal assertion) that Wells Fargo's improper disclosure was caused by First Advantage's certification process." (ECF 40 at 7.) To be clear—Plaintiffs do not seek to hold First Advantage responsible for Wells Fargo's provision of an improper disclosure. Wells Fargo's failure to make such a disclosure does not establish a cause of action against First Advantage.  Not in this case.  Not in any case.  Rather, Plaintiffs' allegation is much simpler: First Advantage furnished their consumer reports without a permissible purpose and basis to do so.  Absent the required (non-sham) certification, First Advantage simply could not lawfully furnish the Plaintiffs' reports. *That* is the violation.  When it issued reports on Plaintiffs pursuant to the Wells Fargo certification it knew to be inaccurate, First Advantage violated Section 1681b(b)(1) and subsequently Plaintiffs' and Class Members' privacy because it had no statutory basis to issue those reports. (*Id.* ¶¶ 28–32, 171–84, 189–90.)

Plaintiffs' claims could not be more simple or straightforward. They plainly plead that First Advantage provided background checks to Wells Fargo and other employers without obtaining the statutory certification that must precede any such distribution of information. (*Id.* ¶¶ 28–32.) In other words, First Advantage illegally provided those background checks, because by failing to obtain a valid certification from the users, First Advantage had no statutory permission to furnish them. (*Id.* ¶¶ 167–90.) First Advantage's illegal release of Plaintiffs' reports invaded their privacy, one of the core protections of the FCRA since its birth. (*Id.* ¶¶ 180–84.) As the trove of cases cited just above confirms, this injury is sufficient to confer Article III standing.

First Advantage's circular arguments cannot save it from liability. It focuses on Plaintiffs' assertion that First Advantage violated their rights because it lacked a *statutory* basis for issuing the reports, claiming this confirms Plaintiffs allege merely a statutory violation that cannot confer Article III standing. (ECF 40 at 9 (emphasis in original).) This argument takes Plaintiffs' allegations too literally. Yes, Plaintiffs allege First Advantage lacked the statutory permission to issue reports, but that is because having a permissible purpose—the statutory permission—under the FCRA is the *only reason* anyone may furnish a consumer report. 15 U.S.C. § 1681b(a) (setting out the reasons reports may be issued, "and no other").

As this Court has held, accessing consumer reports without a permissible purpose violates the consumer's privacy. *Gillison*, 2017 WL 1197821, at *7.

First Advantage's assertions that Plaintiffs cannot claim an invasion of privacy because they have not seen their reports or that the information is in the reports is "public" are non-sensical and likewise fail. (ECF 40 at 8 n.3, 10.) Whatever information appeared on Plaintiffs' reports, it is strictly protected from distribution in the employment context by Section 1681b(b)(1)'s certification requirement. 15 U.S.C. § 1681b(b)(1); *Sanders*, 2019 WL 118044, at *5. Even if the report contained no criminal history, for example, First Advantage may not disseminate the report

to Wells Fargo (or anyone) without a valid certification of compliance with Section 1681b(b)(1). Put differently, the Court cannot decide whether a user's certification is important by evaluating the contents of a report. Congress has already decided that the certification is important by the language it enacted in the statute. The report may not issue, regardless of its contents, without a valid Section 1681b(b)(1) certification. 15 U.S.C. § 1681b(b)(1).  A consumer's privacy is not valuable merely as to some personal information and not others.

First Advantage's claim that Plaintiffs' cannot complain about the release of "public" information is particularly spurious for an entity that operates every day under the FCRA's umbrella. (*See* ECF 40 at 8 n.3.) Plaintiffs complain about the release of information—regardless of its source—for employment purposes where First Advantage had no statutory basis for doing so. Even if a report were blank, containing no criminal history whatsoever (and therefore none of First Advantage's supposed "public" information), they contain other personal, private information that First Advantage is *still* prohibited from providing it to an employer without the Section 1681b(b)(1) certification. *See* 15 U.S.C. § 1681b(b)(1) (saying nothing about the contents of the report as a condition on release to an employer, only that a report cannot issue without the certification). There could not be, by any measure, a more straightforward violation of a statute aimed at protecting consumer privacy.

Privacy of information matters, even when that information is held by public entities like courthouses. Through Section 1681b(b), the FCRA curtails access to and use of consumer reports. *Kodrick v. Ferguson*, 54 F. Supp. 2d 788, 795 (N.D. Ill. 1999) ("With the enactment of the FCRA, Congress sought to create reasonable procedures regarding the dissemination and use of consumer information."). *See also* Lenore Cooper Garon, *Protecting Privacy in Credit Reporting*, 24 Stan. L. Rev. 550, 553–54 (1972) ("There are essentially three ways in which credit bureaus deleteriously affect the values we subsume under the head of "privacy": (1) through dissemination

14

of private facts about the individual; (2) through damage caused to our political and social structure through fear of such dissemination;  and (3) through the furthering of what can best be termed "irrational discrimination" on the basis of information normally considered private.")

Though First Advantage glosses the certification requirement of Section 1681b(b)(1) as merely procedural, it is no such thing. It is an express restriction on CRAs' provision of consumer reports—they can *only* issue reports to those entities from whom they obtain a proper certification. 15 U.S.C. § 1681b(b)(1) ("A consumer reporting agency may furnish a consumer report for employment purposes *only if* . . . "). Put differently, a CRA may not share a consumer's private information with employers from whom it has not received a valid certification to follow the FCRA. The FTC long ago recognized this certification requirement as a "duty" to which CRAs are held in the employment context. *Fed. Trade Comm'n, Advisory Op. to Beaudette*, 1998 WL 34323741, at *1–2 (F.T.C. June 9, 1998). Without compliance with both the requirements of Section 1681b(b)(1) (the certification from the employer) and Section 1681b(b)(2) (the presentation to consumers of a valid disclosure form), CRAs may not issue consumer reports for employment purposes.

It is also well-established, by this Court and others, that the protections to which users are certifying they will meet—Sections 1681b(b)(2) and b(b)(3), among others—create substantive rights to which Article III standing attaches. *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 632 (E.D. Va. 2016); *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071570, at *5 (E.D. Va. Mar. 15, 2016). Another court, relying on *Thomas*, concluded *Thomas*'s holding that Sections 1681b(b)(2) and b(b)(3) create substantive rights "is applicable not only to the disclosure requirements of § 1681b(b)(2) but also to the notice requirements of § 1681b(b)(3) and the certification requirements of § 1681b(b)(1)." *Mix v. Asurion Ins. Servs. Inc.*, No. CV-14-02357-PHX-GMS, 2016 WL 7229140, at *6 (D. Ariz. Dec. 14, 2016). Thus, to vindicate these rights,

Plaintiffs need not allege any additional harm beyond the statutory violation. *Id.* (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)).

"Violations of FCRA that unfairly deprive a consumer of relevant information, or obtain consent for a background check without a statutorily-proper disclosure, implicate the harms Congress identified in FCRA, and thus cause concrete harms." *Id.* (addressing rights created by Sections b(b)(1), (b)(2), and (b)(3)). Here, the rights protected by Sections 1681b(b)(1), (b)(2), and (b)(3), are two: (1) the right to certain information, in a particular form, at a certain time—by way of a disclosure form that complies with Section 1681b(b)(2) and pre-adverse action notice under Section 1681b(b)(3); and (2) the right to privacy—meaning consumers may control to whom their private, personal information is given, and for which others "may invade only under stringently defined circumstances." *Thomas*, 193 F. Supp. 3d at 631–32. In short, First Advantage worked informational injury and invasion of privacy on Plaintiffs when it violated Section 1681b(b)(1) by providing reports for Wells Fargo to use in its hiring process when it knew that Wells Fargo could not truthfully certify its compliance with Section 1681b(b)(2). First Advantage therefore lacked Section 1681b(b)(1)'s permission to issue the reports to Wells Fargo, meaning it allowed the invasion of Plaintiffs' privacy and right to information with each report it issued to Wells Fargo.

None of the cases to which First Advantage directs the Court—*Kirchner v. First Advantage Background Services Corp.*, No. CV 2:14-1437 WBS EFB, 2016 WL 6766944, at *2 (E.D. Cal. Nov. 14, 2016) (a decision on appeal to the Ninth Circuit), *Larroque v. First Advantage LNS Screening Sols., Inc.*, No. 15-CV-04684 JSC, 2016 WL 4577257, at *5 (N.D. Cal. Sept. 2, 2016), and *Disalvo v. Intellicorp Records, Inc.*, No. 1:16 CV 1697, 2016 WL 5405258, at *3 (N.D. Ohio Sept. 27, 2016)—compels a different conclusion as to either of these rights. As to the violation of Section 1681b(b)(1), none of the cases contain a key fact present here, namely, that First Advantage knew Wells Fargo's certification was void because it created the objectively defective

disclosure form and provided that form as the only means of complying with Section 1681b(b)(2) to the applicants of another. (Doc. 14 ¶¶ 6–7, 22.) Also missing in *Larroque*, but again present here, were any claims in the complaint of invasions of privacy. *Larroque*, 2016 WL 4577257, at *4; (*see* Doc. 14 ¶¶ 156–59.) And none of the cases appear to deal with a disclosure form that contains prohibited waiver language, like the one here, which courts have roundly concluded violates Section 1681b(b)(2) on its face. *Milbourne*, 92 F. Supp. 3d at 433; *Syed*, 853 F.3d at 507 ("M-I willfully violated the statute by procuring Syed's consumer report without providing a disclosure 'in a document that consist[ed] solely of the disclosure.'"); *Schoebel v. Am. Integrity Ins. Co. of Florida*, No. 8:15–cv–380–T–24 AEP, 2015 WL 3407895, at *6 (M.D. Fla. May 27, 2015) ("[T]he Court agrees with . . . the line of cases that have found that if the disclosure form contains a [liability] release, there is an FCRA violation."); *Speer v. Whole Foods Market Group, Inc.*, No. 8:14–cv–3035–T–26TBM, 2015 WL 1456981, at *3 (M.D. Fla. March 30, 2015) ("[Plaintiff alleges that] the inclusion of the waiver along with the disclosure violated the FCRA. . . . [W]ith all inferences drawn in favor of Plaintiff, if both the disclosure and the consent forms combined and read as one document with the waiver and release included simultaneously with the disclosure, the complaint states a claim for relief. . . . [T]he complaint withstands dismissal.").[3] First Advantage pins its position on cases completely different from this one, leaving it with no authority on which to base its standing argument.

      **b.**     **Any ostensible authorization for First Advantage to furnish a report to Wells Fargo was through a sham process that violates the FCRA does not limit their standing to sue First Advantage.**

---

[3] The Court should also disregard any citations to *Dilday v. DirecTV, LLC*, No. 3:16-cv-996-HEH, 2017 WL 1190916 (E.D. Va. Mar. 29, 2017), as that case was resolved without any responsive briefing from plaintiff, so there was no opposing arguments on the points the defendants raised for dismissal. *See id.* at *1. That decision is also directly at odds with *Gillison*, decided a day later, which found that the FCRA's protections against unauthorized distribution of consumer information worked a concrete injury.

First Advantage's argument that Plaintiffs' consent through the defective disclosure form vitiates standing fares no better. (ECF 40 at 9.) As the statute demands, a valid disclosure form is a prerequisite to anyone's use of an employment-purpose consumer report. 15 U.S.C. § 1681b(b)(2). A failed disclosure form, then, cannot garner the necessary permission to access one's report, even if the consumer signs the form. *See id.*; *Milbourne*, 92 F. Supp. 3d at 433; *Syed*, 853 F.3d at 507. And there is not a subjective component to the analysis of whether a disclosure form runs afoul of the requirements of Section 1681b(b)(2). What the consumer interpreted, thought, or understood about the contents of the form do not matter. *Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 1071570, at *4, *6–7 (E.D. Va. Mar. 15, 2016) (deciding the issue of whether the form met section 1681b(b)(2) as a matter of law against defendant's argument that the plaintiff lacked standing because he testified that he understood the form to mean the defendant would procure a background report on him). This conclusion makes complete sense, as the statute sets out an objective test—the form must be standalone—that does not require that the consumer understand or interpret anything. And as *Syed* holds, a violation of Section 1681b(b)(2) may be decided objectively. The statute explains what the form must communicate, with the point being that the consumer's subjective interpretation should not matter when considering a defendant's liability for failing to use a proper disclosure. *Milbourne* and *Syed* confirm this, and First Advantage does not cite a binding case holding otherwise.

### 2.     Plaintiffs' Injuries Are Sufficiently Traceable To First Advantage's Conduct.

Plaintiffs' claim under Section 1681b(b)(1) simple and straightforward—First Advantage invaded their privacy and caused them informational injury when it released their reports to Wells Fargo based on a certification it knew or should reasonably have known was invalid. (ECF 34 ¶¶ 27–33, 167–90.) First Advantage initially argues that Plaintiffs' allegations based on information and belief or what discovery will show are improper and should not be considered. (ECF 40 at 10.)

The Rules and this Court, however, allow proceeding in this manner, which is probably why First Advantage's sole citation on this point is to an Eastern District of Pennsylvania decision from 2001. (*See id.*); *see* FED. R. CIV. P.11(b)(3) (noting that in filing a pleading the attorney represents to the Court, among other things, that "the factual contentions have evidentiary support or, if specifically so identified, *will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*") (emphasis added); *Pili v. Patel*, No. 3:18-cv-317, 2019 WL 180185, at *7 (E.D. Va. Jan. 11, 2019) ("A plaintiff is generally permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant.") (quoting *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015)).

As to the substance of First Advantage's arguments, Plaintiffs do not—as First Advantage claims—plead a Section 1681b(b)(2) injury from First Advantage's provision of the defective disclosure to Wells Fargo. (ECF 40 at 10–11.) Plaintiffs instead assert that First Advantage improperly released their consumer reports because it had not obtained from Wells Fargo an appropriate certification of compliance with Section 1681b(b)(1). (ECF 34 ¶¶ 167–90.) Plaintiffs therefore claim First Advantage violated their privacy rights and rights to information through a certification from Wells Fargo that First Advantage knew or should have known was invalid based on the improper disclosure form. *See* 15 U.S.C. § 1681b(b)(1). It is not that First Advantage had a duty to confirm the certification's validity but, instead, the violation stems from First Advantage's *knowing, from the start, that the certification from Wells Fargo was invalid because it provided Wells Fargo with an improper disclosure form*. (ECF 34 ¶¶ 167–90.) There was therefore no permission by which First Advantage could lawfully provide reports to Wells Fargo. 15 U.S.C. § 1681b(b)(1). The violation injured Plaintiffs in that First Advantage allowed Wells Fargo access to information that First Advantage had no right to give and Wells Fargo had no right to receive,

and First Advantage knew this, tying the violation to the harm Plaintiffs suffered. The rights created by Section 1681b(b)(1) are substantive, *Sanders*, 2019 WL 118044, at *5; *Mix*, 2016 WL 7229140, at *6, and First Advantage cites only this Court's prior decision and *Kirchner*, which is distinguishable as noted above.[4] (ECF 40 at 12.) Under the Rule 12(b)(6) pleading standards, then, the Court should therefore conclude that Plaintiffs have pleaded a claim for relief under Section 1681b(b)(1).

**B.    Plaintiffs Have Adequately Stated Claims For Violations Of Sections 1681b(b)(1) and 1681b(b)(3) To Satisfy Rule 12(b)(6).**

**1.    Plaintiffs plausibly allege a violation of Section 1681b(b)(1).**

As the Court well knows, Plaintiffs' allegations control, are entitled to the presumption of truth, and are viewed in their favor at this stage. *Jenkins v. Virginia*, No. 3:18-cv-203, 2018 WL 6834359, at *1 (E.D. Va. Dec. 28, 2018). First Advantage would have the Court conclude that Wells Fargo's certification alone, which is all that the statute required First Advantage to obtain, is sufficient to defeat Plaintiffs' Section 1681b(b)(1) claim. (ECF 40 at 14.) To be sure, requiring CRAs to somehow assure that what an employer represents regarding any of the FCRA's prerequisites to obtaining reports is in fact true would be difficult, but this is no ordinary case. Here, First Advantage had every reason to know that Wells Fargo could not validly comply with Section 1681b(b)(2) because First Advantage is the one that supplied the form which failed that Section's standalone disclosure requirement. (ECF 34 ¶¶ 167–76.)

First Advantage's own arguments here provide the basis for a finding that Plaintiffs meet Rule 12(b)(6). As First Advantage notes, 15 U.S.C. § 1681e(a) requires that CRAs make

---

[4] *Kirchner* is further afield in that it notes "Plaintiff cites no case, and the court is not aware of any case, holding that failure to comply with (b)(1) results in a 'concrete' injury." *Kirchner*, 2016 WL 6766944, at *2. Since *Kirchner*, however, *Sanders* was decided, and this Court's reasoning in *Gillison* provides ample ground on which to base a decision that Section 1681b(b)(1) endows consumers with substantive rights to which Article III harm attaches. *Gillison*, 2017 WL 1197821, at *7; *Sanders*, 2019 WL 118044, at *5.

reasonable efforts to verify that users have certified to a permissible purpose before the CRA issues a report. (ECF 40 at 14); *see* 15 U.S.C. § 1681e(a). The permissible purpose for which First Advantage provided the reports to Wells Fargo was, undisputedly, employment purposes. 15 U.S.C. § 1681b(a)(3)(B). The employment-purposes use comes with its own, separate set of restrictions on distribution of reports, demanding that users further certify their compliance with Section 1681b(b)(2). 15 U.S.C. § 1681b(b)(1). Thus, for a CRA to furnish a report to an employer/user for "employment purposes"—meaning for that to be a valid permissible purpose under Section 1681b(a)—the certification requirement of Section 1681b(b)(1) must be met. 15 U.S.C. §§ 1681b(b)(1); 1681e(a). In both of these provisions, these are expressly stated as duties of the CRA, not the employer/user.  Id.  So while the statutory language allows First Advantage to reasonably accept an employer's word that it complied with Section 1681b(b)(2) before issuing a report, the facts here are starkly different because First Advantage could not so believe as to Wells Fargo. First Advantage knew or should have known that Wells Fargo's certification was false, as First Advantage supplied the basis for the falsification—the non-compliant disclosure form.

First Advantage argues Plaintiffs' Section 1681b(b)(2) claim "is nothing more than an attempt to bootstrap Section 1681b(b)(2) and (b)(3) liability on to Section 1681b(b)(1)," but that is flatly incorrect. (ECF 40 at 14.) Even a cursory reading of the Second Amended Complaint confirms that Plaintiffs plainly seek accountability under Section 1681b(b)(1) for the release of their reports to Wells Fargo without a statutory basis for that action. (ECF 34 ¶¶ 7, 19–30, 175–86.) First Advantage views its best chance of garnering dismissal as a recasting of that claim to fit its arguments, a charade the Court should reject.[5]

---

[5] First Advantage also notes Plaintiffs' settlement with Wells Fargo, hoping also to use the resolution of that lawsuit to influence the Court's decision. As the Section 1681b(b)(1) claim pressed here has nothing to do with the settlement of *Manuel*, the Court should give this argument no attention.

An analogous comparison can be considered with FCRA §§1681b(a) and 1681q.  The former clearly applies only to the CRA.  15 U.S.C. § 1681b(a).  ("any consumer reporting agency may furnish a consumer report under the following circumstances and no other: […]").  In contrast, §1681q makes it unlawful for a user to "knowingly and willfully obtain[] information on a consumer from a consumer reporting agency under false pretenses[.]"  *See Hansen v. Morgan*, 582 F.2d 1214, 1221 (9th Cir. 1978) ("Noncompliance with s 1681q thereby forms a basis of civil liability under s 1681n.")  These are co-existent and independent duties, each similar, but still materially different.

**2.      Plaintiffs likewise state a claim under Section 1681b(b)(3).**

**a.      There are no inconsistencies with Plaintiffs' allegations here and the facts and circumstances of *Manuel*.**

As before, First Advantage supports its arguments for dismissal largely by disputing Plaintiffs' factual allegations as differing from evidence in *Manuel*, claiming Plaintiffs' allegations here are a "[i]n complete contravention of their stipulations and filings in *Manuel*." (ECF 40 at 16.) This is simply not accurate, and relies in part on incomplete .

Plaintiffs was concerned with the Court's cautions in its previous opinion and thus dealt with any perceived inconsistencies with *Manuel* in their Second Amended Complaint in order to provide full context.  (ECF 40, ¶38-41; 48-51).

These allegations are correct and address concerns the Court has stated about the veracity of Plaintiffs' allegations here, and they certainly surmount the low bar required by Rule 12(b)(6) when taken as true as the Court must at this stage.

**b.      Plaintiffs sufficiently plead that First Advantage took adverse actions against them without first providing notice.**

First Advantage argues that Plaintiffs' Section 1681b(b)(3) claim fails because they have not alleged that First Advantage goes beyond its role as a CRA in these circumstances. (ECF 40 at

18.) Not so—Plaintiffs have alleged just these facts, aligning this case with others in which courts have concluded that the CRAs used consumer reports for employment purposes.

All First Advantage concentrates its arguments on is the fact that First Advantage adjudicates reports for Wells Fargo. (*Id.*) But that is only part of the analysis—the *results* of those adjudications are just as important, and confirm that First Advantage also used Plaintiffs' reports for employment purposes. Plaintiffs plainly allege that First Advantage takes adverse actions against Wells Fargo applicants because its adjudication, which Wells Fargo adopts in nearly every circumstance, results in a final denial of employment for those deemed by First Advantage to be ineligible. (ECF 34 ¶¶ 38–41, 48–51, 196–99, 209.) The adjudication by First Advantage sets in motion a process for providing notice to applicants adjudicated ineligible, in which process Wells Fargo plays, at best, a miniscule role because it has abdicated most functions to First Advantage. (*Id.* ¶¶ 42–43.) That includes not only the decision-making through adjudication, but also the provision of notice without Wells Fargo providing any additional information (apart from the regurgitation of First Advantage's ineligible adjudication) to cause the sending of the second notice that purports to finally decline employment. (*Id.* ¶¶ 44–46, 198–99.) As Plaintiffs further allege:

> 209. First Advantage is also fully aware that it acts in dual roles as both consumer reporting agency and user when it both generates the consumer report for an employer customer and also adjudicates that applicant's eligibility for hire. First Advantage defended a comparable federal lawsuit brought against it in its previous name form, LexisNexis. *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F. Supp. 2d 532 (E.D. Pa. 2012). In early 2012, the federal court rejected arguments that a consumer reporting agency could not take an FCRA adverse action, that adjudication as ineligible was not itself an adverse action and that First Advantage could not be liable under §1681b(b)(3) when it adjudicated on behalf of its customer principal, the employer. *Id.* at 539; 542 ("[A]ny person who takes an adverse action must comply with § 1681b(b)(3)(A), be it a CRA, an employer, or a staffing agency[.]"; "[T]he Court concludes that defendant took an adverse action against plaintiffs when it adjudicated them as noncompetitive. This occurred before defendant sent plaintiffs the required notice under § 1681b(b)(3)(A). Thus, plaintiff has pled facts sufficient to state a claim for relief.")

(*Id.*) First Advantage brushes *Goode* away as wrongly decided, not adopted by any appellate court, and at odds with two other non-binding decisions from Florida and New Jersey (which are also not adopted by their applicable Circuit courts). (ECF 40 at 23.) For whatever those decisions are worth, there are others holding in Plaintiffs' favor on this issue as well, including one from this District. *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 457 (E.D. Va. 2015) (denying motion to dismiss Section 1681b(b)(3) claim against CRA, relying on allegations that CRA "took an active role in the employment decision process"); *Henderson v. InfoMart, Inc.*, No. 114CV01609SCJLTW, 2014 WL 12284041, at *11 (N.D. Ga. Aug. 15, 2014), *report & recommendation adopted*, No. 1:14-CV-1609-SCJ-LTW, 2014 WL 12465410 (N.D. Ga. Sept. 2, 2014);[6] *see Kingery v. Quicken Loans, Inc.*, 629 F. App'x 509, 515–16 (4th Cir. 2015) (defining "uses," as set forth in another FCRA provision, as meaning "to employ or to derive service from").

First Advantage's arguments also focus—improperly—on which entity makes the "'final hiring decision' on Plaintiffs." (ECF 40 at 23.) There is no case reaching such a holding, and the statutory language does not support an argument that an adverse action must be the final, irreversible hiring decision and nothing else. The Act's definitions of adverse action confirm this, as they are particularly expansive—as one would expect from a remedial, consumer-oriented statute—bringing the following within the ambit of an adverse action:

> (ii) a denial of employment or *any other decision* for employment purposes that adversely affects any current or prospective employee; . . .
>
> (iv) an action taken or determination that is--
>
>> (I) made in connection with an application that was made by, or a transaction that was initiated by, any consumer, or in connection

---

[6] The *Henderson* court also noted that "contrary to Defendant's suggestion, multiple courts have positively cited *Goode*'s holdings." *Henderson*, 2014 WL 12284041, at *11 (citing *Mattiaccio v. DHA Grp., Inc.*, 21 F. Supp. 3d 15 (D.D.C. 2014); *Moore v. Rite Aid Hdqtrs Corp.*, No. 13-1515, 2014 WL 3735568 (E.D. Pa. July 30, 2014); *Reardon v. ClosetMaid Corp.*, 2:08-CV-01730, 2013 WL 6231606 (W.D. Pa. Dec. 2, 2013).

> with a review of an account under section 1681b(a)(3)(F)(ii) of this
> title; and
>
> (II) *adverse to the interests of the consumer.*

15 U.S.C. § 1681a(k)(1)(B) (emphasis added). The Court did not expressly reject either definition

in its earlier decision, and it acknowledged that the most-recent holding from this District adopted

the expansive view that both definitions would apply in the employment context:

> Courts, even courts within this district, have disagreed over which definition of
> "adverse action" applies to employment decisions. Some courts have held that both
> definitions apply to adverse actions within the employment context. *See, e.g.*,
> *Branch v. Gov't Emps. Ins. Co.*, 286 F. Supp. 3d 771, 781 (E.D. Va. Dec. 19, 2017)
> (quoting 15 U.S.C. § 1681a(k)(1)(B)(ii) and (k)(1)(B)(iv) and holding that both
> definitions are relevant in the FCRA context); *Muir v. Early Warning Servs., LLC*,
> No. 16-521, 2016 WL 4967792, at *4 (D.N.J. Sept. 16, 2016) ("The FCRA defines
> 'adverse action' [under] 15 U.S.C. § 1681a(k)(1)(B)(ii); or, under the 'catch-all'
> provision, . . . . 15 U.S.C. § 1681a(k)(1)(B)(iv)."). Others have held that the
> employment-specific definition, not the catch-all provision, applies to claims based
> on adverse actions taken in the employment context. *See, e.g.*, *Costa v. Family
> Dollar Stores of Va., Inc.*, 195 F. Supp. 3d 841, 845 n.8 (E.D. Va. 2016) ("In
> addition to providing [a] definition of 'adverse action' in the employment context,
> the FCRA's definition of 'adverse action' includes a definition in two other specific
> contexts and a broad catch-all definition. The Court follows the lead of other courts
> that look only to the employment-specific definition." (citations omitted)); *Javid v.
> SOS Int'l, LTD*, No. 1:12cv1218, 2013 WL 2286046, at *4 (E.D. Va. May 23, 2013)
> ("For purposes of the employment context, the F[CR]A defines an 'adverse action'
> as 'a denial of employment or any other decision for employment purposes that
> adversely affects any current or prospective employee.'" (quoting 15 U.S.C. §
> 1681a(k)(B)(ii))).

*Frazier v. First Advantage Background Servs. Corp.*, No. 3:17CV30, 2018 WL 4568612, at *11

n.22 (E.D. Va. Sept. 24, 2018) (alteration in original). First Advantage provides nothing to

overcome these realities, cementing that Plaintiffs have adequately pleaded that First Advantage's

actions in adjudicating their reports as ineligible is an adverse action for which notice must first

issue.

First Advantage's final argument, that it cannot be a user of Plaintiffs' reports because it

did not disclose those reports to a third party, is similarly flawed. (ECF 40 at 23–24.) To agree

with First Advantage's argument, the Court must first reject the decisions cited above that confirm

a CRA can be a user of reports in this context. Second, siding with First Advantage requires the Court to ignore statutory language supporting that the CRA may be a user. The definition of consumer report includes information "that *is used* or is *expected* to be used . . . in whole or in part" in making a decision for, among other things, employment. 15 U.S.C. § 1681a(d)(1). The employment-purpose provisions at issue here require a "use" of reports, but they apply to "*persons* intending to take such adverse action." *Id.* § 1681b(b)(3). This Court has applied these statutory provisions to CRAs as Plaintiffs argue here. *Ridenour*, 147 F. Supp. 3d at 457 (agreeing that plaintiff properly pleaded that the CRA "used" his report to take an adverse action). And this makes complete sense, as the "expected to be used" clause of the definition certainly contemplates a future action by someone. 15 U.S.C. § 1681a(d)(1). First Advantage collected about Plaintiffs was "expected to be used" to judge them for employment (employment reports is nearly all First Advantage sells), so the fact that First Advantage used that information before passing it to Wells Fargo does not sidestep that First Advantage "expected [Plaintiffs' reports] to be used" for employment purposes. *Id.* They are therefore consumer reports, even in First Advantage's hands. While there is on-point authority from this District supporting Plaintiffs' arguments, all First Advantage provides are non-employment-provision decisions from elsewhere. (ECF 40 at 24 (citing, *e.g.*, *Mostofi v. Experian Info. Sols., Inc.*, No. CIV.A. DKC 13-2828, 2014 WL 3571804, at *2 (D. Md. July 18, 2014), in which that court considered "whether a credit file shared with Experian's counsel is a 'consumer report' and therefore within the ambit of Section 1681b").)

## C. The Court Should Not Dismiss Any Claims On The Issue Of Willfulness.

### 1. This Court has held time and again that willfulness is an issue for the jury and not appropriate for disposition even on summary judgment, let alone a motion to dismiss.

First Advantage cannot credibly argue that willfulness should be decided now. This Court has repeatedly held that willfulness is an issue for the jury. *Thomas v. FTS USA, LLC*, No. 3:13-

CV-825, 2016 WL 3653883, at *9 (E.D. Va. June 30, 2016); *Manuel v. Wells Fargo Bank, Nat'l Ass'n*, 123 F. Supp. 3d 810, 829 (E.D. Va. 2015); *see also Dalton v. Capital Assoc. Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001). Still, in some instances where the Court has ruled on willfulness before trial, but it has done so on a summary judgment record. *Milbourne v. JRK Residential Am., LLC*, 202 F. Supp. 3d 585, 596 (E.D. Va. 2016). Even the two cases First Advantage cites on the topic were summary-judgment decisions, not motions to dismiss. *Henderson v. Trans Union, LLC*, No. 3:14-cv-00679-JAG (E.D. Va. May 2, 2017); *Costa v. Family Dollar Stores of Va., Inc*., 195 F. Supp. 3d 841, 846–47 (E.D. Va. 2016). A fully developed record is appropriate for considering willfulness, and the record here is not.

First Advantage's arguments also miscast the standard of review, claiming in its bolded heading "**Plaintiffs Cannot Show A Willful Violation.**" (Doc. 40 at 28.) That is true, now, Plaintiffs cannot show that First Advantage willfully violated the FCRA. But that is not Plaintiffs' burden at this stage—all they must do is *allege* that First Advantage's violations were willful. Later, on summary judgment, First Advantage will have to present evidence of its interpretation of the statute and argue that it did not willfully violate the Act when it implemented the processes and procedures Plaintiff challenges. To measure the First Advantage's interpretation of the statutory duties against the willfulness standards, one must be able to establish—at minimum—what First Advantage knew, and when it knew it:

> *Safeco* teaches that assessment of the willfulness issue involves a two-step inquiry. First, it is necessary to determine whether the defendant "adopt[ed]," and based its violative conduct on, an "interpretation" that was "objectively reasonable," as that concept was defined in *Safeco*, a question of law that both parties agree is to be decided by the Court. If the Court finds that the defendant's interpretation was objectively reasonable, its conduct falls within the safe harbor created by *Safeco* and the defendant is entitled to judgment as a matter of law on the issue of willfulness. And, that is what JRK now seeks.
>
> If, however, the Court concludes that the interpretation was not objectively reasonable, it becomes necessary to determine whether the defendant's violation

rose to the level of a knowing or reckless violation, as defined by *Safeco*. That determination, the parties agree, must be made by the jury.

*Milbourne v. JRK Residential Am., LLC*, No. 3:12CV861, 2016 WL 4265741, at *5 (E.D. Va. Aug. 11, 2016). Discovery will of course be required to fully flesh-out this inquiry but, at this point, setting out the requirement for willfulness will focus the Court's analysis of Plaintiffs' allegations against the challenge First Advantage raises. *Milbourne v. JRK Residential Am., LLC*, 202 F. Supp. 3d 585, 596 (E.D. Va. 2016) (analyzing defendant's summary judgment attempt against its purported reading of the FCRA that resulted in the challenged processes and procedures). As a full record is appropriate for the Court's analysis, it should decline to dismiss on that ground.

## 2.   Even if the Court were to consider the issue of willfulness now, Plaintiffs have adequately pleaded it.

Here again, First Advantage cites no caselaw agreeing with its position that willfulness is inappropriately pleaded, arguing the merits of willfulness instead. (ECF 40 at 28.) That is likely because, in this District and beyond, courts have recognized that facts articulated as they are here plausibly allege a willful violation of the FCRA.

Plaintiffs' allegations of willfulness are clear and straightforward.   (ECF 34, ¶¶23-27.)[7] Notably, First Advantage devotes a scant, single paragraph to its discussion of willfulness as to Section 1681b(b)(1), referring simply to its earlier discussion of the supposed requirement of certification despite knowing the certification being false. (ECF 40 at 28.) Whatever the circumstances, as the Third Circuit has held regarding willfulness, "[t]he credit agency whose conduct is first examined under that section of the Act should not receive a pass because the issue has never been decided." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. 2010); *see Dreher v. Experian Info. Sols., Inc.*, No. 3:11-CV-00624-JAG, 2013 WL 2389878, at *8 (E.D. Va.

---

[7] Plaintiffs provide only a subset of their willfulness allegations herein for brevity's sake. For the complete inventory of factual allegations, Plaintiffs also direct the Court to Paragraphs 167–90 and 203–14 of their Second Amended Complaint. (ECF 34.)

May 30, 2013) (quoting this phrase from *Cortez* with approval in denying defendant summary judgment on willfulness).

Courts analyzing the adequacy of willfulness allegations under the FCRA have refused to dismiss under Rule 12(b)(6) complaints with allegations far less detailed and informative than Plaintiffs'.  See e.g. *Freedom v. Citifinancial, LLC*, No. 15 C 10135, 2016 WL 4060510, at *9 (N.D. Ill. July 25, 2016) (citations omitted); *see Doe v. Sentech Employment Servs., Inc.*, 186 F. Supp. 3d 732, 739–40 (E.D. Mich. 2016) (finding allegations mirroring those in Plaintiffs' Complaint sufficient to plead a knowing violation of the FCRA); *Ashirifi-Quao v. Keybank, N.A.*, No. 1:15CV1481, 2015 WL 7779224, at *2 (N.D. Ohio Dec. 1, 2015) (finding allegation "KeyBank's actions in requesting and obtaining Plaintiff's personal credit information with actual knowledge that it did not have a permissible purpose to do so constitutes a knowing and willful violation of the FCRA for each such inquiry it made," among others was sufficient to plead claim for statutory, actual and/or punitive damages); *Firneno v. Radner Law Grp., PLLC*, No. 13-CV-10135, 2015 WL 4276340, at *4–5 (E.D. Mich. Mar. 31, 2015) (denying defendant's to dismiss willfulness claims as supposedly ineffectively pleaded); *Moore v. First Advantage Enter. Screening Corp.*, No. 1:12 CV 792, 2012 WL 4461505, at *3 (N.D. Ohio Sept. 25, 2012) (denying motion to dismiss claims of willfulness, explaining "[t]he degree of knowledge involved in the alleged violations is a matter uniquely within the Defendants' knowledge and may not be capable of any more definite factual assertion prior to discovery"); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 624–65 (7th Cir. 2007) (finding that plaintiffs sufficiently alleged a willful violation by asserting that defendant violated the FCRA and did so willingly); *Asufrin v. Roundpoint Mortg. Servicing Corp.*, No. 15 C 9077, 2016 WL 1056669, at *5 (N.D. Ill. Mar. 17, 2016) (finding willfulness allegations sufficient where plaintiff claimed that furnisher "acted with reckless disregard" when it was informed of errors in her credit report several times yet failed to correct

them); *Lavey v. RadioShack Corp.*, No. 13 C 05818, 2014 WL 2819037, at *2 (N.D. Ill. June 23, 2014) (finding that complaint sufficiently alleged willfulness because "it aver[ed] that [defendant] was on notice of the [FCRA] requirement and thus it [was] plausible to infer either a knowing or reckless violation from the facts pleaded"); *Solimen v. Morton Coll.*, No. 13 C 1962, 2013 WL 4805004, at *3 (N.D. Ill. Sept. 9, 2013) (refusing to dismiss willfulness allegations where plaintiff alleged that defendant "uniformly fails" to follow the FCRA); *Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782, 784–85 (N.D. Ill. 2007) (citation omitted) (denying defendant's motion to dismiss willful noncompliance claim where plaintiff alleged that defendant knew or should have known of statute's requirements since there were multiple public statements made to the media about compliance with the statute and many of defendant's peers and competitors complied with the statute's requirements); *Murray v. E*Trade Fin. Corp.*, No. 5 C 5433, 2006 WL 2054381, at *3 (N.D. Ill. July 19, 2006) (denying defendant's motion to dismiss willful noncompliance claim where plaintiff alleged a violation; defendant was presumed to know the law). Taking their allegations liberally and in the light most favorable to Plaintiffs, as the Court must at this stage, compels a conclusion that Plaintiffs have adequately pleaded willful violations of the FCRA.

## VI.    CONCLUSION.

First Advantage provides no reasoned basis for the Court to dismiss the challenged claims. Plaintiffs' allegations are sufficient, and First Advantage's arguments are more appropriately reserved for summary judgment. The Court should therefore deny First Advantage's Motion.

Date: January 28, 2019.

Respectfully submitted,

**MICHAEL FRAZIER**, *et al.,*
*on behalf of themselves and on behalf of*
*all similarly situated individuals,*

_____/s/_____
Leonard A. Bennett, VSB #37523
Craig C. Marchiando, VSB #89736
Elizabeth W. Hanes, VSB #75574
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd. Suite 1-A
Newport News, VA 23601
(757) 930-3660 – Telephone
(757) 930-3662 – Facsimile
Email: lenbennett@clalegal.com
        elizabeth@clalegal.com
        craig@clalegal.com


Matthew J. Erausquin, VSB# 65434
**CONSUMER LITIGATION ASSOCIATES, P.C.**
1800 Diagonal Rd, Suite 600
Alexandria, VA  22314
(703) 274-7770 – Telephone
(888) 892-3513 – Facsimile
Email: matt@clalegal.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January 2019, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Esther S. McDonald
Seyfarth Shaw, LLP
1075 Peachtree Street NE
Suite 2500
Atlanta, GA 30309-3692
Email:  emcdonald@seyfarth.com

Frederick T. Smith
Seyfarth Shaw, LLP
1075 Peachtree Street NE
Suite 2500
Atlanta, GA 30309-3692
Email:  fsmith@seyfarth.com

                                              /s/
                             Leonard A. Bennett, VSB #37523
                             **CONSUMER LITIGATION ASSOCIATES, P.C.**
                             763 J. Clyde Morris Blvd. Suite 1-A
                             Newport News, VA 23601
                             (757) 930-3660 – Telephone
                             (757) 930-3662 – Facsimile
                             Email: lenbennett@clalegal.com