# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**MICHAEL FRAZIER, *et al.*,**
***for themselves and on behalf of all***
***similarly situated individuals,***

       **Plaintiffs,**

**v.**                                                    **Civil Action No. 3:17cv30**

**FIRST ADVANTAGE BACKGROUND**
**SERVICES CORP.,**

       **Defendant.**

## <u>MEMORANDUM OPINION</u>

This matter comes before the Court on Defendant First Advantage Background Services Corporation's ("First Advantage") Motion to Dismiss. (ECF No. 39.) Plaintiffs[1] responded, (ECF No. 43), and First Advantage replied, (ECF No. 46). Plaintiffs also filed a Motion for Leave to File Supplemental Authority, (ECF No. 47), which First Advantage did not oppose. These matters are ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will grant the Motion for Leave to File Supplemental Authority and the Motion to Dismiss.

---

[1] The Second Amended Complaint names the following plaintiffs, which the Court refers to as "Plaintiffs" for ease of reference: Michael Frazier, Chardonney Vick, Kiera Ross, Jarrod Collier, Cheryl Glenn, Shantelle Gregory, Shavon Smith, Brittany Harris, Nicholas Northington, Alexandra Booker, Donald Brasher, Nicole Bolden, Sherod Davis, Juanitra Smith, Shamaar Mack, Ruchanda Gilliam, Christopher Campbell, Amilia Thomas, and Paul Venzor. (*See* Second Am. Compl., ECF No. 34.)

## I.  Factual and Procedural Background

### A.       Summary of Allegations in the Second Amended Complaint[2]

Plaintiffs' three-count Second Amended Class Complaint (the "Second Amended Complaint"), (ECF No. 34), alleges violations of the the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681 et seq., by First Advantage.  Plaintiffs' allegations flow entirely from circumstances surrounding their applications for employment with Wells Fargo.[3]  Reading the allegations favorably, Plaintiffs describe the hiring process as follows.

#### 1.       Wells Fargo Required Applicants to Obtain an Employee Background Check from First Advantage before Hiring

Plaintiffs applied for jobs with Wells Fargo on dates between August 17, 2012, (Donald Brasher), and April 10, 2015, (Nicholas Northington).  (Second Am. Compl. ¶¶ 112, 100.) Plaintiffs allege that Wells Fargo asked First Advantage to "obtain a background check on each of the Plaintiffs," and that "[t]he application process was completed using *First Advantage's* Internet Portal."  (*Id.* ¶ 3 (emphasis added).)  Plaintiffs acknowledged that stipulated facts in the *Manuel* case and those alleged here establish that "Wells Fargo sent applicants to the *First*

---

[2] For the purpose of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in the Second Amended Complaint as true, and draw all reasonable inferences in favor of Plaintiffs.  *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("[A] court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011))).

[3] Plaintiffs are all prior class members who pursued and settled FCRA claims against Wells Fargo in *Manuel v. Wells Fargo Nat'l Assoc.*, No. 3:14cv238, 2016 WL 1070819 (E.D. Va. Mar. 15, 2016).  Plaintiffs assert, and First Advantage does not contest, that "as part of the *Manuel* settlement, the class members retained their right to [pursue] claims against First Advantage."  (Second Am. Compl. ¶ 2, ECF No. 34.)  This case relates to the *Manuel* case.  The Plaintiffs seek liability against First Advantage for providing the subject-matter that Wells Fargo used during the hiring process described in *Manuel*.

*Advantage* portal . . . and that First Advantage then generated a consumer report[4] that was placed online [and] accessible by both First Advantage and Wells Fargo."[5]  (*Id.* ¶ 48.) (emphasis added).)

During the application process and before any report was generated, each plaintiff signed a disclosure authorizing First Advantage to obtain her or his consumer report.  (Second Am. Compl. ¶ 30.)  Plaintiffs allege that "First Advantage created a faux compliance scheme by drafting and providing within its own website a disclosure form it represented would satisfy the disclosure requirements" of the FCRA when, in fact, the form did not.  (*Id.* ¶¶ 28, 29, 167.).

Plaintiffs dub this compliance scheme a ruse because First Advantage created a Disclosure Form that violated the FCRA, provided it to Wells Fargo, and then allowed Wells Fargo to certify compliance to First Advantage using the very same violative form that First Advantage had created.  (Second Am. Compl. ¶ 208.)  This non-compliant form allegedly resulted in an invalid, defective, and improper certification.  (*Id.* ¶¶ 27, 171, 220.)  Moreover, because First Advantage supplied this form for Wells Fargo, Plaintiffs allege that First Advantage "knew or should have known" that the form did not comply with the FCRA.  (*Id.* ¶¶ 32, 172.)

---

[4] For ease of reference, the Court will refer to these reports as "employment-purposed consumer reports" or simply "consumer reports."

[5] The Second Amended Complaint contains several allegations regarding the Internet portal that First Advantage operated.  But Plaintiffs' allegation that First Advantage provided content for Wells Fargo's application portal suggests that more than one portal exists.  (Second Am. Compl. ¶ 185.)  Despite this, the Second Amended Complaint states that Plaintiffs completed the application process for the background check "using First Advantage's Internet portal" and that Wells Fargo "sent applicants to the First Advantage portal."  (*Id.* ¶¶ 3, 48.)  As such, the Court, reading Plaintiffs' factual allegations in the most favorable light, determines that Wells Fargo sent job applicants to the portal First Advantage operated to begin the background check process.

## 2. First Advantage Authored the Defective Disclosure Form That Violates Consumers' Rights

Plaintiffs assert that because "First Advantage knew that Wells Fargo used the disclosure form First Advantage provided with little, if any, alteration, and Wells Fargo certainly did not alter any of the release language, First Advantage . . . caused Wells Fargo to fail to provide Plaintiffs with an [sic] FCRA-compliant disclosure of Wells Fargo's intent to obtain a consumer report about them." (Second Am. Compl. ¶ 186.) Plaintiffs add that, "[u]pon information and belief, First Advantage knowingly allowed Wells Fargo and comparable customer[s] to execute an ineffective certification that Wells Fargo would comply with the disclosure and authorization provisions of the FCRA." (*Id.* ¶ 207.)

An employer's written disclosure that it uses to obtain an employment-purposed consumer report "must be presented in a clear, conspicuous, standalone form." (Second Am. Compl. ¶ 206 (citing *Manuel v. Wells Fargo Bank, Nat'l Ass'n.*, 123 F. Supp. 3d 810, 817–18 (E.D. Va. 2015); *Reardon v. Closet Maid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606 at *5 (W.D. Pa. Dec. 2, 2013)).) Plaintiffs allege that the disclosure form at bar improperly "was buried in a lengthy application and contained unnecessary, additional language including a purported release of Plaintiffs' . . . FCRA rights and thus was not contained in a stand-alone document consisting solely of the disclosure." (*Id.* ¶ 170.) This broad release-of-liability clause—on the same form— used "language [that] attempts to take clear 'advantage' of the use of consumer information, purporting to leave consumers with no legal power over the [Credit Reporting Agency ("CRA")], the information generated by the CRA, or how the information is potentially used against the consumer." (*Id.* ¶ 29.) This disclosure form, Plaintiffs contend, "deprived them of their FCRA-guaranteed rights that their employment-purposed consumer reports are only to be procured by a specific, stand-alone disclosure and authorization," and

"resulted in their consumer reports being issued without the appropriate authorization for . . . access of the reports." (*Id.* ¶¶ 174–75.)

Plaintiffs assert that the lack of proper certification rendered First Advantage's action an unlawful violation of Plaintiffs' FCRA rights because First Advantage "had no statutory permission to provide Wells Fargo with a report about Plaintiffs." (Second Am. Compl. ¶¶ 177–78.) Plaintiffs allege that First Advantage injured them by invading their "right to privacy when it provided highly confidential personal information without a statutory basis for doing so." (*Id.* ¶ 181.) Plaintiffs maintain that this conduct is "precisely the type that Congress sought to prevent—protection of consumer privacy—with the restrictions it has imposed on access to consumers' sensitive, personal information." (*Id.* ¶ 188.) Plaintiffs allege that had they "known that First Advantage would violate the FCRA in revealing their background reports to Wells Fargo, Plaintiffs would never have agreed to what they now know to be Wells Fargo's ineffective authorization." (*Id.* ¶ 184.)

### 3. First Advantage Allegedly Acted Improperly as a User and Not Just as a CRA

Plaintiffs next allege that First Advantage works not only as a CRA, but also as a user of consumer information as defined under FCRA. "Separate and in addition" to the services rendered as a CRA, First Advantage "contracted to participate in the actual adjudication and adverse action process with Wells Fargo." (Second Am. Compl. ¶ 35.) Plaintiffs assert that First Advantage "used the consumer reports and 'adjudicated' Plaintiffs and the putative class members as eligible or ineligible for employment based on criteria specific to Wells Fargo." (*Id.* ¶ 37.) Plaintiffs maintain that First Advantage adjudicated the applicants before sending each Plaintiff's consumer report to Wells Fargo, "compar[ing] the results of its just-performed background check against [Wells Fargo's] . . . hiring criteria and attach[ing] to those results a

'score,' such as 'eligible' or 'ineligible' for employment." (*Id.* ¶ 39.) Plaintiffs state this determination of eligibility for Wells Fargo constituted a "necessary" first step "in order for the consumer to be rejected for employment." (*Id.* ¶ 38.)

This scoring by First Advantage, Plaintiffs allege, amounts to a determination "that [each Plaintiff] could not be hired under Wells Fargo's hiring requirements based on his [or her] consumer report." (*Id.* ¶ 57.) Plaintiffs describe the division of labor during the background check as follows:

> First Advantage initially used a consumer report for determining whether or not an applicant should be adjudicated as "ineligible" based on pre-defined Wells Fargo hiring criteria. Once First Advantage made that decision, it entered it within the applicant's file with the brand or code of "ineligible." While Wells Fargo then would have to later confirm and second that decision, the initial First Advantage adjudication was a necessary condition for the rejection of a consumer applicant and itself constituted an adverse action.

(*Id.* ¶ 5.) According to Plaintiffs, First Advantage's scoring combined with Wells Fargo's confirmation completed the "adverse action" against the consumer applicant. (*Id.*) Each step of the two-part evaluation—the first one taken by First Advantage and the second by Wells Fargo— "constituted part of an 'adverse action' taken against the consumer applicant." (*Id.* ¶ 38.) Plaintiffs allege that "Wells Fargo rarely does more than little with First Advantage's ineligible adjudication, adopting it wholesale and without alteration in nearly every instance."[6] (*Id.* ¶ 42.) Wells Fargo merely "parrot[s] back" the First Advantage determination of ineligibility. (*Id.*) Plaintiffs allege that discovery will show that Wells Fargo "*seldom*" changes the determination, "meaning that a determination of ineligible by First Advantage will *nearly* always result in that applicant being denied employment at Wells Fargo." (*Id.* ¶ 44) (emphases added).) Finally,

---

[6] Plaintiffs note that the allegation that Wells Fargo completed only a cursory review is not inconsistent with the stipulations in *Manuel* because that issue was argued, but not decided, in *Manuel*. (*Id.* ¶ 50.)

Plaintiffs aver that discovery will "further confirm that Wells Fargo believes so strongly in the adjudication grades assigned by First Advantage that it no longer considers an applicant that First Advantage adjudicates ineligible" as a possible hire.  (*Id.* ¶ 45.)

Plaintiffs assert that this process transforms First Advantage into a user as well as a CRA. As such, Plaintiffs state that First Advantage failed to provide them and the putative class members "with at-the-time notice that it reported adverse public record information that was likely to have an adverse effect on their ability to obtain employment as required by the FCRA." (*Id.* ¶ 191.)  Plaintiffs claim this violates their "common-law right to know the information that entities like First Advantage report."  (*Id.* ¶ 192.)  They also contend that this "deprived them of the ability to dispute inaccurate information in their reports or proactively discuss negative information with Wells Fargo before it decided not to hire them."  (*Id.* ¶ 192.)  Plaintiffs note Congress enacted the FCRA precisely to protect consumers from dissemination of private, sensitive, and personal information in this manner.  (*Id.* ¶ 194.)

### 4.     Summary of Claims in the Second Amended Complaint

Based on these aspects of Wells Fargo's application procedures, Plaintiffs contend that First Advantage violated the FCRA in three ways.  In Count One (the "Certification Claim"), Plaintiffs assert that First Advantage willfully violated 15 U.S.C. § 1681b(b)(1)(A)[7] because it did not "receiv[e] a valid certification" from Wells Fargo certifying that Wells Fargo's disclosure form complied with the relevant parts of the FCRA.  (Second Am. Compl. ¶ 224.)  Although Wells Fargo did in fact "execute a[] . . . certification that [it] would comply with the disclosure

---

[7] Section 1681b(b)(1)(A) limits the circumstances under which a consumer reporting agency may furnish consumer reports for employment purposes.  That section provides in relevant part that "[a] consumer reporting agency may furnish a consumer report for employment purposes only if . . . the person who obtains such report from the agency certifies to the agency that . . . the person has complied with paragraph (2) with respect to the consumer report. . . ." 15 U.S.C. § 1681b(b)(1)(A)(i).

and authorization provisions of the FCRA," Plaintiffs contend that First Advantage knew the certification was ineffective because First Advantage "provided the disclosure and authorization form" to Wells Fargo. (*Id.* ¶ 207, 208.) This action, Plaintiffs allege, violated both Plaintiffs FCRA-generated rights and their right to privacy which FCRA was enacted to protect. (*Id.* ¶ 181.)

In Count Two (the "Adverse Action Claim"), Plaintiffs contend that First Advantage violated 15 U.S.C. § 1681b(b)(3)(A)[8] when it "failed to provide a copy of the consumer report used to make an employment decision to Plaintiffs . . . at least five days before taking an adverse action that was based in whole or in part on the consumer report." (Second Am. Compl. ¶ 235.) Because Plaintiffs contend that First Advantage knows "it acts in dual roles as both consumer reporting agency and user when it both generates the consumer report for an employer customer and also adjudicates that applicant's eligibility for hire," (*Id.* ¶ 209), Plaintiffs allege that First Advantage knew that it took an adverse action against Plaintiffs when it adjudicated their consumer reports "ineligible," and it knew that it was therefore required to give a notice of an adverse action, which it failed to do.

In Count Three (the "Notice Claim"), Plaintiffs aver that First Advantage "failed to and could not comply with § 1681k(a)(2)[9] and yet still failed to provide the written § 1681k(a)(1)

---

[8] Subject to exceptions not applicable here, § 1681b(b)(3)(A) provides that, before taking any "adverse action" based on a consumer's employment-purposed consumer report, "the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[] and . . . a description in writing of the rights of the consumer under this subchapter . . ." 15 U.S.C. § 1681b(b)(3)(A).

[9] Section 1681k states:

A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on

---

8

notice at the same time class member reports were provided to Wells Fargo." (Second Am. Compl. ¶ 248.) First Advantage cannot also satisfy § 1681k(a)(2)'s strict requirements because First Advantage "buys bulk data consisting of incomplete and outdated abstracts of courthouse records, which do not meet the requirements of § 1681k(a)(2)." (*Id*. ¶ 193.)

In sum, Plaintiffs contend that First Advantage knew of its obligations under the FCRA, and that those obligations "are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations." (Second Am. Compl. ¶ 203.) Accordingly, Plaintiffs allege First Advantage knowingly violated the FCRA provisions at issue.

**B.    Procedural History**

Plaintiffs filed their original Class Complaint on January 13, 2017. (ECF No. 1.) After First Advantage filed a Motion for More Definite Statement pursuant to Federal Rule of Civil Procedure 12(e),[10] (ECF No. 12), Plaintiffs filed a First Amended Complaint as of right (ECF

---

consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—

(1)    at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or

(2)    maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a)(1–2).

[10] Rule 12(e) provides in full:

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot

No. 14), pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).[11]  First Advantage then filed a

motion to dismiss, arguing that Plaintiffs' First Amended Complaint should be dismissed

pursuant to Federal Rules of Civil Procedure 12(b)(1)[12] and 12(b)(6).[13]  (ECF No. 18.)  After the

motion to dismiss was fully briefed, Plaintiffs filed a Stipulation of Dismissal as to Count Three

of the Complaint, which the Court entered.  (ECF No. 27.)  The Court granted the motion to

dismiss, but granted Plaintiffs leave to amend their Complaint.  (*Frazier I* 17, ECF No. 32.)

Plaintiffs then filed the Second Amended Complaint, which brings three claims:

**Count One:** **Violation of the FCRA, 15 U.S.C. § 1681b(b)(1)(A), the "Certification Claim"** – First Advantage furnished a consumer report for employment purposes without receiving a valid certification from Wells Fargo, and based on a disclosure and authorization form that it knew or should have known was unlawful. (Second Am. Compl. ¶¶ 224–25.)

**Count Two:** **Violation of the FCRA, 15 U.S.C. § 1681b(b)(3)(A), the "Adverse Action Claim"** – First Advantage failed to timely provide a copy of the consumer reports and FCRA summaries of rights to Plaintiffs before taking adverse employment action.  (Second Am. Compl. ¶¶ 235–36.)

---

reasonably prepare a response.  The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.  If the court orders a more definite statement and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

Fed. R. Civ. P. 12(e).

[11] Rule 15(a)(1)(B) allows a party to "amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b), (e), or (f). . . ."  Fed. R. Civ. P. 15(a)(1)(B).  Plaintiffs filed their First Amended Complaint fourteen days after First Advantage filed its Motion for a More Definite Statement.  (*See* ECF Nos. 12, 14.)

[12] Rule 12(b)(1) allows a party to seek dismissal for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).

[13] Rule 12(b)(6) allows a party to seek dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

**Count Three: Violation of the FCRA, 15 U.S.C. § 1681k(a)(1–2), the "Notice Claim" –** First Advantage did not notify Plaintiffs that it would provide Wells Fargo with a consumer report containing public record information likely to have an adverse effect on their ability to obtain employment nor did First Advantage maintain strict procedures to ensure the adverse public record information was complete and up to date. (Second Am. Compl. ¶¶ 248–49.)

Plaintiffs allege that the violations were willful. They seek statutory and punitive damages, and costs and attorney's fees for all three counts. They also seek to certify three classes and one subclass under definitions that are not relevant to the Motion to Dismiss.

First Advantage renewed its Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiffs responded, and First Advantage replied. Plaintiffs also filed a Motion for Leave to File Supplemental Authority.[14] (ECF No. 47.)

## II.  Analysis:  Motion to Dismiss for Lack of Standing

First Advantage argues that Plaintiffs lack standing to pursue their claims against First Advantage because Plaintiffs have alleged no injury-in-fact or, alternatively, because Plaintiffs' injuries are not fairly traceable to First Advantage's purported wrongdoing. Because standing is a jurisdictional question, the Court examines First Advantage's standing argument first. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) ("The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" (quoting *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382 (1884))). The Court finds that Plaintiffs lack standing to pursue Count One, the Certification Claim, and assume without deciding, that Plaintiffs have standing to pursue Count Two, the Adverse Action Claim. Because the Court

---

[14] First Advantage did not file a response to the Motion for Leave to File Supplemental Authority, and the time to do so has expired. The Court will grant the Motion for Leave to File Supplemental Authority. (ECF No. 47.)

will dismiss Count Three on other grounds, the Court does not determine whether Plaintiffs have standing to pursue Count Three.

### A. Legal Standard:  Standing

#### 1. The Three-Part Test Used to Evaluate Article III Standing

Article III, Section 2, clause 1 of the Constitution limits federal court jurisdiction to "Cases" and "Controversies."  U.S. CONST. art. III, § 2, cl. 1.  As the Supreme Court has explained, an "essential and unchanging part of the case-or-controversy requirement" is that a plaintiff must establish Article III standing to sue.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  In *Spokeo, Inc. v. Robins*, the Supreme Court reiterated that, in order to establish standing, a plaintiff must have:  "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant;[15] and[,] (3) that is likely to be redressed by a favorable judicial decision.[16]"  136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61).

As the party invoking federal jurisdiction, Plaintiffs bear the burden of properly alleging standing.  *Lujan*, 504 U.S. at 560; *see also Balzer & Assocs., Inc. v. Union Bank & Trust Co.*, No. 3:09cv273, 2009 WL 1675707, at *2 (E.D. Va. June 15, 2009) ("On a motion to dismiss pursuant to Rule 12(b)(1), the party asserting jurisdiction has the burden of proving subject matter jurisdiction." (citing *Richmond, Fredericksburg & Potomac R.R. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991))).  "Where, as here, a case is at the pleading stage, the plaintiff

---

[15] To show a causal connection, "the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'"  *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

[16] A party may establish the third element of standing by showing "that the injury will be [likely] 'redressed by a favorable decision.'"  *Lujan*, 504 U.S. at 561 (quoting *Simon*, 426 U.S. at 38, 43).  A plaintiff cannot have standing where redressability of an injury is merely "speculative."  *Id.*

must 'clearly . . . allege facts demonstrating' each element." *Spokeo*, 136 S. Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). In a class action matter, courts analyze standing "based on the allegations of personal injury made by the named plaintiffs." *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017) (citing *Doe v. Obama*, 631 F.3d 157, 160 (4th Cir. 2011)). "'Without a sufficient allegation of harm to the named plaintiff in particular, plaintiffs cannot meet their burden of establishing standing.'" *Id.* at 270 (quoting *Doe*, 631 F.3d at 160).

### 2.    <u>Standard to Demonstrate an Injury in Fact</u>

In *Spokeo,* the Supreme Court discussed the manner in which a plaintiff must allege "injury in fact" in order to establish standing for what courts call a "statutory violation" resulting in an "informational injury." *Spokeo*, 136 S. Ct. at 1549. The Supreme Court confirmed that, to establish an injury in fact, a plaintiff must demonstrate that he or she suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). In doing so, the *Spokeo* court refined standing law by defining "particularized" and "concrete" with specificity. *Id.* at 1548–49.

First, the *Spokeo* court found that, for an injury to be "'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* at 1548 (citing *Lujan*, 504 U.S. at 560 n.1). Thus, an "undifferentiated, generalized grievance" that all citizens share would not qualify as particularized. *Lance v. Coffman*, 549 U.S. 437, 442 (2007). "The fact that an injury may be suffered by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Spokeo*, 136 S. Ct. at 1548 n.7. The proper inquiry is whether "each individual suffers a particularized harm." *Id.*

Second, the *Spokeo* court stated that for an injury to be "concrete," it must be "de facto," meaning that it must be "real," and not "abstract." *Id.* at 1548 (citation omitted). That said, an

injury need not be "tangible" in order to be "concrete." *Id.* at 1549. An intangible injury may constitute injury in fact. *Id.* (citations omitted). The *Spokeo* court noted that even the risk of real harm might satisfy concreteness. *Id.* (citations omitted). The United States Court of Appeals for the Fourth Circuit has recently reiterated that a substantive statutory violation may, without more, confer standing to an injured party. *Curtis v. Propel Prop. Tax Funding, LLC, et al.*, 915 F.3d 234, 241 (4th Cir. 2019). In evaluating whether an intangible injury satisfies the "concreteness" requirement, the Supreme Court recounted two important considerations: (1) history, which may reveal "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and, (2) the judgment of Congress, which "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)); *see also Curtis*, 915 F.3d at 241 (recognizing Congressional authority to define substantive rights, the violation of which confer Article III standing).

With respect to this congressionally-defined, or statutory, standing, the *Spokeo* Court explained: "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo*, 136 S. Ct. at 1549. Thus, a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing.") (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)). Regarding the FCRA, the Supreme Court noted that "not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550. For

example, it would be "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

The Supreme Court also observed that in cases in which "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* at 1549 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989)). A plaintiff may therefore suffer "a concrete informational injury where he [or she] is denied access to information required to be disclosed by statute, *and* he 'suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure.'" *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (quoting *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016)). In such a situation, an informational injury can become constitutionally cognizable when "a person lack[s] access to information to which he [or she] is legally entitled *and* . . . the denial of that information creates a 'real' harm with an adverse effect." *Id.* at 345.

### 3. <u>Standard to Demonstrate Causation</u>

At the motion to dismiss stage, a plaintiff seeking to establish standing must also plead facts that support a reasonable inference that the defendant caused the plaintiff's particularized and concrete harm. In the standing context, this requires a showing that the plaintiff's injury is "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560 (quoting *Simon*, 426 U.S. at 41–42); *see also Lane v. Holder*, 703 F.3d 668, 674 (4th Cir. 2012) ("Because any harm to the plaintiffs results from the actions of third parties not before this court, the plaintiffs are unable to demonstrate traceability.").

## B. **Legal Standard:  The Right to Privacy and the FCRA**

At its core, this case concerns the right to privacy in the context of an individual's employment-purposed consumer report.  Because protection of the right to privacy serves as one of the primary purposes of FCRA, the Court first reviews the right to privacy as traditionally understood in American courts before turning to the applicable FCRA provisions.

### 1. **The Right to Privacy**

American courts have long recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other."  RESTATEMENT (SECOND) OF TORTS, § 652A(1).  Claims involving the right to privacy frequently turn on control over, and consent for, the personal information at issue.  *See generally* Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193 (1890).[17]  To that end, the Supreme Court has observed that an individual's right to privacy "encompass[es] the individual's control of information concerning his or her person."  *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989).

---

[17] Brandeis and Warren argued that the common law "secures to each individual the right of determining . . . to what extent his [or her] thoughts, sentiments, and emotions shall be communicated to others."  Warren & Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. at 198.  They further elaborated that

> Under our system of government, [one] can never be compelled to express them (except when upon the witness stand); and even if [a person] has chosen to give them expression, he [or she] generally retains the power to fix the limits of the publicity which shall be given them.  The existence of this right does not depend upon the particular method of expression adopted. . . . [i]n every such case the individual is entitled to decide whether that which is his [or hers] shall be given to the public."

*Id*. at 198–99.

Nonetheless, the right to privacy is not unbounded. Under the common law, it was well-understood that "consent to any publication . . . that invades privacy, creates an absolute privilege." RESTATEMENT (SECOND) OF TORTS, § 652F cmt. b.; *see also Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 254 (Tex. App. 1993) ("[Plaintiff's] consent negates any claim for invasion of privacy."); *Lewis v. LeGrow*, 670 N.W.2d 675, 688 (Mich. Ct. App. 2003) ("Like other torts, there can be no invasion of privacy under the theory of intrusion upon the seclusion of plaintiffs if plaintiffs consented to defendant's intrusion.")[18] Federal statutes similarly recognize that an individual's consent defeats what may otherwise be considered an invasion of privacy. *See, e.g.*, Right to Financial Privacy Act, 12 U.S.C. §§ 3401, 3404 (government must receive the consent of the customer before they can access financial information); Driver's Privacy Protection Act of 1994, 18 U.S.C. §§ 2721–25 (prohibiting states from selling driver's license information without prior consent); Gramm-Leach-Bliley Act of 1999, 15 U.S.C. §§ 6801–09 (limiting information sharing by financial institutions without prior consent by customers). Just as Congress has legislated in other arenas of personal information to protect privacy interests, it similarly sought to limit the use of personal information contained in consumer reports when it enacted the FCRA.

---

[18] In the Second Amended Complaint, Plaintiffs submit that the "FCRA preempts the common-law tort of intrusion upon seclusion." (Second Am. Compl ¶ 176.) While the Court reads Plaintiffs factual allegations favorably, such a claim merely states a conclusion of law. *Ashcroft v. Iqbal*, 556 U.S. 662, 676-79 (2009) (The Court must assume all well-pleaded factual allegations to be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly give rise to an entitlement to relief."). Moreover, some courts have recognized that the FCRA does not preempt common law causes of action. *See, e.g.*, *Wells v. Shelter Gen. Ins. Co.*, 217 F. Supp. 2d 744, 755 (S.D. Miss. 2002) ("FCRA does not completely preempt Plaintiffs' state law claims").

## 2.    **Purposes of the FCRA**

Enacted in 1970, the FCRA enshrined an employee's right to privacy in the modern technological age, while maintaining that proper consent vitiates an invasion of privacy.  As the Senate noted while passing § 1681b(b)(2)(A), that section

> permits employers to obtain consumer reports pertaining to current and prospective employees.  The Committee is concerned, however, that this provision may create an improper invasion of privacy.  Section 403 of this bill requires that employers provide prior written disclosure to current and prospective employees that their consumer reports may be procured in connection with their employment.  Further, employers must obtain a specific or general written authorization prior to procuring such a report.

S. REP. NO. 104-185, at 35 (1995).

From this statement, and a commonsense reading of the statute's plain language, it becomes evident that Congress included the "stand-alone" provision to make the disclosure authorizing the background check obvious to the applicant.  In other words, through § 1681b(b)(1), Congress sought to "prevent employers from hiding the required disclosure among other provisions that could distract the applicant from the disclosure itself, and thereby result in the applicant unknowingly authorizing an employer to obtain his or her background check."  *Morris v. Gen. Info. Servs.*, No. 3: 17cv195, 2018 WL 4609943, at *17 (E.D. Va. Sep. 25, 2018); *see also Groshek v. Time Warner Cable, Inc*., 865 F.3d 884, 887 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 740 (2018) (concluding that the "stand-alone" disclosure requirement "is clearly designed to decrease the risk of a job applicant *unknowingly* providing consent to the dissemination of his or her private information" (emphasis added));  *Shoots v. iQor Holdings US Inc.*, No. 15-CV-563, 2016 WL 6090723, at *7 (D. Minn. Oct. 18, 2016) (concluding that the "stand-alone" disclosure requirement is "(1) to make clear to prospective employees that a consumer report might be obtained, and[,] (2) prevent that disclosure from being hidden among other, innocuous provisions").

Because the stand-alone disclosure functions to require employers to inform employees of a potential background check, Courts have found that a job applicant who unknowingly provides consent due to a faulty disclosure form has sufficiently raised a claim under the FCRA. *See Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 634 (E.D. Va. 2016) (finding plaintiffs' claim survived a motion for summary judgment after alleging defendant failed to supply the plaintiff with a "written disclosure that they intended to obtain a copy of his consumer report"); *Boergert v. Kelly Servs., Inc.*, No. 2:15-cv-4185, 2017 WL 440272, at *2–3 (W.D. Mo. Feb. 1, 2017) (allowing a claim to proceed when the absence of a stand-alone disclosure allegedly confused the plaintiff about what information would be obtained.)  This holds especially true when the disclosure includes a release of liability toward the CRA which is "facially contrary" to the stand-alone disclosure requirement.  *Reardon v. ClosetMaid Corp.*, No. 2:08-cv-01730, 2013 WL 6231606, at *10 (W.D. Pa. Dec. 2, 2013).  By contrast, when a job applicant unambiguously consents to the disclosure of their personal information to an employer, that consent can serve as a "complete defense" to a claim of invasion of privacy.  *Shoots,* 2016 WL 6090723, at *5 (citations omitted); *see also In re Michaels Stores, Inc.*, Fair Credit Reporting Act (FCRA) Litig., MDL No. 2615, 2017 WL 354023, *6, *11, (D.N.J. Jan. 24, 2017) (finding that if the disclosure were presented to a job applicant in "flashing red letters a foot high" it would make "little sense to conclude that the employer's acquisition of a consumer report . . . invaded the applicant's privacy.")  The underlying question is not whether a requirement is "procedural" or "substantive," but whether violation of that requirement resulted in a harm that Congress sought to prevent.[19]  *See Spokeo*, 136 S. Ct. at 1549 (concluding violation of procedural right granted by

---

[19] The Fourth Circuit's decision in *Curtis* lends support for the proposition that a statutory violation that reaches the very purpose of the statute constitutes a substantive violation of a person's rights.  915 F.3d at 241.

statute may be sufficient in and of itself to constitute a concrete injury in fact where Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest).

### C. Analysis: Plaintiffs Have Not Alleged an Invasion of Privacy Claim Sufficient to Confer Standing Under the FCRA

Plaintiffs have failed to demonstrate a sufficient injury-in-fact because they knowingly and actively consented to the dissemination of their information to Wells Fargo when they traveled to the *First Advantage* portal for the explicit purpose of allowing Wells Fargo to "obtain a background check." (Second Am. Compl. ¶ 3.) The Court faces a case that differs materially from nearly every consumer rights case this or other courts have evaluated. The record here plainly shows that, as part of an application to work at Wells Fargo, the Plaintiffs actively went to the CRA, First Advantage, and entered in their private information so First Advantage could provide a background report to Wells Fargo which would use to assess employability. This active and direct provision of private information by the consumer, under these limited facts, amounts to consent under the common law, independent of the violative FCRA forms or

---

In *Curtis*, the Fourth Circuit considered whether a plaintiff had standing to bring suit based on the defendant's alleged violations of the Electronic Funds Transfer Act (the "EFTA"). *See generally Curtis*, 915 F.3d 234. Relevant here, the plaintiff alleged that the lender defendant required him to repay the defendant "by preauthorized electronic funds transfers ("EFTs") and that the required authorization form [did] not contain a space that would allow him to indicate that he declined to do so." *Id.* at 238. The defendant argued that, even if it violated the EFTA, the violation constituted a mere procedural violation, which alone would not confer standing. *Id.* at 241–42.

The Fourth Circuit rejected the argument, finding that the lender violated the plaintiff's substantive statutory rights, explaining: "Congress enacted [the] EFTA to protect 'individual consumer rights' in the context of electronic fund transfers." *Id.* at 241 (quoting 15 U.S.C. § 1693(b)). "Among these substantive rights is the right of a consumer to enter into a credit agreement without being required to agree to preauthorized EFTs. [15 U.S.C.] § 1693k. This is the same right that [the plaintiff] alleges that [the defendant] violated." *Id.*

processes Plaintiffs discuss.[20]  Because Plaintiffs consented to this disclosure, they have not

alleged a sufficient FCRA violation to confer standing.[21]

---

[20] Throughout the Second Amended Complaint, Plaintiffs describe their injury as an invasion-of-privacy caused by First Advantage's improper dissemination of their personal information to Wells Fargo after supplying a defective disclosure form to Wells Fargo.  (Second Am. Compl. ¶¶ 22, 24, 176, 178–80, 188–190.)  By providing Wells Fargo with a defective disclosure form, First Advantage created a "faux compliance scheme" which allowed them to furnish Plaintiffs' private and sensitive information "without a statutory basis for doing so" under 15 U.S.C. § 1681b(b).  (*Id.* ¶¶ 28, 181.)  According to Plaintiffs, the subsequent dissemination of their information harmed Plaintiffs by "invading their privacy."  (*Id.* ¶ 178.)

The Court constrains its ruling to the specific facts of this case:  when potential employees actively and independently visit a CRA's portal with the purpose to provide their personal information to a potential employer, they have consented to that CRA's dissemination of their private information to that specific potential employer.  Because of their affirmative consent to this limited action, they have not suffered an invasion-of-privacy.  No other case presented to the Court shows a substantively similar factual scenario in which the potential employee actively visited the CRA's portal.  *See Sanders v. Glob. Radar Acquisition, LLC*, No. 2:18cv555, 2019 WL 118044, at *2 (M.D. Fla. Jan. 7, 2019) (employer "used [staffing agency's] web-based portal to obtain plaintiffs' consumer reports from [CRA]"); *Robles v. AMPAM Parks Mech., Inc.*, No. 14-023362, 2015 WL 1952311, at *1, *2 (C.D. Cal. Apr. 28, 2015) (employer "requested [p]laintiff's background report from [CRA]" when the employer logged on to CRA's website portal); *Reardon*, 2013 WL 6231606, at *1 (disclosure form provided by employer, not CRA, to potential employee); *In re Michaels Stores, Inc.*, 2016 WL 947150, at *4 (insufficient disclosure provided by employer, not CRA, hidden in "the middle" of each plaintiffs' online job application.)

In so ruling, the Court does not address or limit the possibility that a potential employee could suffer a substantive harm when he or she was deprived of information in the statutorily mandated form under the FCRA.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982) (finding that provision of false information about housing constituted a substantive harm even though plaintiffs did not intend to rent because Congress created an "enforceable right to truthful information concerning the availability of housing"); *Thomas*, 193 F. Supp. 3d at 634 (employer's failure to provide stand-alone disclosure form to plaintiff prior to obtaining a background check violated his or her "legally cognizable right to specific information, the deprivation of which constitutes a concrete injury sufficient to satisfy Article III.")(internal quotations omitted).

[21] The Court's opinion in *Frazier I* focused on traceability concerns about standing.  Specifically, the Court opined that

> even *assuming* that the injuries Plaintiffs suffered from the allegedly inadequate
> disclosure and authorization forms are sufficiently concrete to constitute an injury-
> in-fact, Plaintiffs do not plead facts sufficient to support a reasonable inference that
> these injuries are "fairly . . . trace[able] to the challenged action of the defendant,

### 1.    Count One:  The Certification Claim

In the Certification Claim, Plaintiffs assert that First Advantage violated

§ 1681b(b)(1)(A) of the FCRA by furnishing their employment-purposed consumer reports to

Wells Fargo without receiving a valid certification, as described in § 1681b(b)(2)(A), from Wells

Fargo.  (Second Am. Compl. ¶ 224.)  They assert that First Advantage knew, or should have

known, that it did not receive a valid certification because First Advantage itself provided the

violative disclosure form used in Wells Fargo's application process.  Plaintiffs allege that the

disclosure form they each signed "was buried in a lengthy application and contained

unnecessary, additional language including a purported release of Plaintiffs' and putative class

members' FCRA rights," and thus violated 15 U.S.C. § 1681b(b)(2).  (*Id*. ¶ 167–70.)  This form,

Plaintiffs contend, "deprived them of their FCRA-guaranteed rights that their employment-

purposed consumer reports are only to be procured by a specific, stand-alone disclosure and

authorization," and "resulted in their consumer reports being issued without the appropriate

authorization for . . . access of the reports."  (*Id*. ¶¶ 174–75.)  Furthermore, Plaintiffs claim the

additional release language "attempts to take clear 'advantage' of the use of consumer

---

and not . . . th[e] result [of] the independent action of some third party not before
the court."

(Sept. 24, 2018 Mem. Op. 17–18; ECF No. 32 (quoting *Lujan*, 504 U.S. at 560) (emphasis
added)).  To that end, the Court dismissed the First Amended Complaint without prejudice and
allowed Plaintiffs the opportunity to amend their Complaint.

     In this final decision, however, the Court can no longer make such an assumption about
injury-in-fact.  Supreme Court precedent mandates that when the Court evaluates standing it
must first determine whether an injury-in-fact has been alleged before reaching the traceability
issue.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) ("First and foremost,
there must be alleged (and ultimately proved) an injury in fact—a harm suffered by the plaintiff
that is concrete and actual or imminent, not conjectural or hypothetical." (internal quotation
marks and citations omitted))).  Based on facts now before the Court in the Second Amended
Complaint, the Court must find that Plaintiffs have not alleged a sufficient injury-in-fact of their
right to privacy because they actively allowed First Advantage to furnish their report to Wells
Fargo and consented to it.

information, purporting to leave consumers with no legal power over the CRA.'" (*Id.* ¶ 29.) According to Plaintiffs, this constitutes a violation of their privacy, which Congress sought to protect when it enacted FCRA. (*Id.* ¶¶ 22, 178.)

Because, under common law, consent defeats an invasion of privacy claim, and Plaintiffs actively and knowingly consented to the release of their consumer report when giving their information directly to First Advantage, they have failed to identify a violation of § 1681b(b)(2) sufficient to confer standing.

### a. Section 1681b(b)'s Requirements for CRAs Furnishing Consumer Reports

Section 1681b(b) governs the conditions for furnishing and using consumer reports for employment purposes. It applies to both consumer reporting agencies ("CRA") and users of consumer reports.[22] Section 1681b(b)(1)(A) provides that a CRA may furnish an employment-related consumer report *only if* "the person who obtains such report from the agency certifies to the agency" that it has complied with 15 U.S.C. § 1681b(b)(2), and will comply with § 1681b(b)(3) if that section becomes applicable. 15 U.S.C. § 1681b(b)(1)(A)(i).

Section 1681b(b)(2) provides that "a person may not procure a consumer report, or cause a consumer report to be procured" for employment purposes *unless*:

> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and[,]

> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

---

[22] Neither party disputes that, for purposes of Count One, the Certification Claim, First Advantage acted as a CRA.

15 U.S.C. § 1681b(b)(2)(A).  A consumer report may not be procured unless these requirements are satisfied.

### b. Plaintiffs Fail to Sufficiently Allege a Concrete Injury to Satisfy Article III Standing

Plaintiffs do not allege an injury capable of satisfying Article III standing because, under the common law, their affirmative consent to the background check on the First Advantage portal serves as a complete defense to any harm that Congress sought to protect.  As the Supreme Court reiterated in *Spokeo*, in cases in which "harms may be difficult to prove or measure[,]" "the violation of a procedural right granted by statute can be sufficient . . . [and] a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549 (citing *Akins*, 524 U.S. at 20–25; *Pub. Citizen*, 491 U.S. at 449).  A plaintiff may therefore suffer an injury that establishes Article III standing when he or she "suffers, by being denied access to that information, the type of harm *Congress sought to prevent* by requiring disclosure." *Dreher*, 856 F.3d at 345 (quoting *Jewell*, 828 F.3d at 992).

Under even a liberal reading of these facts, the Plaintiffs falter when saying they have suffered "the type of harm Congress sought to prevent." *Id*.  Although First Advantage provided a disclosure form that failed to conform to the requirements of the statute, FCRA's stand-alone requirement was enacted to "decrease the risk of a job applicant unknowingly providing consent to the dissemination of his or her private information." *Groshek*, 865 F.3d at 887.  The case at bar presents a materially different scenario.  Here, at the behest of Wells Fargo, the Plaintiffs independently went to the First Advantage application portal.  They did so with knowledge that the purpose of the forms they were filling out would allow Wells Fargo to "obtain a background check on each of the Plaintiffs," (Second Am. Compl. ¶ 3), which First Advantage would furnish.  In doing so, by necessity, the Plaintiffs recognized that their personal information would

be disseminated to two parties: (1) First Advantage, with whom they were directly communicating; and, (2) Wells Fargo, who requested that the Plaintiffs travel to the portal for a background check.

After taking such steps, Plaintiffs cannot support a claim that they suffered an invasion of *privacy* by First Advantage's dissemination of certain information to Wells Fargo when the sole reason they went to the First Advantage portal was *to agree to furnish that very information to Wells Fargo*. Courts recognize that "that consent to an invasion of privacy is a complete defense to that act." *Shoots,* 2016 WL 6090723, at *5; *In re Michaels*, 2017 WL 354023 at *10 ("the applicant's consent, after being informed that the employer would be seeking such a report, vitiates any claim of a privacy violation.")

In short, even reading Plaintiffs allegations favorably, the Court must find that Plaintiffs consented to the transfer of their information from First Advantage to Wells Fargo when they logged on to the First Advantage portal to authorize a background check for Wells Fargo. That action eliminated the possible risk of the harm that Congress sought to prevent in enacting § 1681b(b)(2)—that the "applicant [might] unknowingly authoriz[e] an employer to obtain his or her background check"—because the Plaintiffs actively provided their personal information so First Advantage could send it to Wells Fargo could receive it when they first logged on to the portal.[23] *Morris*, 2018 WL 4609943 at * (citing *Groshek*, 865 F.3d at 887).

---

[23] The Court does not foreclose the possibility that failure to comply with the "stand-alone" disclosure requirement could in some cases rise to the level of an injury sufficient to confer standing. Indeed, the plain language of § 1681b(b)(2) requires that an employer provide a disclosure "in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i). Whether violation of the stand-alone disclosure format constitutes an injury-in-fact is a fact intensive inquiry which must be determined on a case by case basis. *See Thomas*, 193 F. Supp. 3d at 631 ("[i]n sum, then, the proposition that '[t]he . . . injury required by Article III may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing"' survives *Spokeo* subject to qualification, depending on the facts of each case.") Here, First

Because Plaintiffs did not suffer a harm that Congress sought to protect through the FCRA, they fail to identify an actionable injury in fact, and lack standing to pursue Count One.

### c.  The Court Cannot Decide Traceability on this Record

While the Court cannot reach it, traceability, as alleged in the Second Amended Complaint, would be a closer call.  But because the Court has determined that Plaintiffs have not alleged an injury-in-fact sufficient to satisfy the first prong of standing, the Court need not determine whether the allegations in Plaintiffs' Second Amended Complaint satisfy traceability, the second prong of the standing doctrine.

After reviewing the Plaintiffs' allegations in the First Amended Complaint, the Court opined that:

> Plaintiffs assert that First Advantage "supplied and reviewed . . . the defective disclosure form," (Am. Compl. ¶ 152), but nowhere do they allege that First Advantage's alleged failure to "obtain a valid certification from Wells Fargo," (Am. Compl. ¶ 10), *caused* Wells Fargo's supposed noncompliance with § 1681b(b)(2). Plaintiffs' alleged deprivation of "their FCRA-guaranteed rights that their employment-purposed consumer reports are only to be procured by a specific, stand-alone disclosure and authorization," (Am. Compl. ¶ 154), is not traceable to First Advantage "'because an intermediary . . . stands directly between the plaintiffs and the challenged conduct in a way that breaks the causal chain.'" *Lane*, 703 F.3d

---

Advantage not only failed to provide a stand-alone disclosure, but included a waiver of Plaintiffs' rights under FCRA which other courts have found expressly contradict the purposes of the stand-alone disclosure requirement.  *See Reardon,* 2013 WL 6231606, at *10

In recent years, district courts have debated whether a procedural violation of the stand-alone disclosure requirement, in the absence of the employee's unambiguous consent, constitutes a substantive invasion of privacy sufficient to confer Article III standing.  *See, generally*, *In re Michaels Stores*, 2017 WL 354023, at *7 n.12; *Stacy v. Dollar Tree Stores, Inc.*, 274 F. Supp. 3d 1355, 1363 (S.D. Fla. 2017); *Graham v. Pyramid Healthcare Sols., Inc.*, No. 8:16-cv-1324-T-30AAS, 2016 WL 6248309, at *2 (M.D. Fla. Oct. 26, 2016); *Witt v. CoreLogic Saferent, LLC*, No. 3:15cv386, 2016 WL 4424955, at *11 (E.D. Va. Aug. 18, 2016); *Boergert*, 2016 WL 6693104, at *3–4; *Gross v. Concorde, Inc.*, No. 8:18cv1755, 2019 WL 354864, at *4(M.D. Fla. Jan. 29, 2019).

Because Plaintiffs in this case proactively consented to the dissemination of their personal information to Wells Fargo when they logged into the First Advantage portal and *have not suffered any injury that implicates their right to privacy*, the Court does not reach that question today.

at 674 (quoting *Frank Krasner Enters., Ltd. v. Montgomery Cnty., Md.*, 401 F.3d 230, 236 (4th Cir 2005)).

(*Frazier I* 17, (footnote omitted).)  As alleged in the First Amended Complaint, Wells Fargo stood directly between the Plaintiffs and First Advantage's alleged actions, which broke the causal chain required to show standing.  For this reason, the Court found that Plaintiffs lacked standing to maintain Count One.  *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (injury must be the result of the challenged conduct); *Frank Krasner, Enters. Ltd.*, 401 F.3d at 236.

The Court recognizes that the Second Amended Complaint includes allegations that would make a finding as to whether Wells Fargo acted as an independent third party harder to determine, especially reading the allegations in a manner favorably to the Plaintiffs. Specifically, Plaintiffs contend that First Advantage caused their injuries because:

> First Advantage provided virtually all of the content for Wells Fargo's application portal, including the disclosure form that First Advantage knew or should have known violated the FCRA.  First Advantage knew that Wells Fargo used the disclosure form First Advantage provided with little, if any, alteration, and Wells Fargo certainly did not alter any of the release language.  First Advantage therefore caused Wells Fargo to fail to provide Plaintiffs with an [sic] FCRA-compliant disclosure of Wells Fargo's intent to obtain a consumer report about them.

(Second Am. Compl. ¶¶ 185–86.)  But based on the allegations in the Second Amended Complaint, the Court must cease its analysis at the first step of standing jurisprudence.  The Court can now more accurately determine whether Plaintiffs allege an injury-in-fact, and cannot reach traceability at this juncture.

### 2.    Count Two:  The Adverse Action Claim

In Count Two, the Adverse Action Claim, Plaintiffs assert that First Advantage violated the FCRA by taking adverse action against them without first providing notice that it intended to do so.  (Second Am Compl. ¶ 236.)  Plaintiffs contend that First Advantage's action in

adjudicating them as ineligible for employment constituted an adverse action and entitled them to a copy of their consumer report and a summary of their rights under the FCRA. Plaintiffs allege that this failure "deprived them of the ability to dispute inaccurate information in their reports or proactively discuss negative information with Wells Fargo before it decided not to hire them." (*Id.* ¶ 191.)

Plaintiffs assert that First Advantage violated 15 U.S.C. § 1681b(b)(3) when it failed to provide them with notice before coding their consumer reports as "ineligible." Section 1681b(b)(3) provides, in relevant part:

> [I]n using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>
> > (i) a copy of the report; and[,]
> >
> > (ii) a description in writing of the rights of the consumer under this subchapter . . . .

15 U.S.C. § 1681b(b)(3)(A). The purpose of this so-called "pre-adverse action notice" is "to provide individuals an opportunity to contest inaccurate information and to avoid an adverse decision by a potential employer based on erroneous information." *Tyus v. U.S. Postal Serv.*, No. 15-cv-1467, 2017 WL 2656181, at *3 (E.D. Wis. June 20, 2017) (quoting *Ramos v. Genesis Healthcare, LLC*, 141 F. Supp. 3d 341, 347 (E.D. Pa. 2015)); *cf. Demmings v. KKW Trucking, Inc.*, No. 3:14cv494, 2017 WL 1170856, at *9 (D. Or. Mar. 29, 2017) ("The Court can envision numerous reasons why such protections were put in place, regardless of accuracy.").

In *Frazier I*, the Court found Plaintiffs established standing to pursue Count Two based on the allegations in the First Amended Complaint. Here, because the Plaintiffs' allegations in the Second Amended Complaint clearly fail a Rule 12(b)(6) analysis, the Court assumes without

deciding that Plaintiffs have standing to pursue Count Two based on the allegations in the operative Second Amended Complaint.

### III.  Analysis:  Motion to Dismiss for Failure to State a Claim

Assuming without deciding that Plaintiffs have standing to pursue Count Two, the Court evaluates whether Plaintiffs plead facts sufficient to state a claim.  Because Plaintiffs fail to allege facts supporting a reasonable inference that First Advantage used their consumer reports for employment purposes when it labeled Plaintiffs as eligible or ineligible for hire based on Wells Fargo's criteria, Plaintiffs fail to state a claim for a violation of § 1681b(b)(3), Count Two.

### A.      Federal Rule of Civil Procedure 12(b)(6) Standard

 "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.")  Mere labels and conclusions declaring that the plaintiff is entitled to relief are not enough.  *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate some factual enhancement within the complaint to cross the line between possibility and plausibility of entitlement to relief."  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a reasonable inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S.

at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  This analysis is context-specific and

requires "the reviewing court to draw on its judicial experience and common sense."  *Francis*,

588 F.3d at 193 (citation omitted).  The Court must assume all well-pleaded factual allegations to

be true and determine whether, viewed in the light most favorable to the plaintiff, they "plausibly

give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 676-79; *see also Kensington*, 684 F.3d at

467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all

of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor

of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).

### B.     Plaintiffs Fail to State a Claim for a Violation of § 1681b(b)(3)

In Count Two, the Adverse Action Claim, Plaintiffs allege that First Advantage acted as

both a CRA and a user when it classified Plaintiffs as "ineligible" and that this act of classifying

Plaintiffs' consumer reports constituted an adverse action.  Plaintiffs state that First Advantage

violated § 1681b(b)(3) by not providing pre-adverse action notice that it would classify them as

ineligible.  Because the allegations in the Second Amended Complaint do not demonstrate that

First Advantage acted beyond its role as a CRA when it marked Plaintiffs as ineligible, the Court

must find that Plaintiffs fail to state a claim for a violation of § 1681b(b)(3).  Accordingly, the

Court will dismiss Count Two, the Adverse Action Claim.

### 1.     Plaintiffs Fail to Allege Sufficient Plausible Facts to Support the Adverse Action Claim Because First Advantage Acted Only as a CRA

Section 1681b(b)(3) requires that, when "using a consumer report for employment

purposes, before taking any adverse action[24] based in whole or in part on the report, the person

---

[24] As the Court discussed in *Frazier I*, the FCRA contains several definitions for "adverse action," two of which are potentially relevant here.  In the employment context, adverse action is "a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee."  15 U.S.C. § 1681a(k)(1)(B)(ii).  Also, under the FCRA's

intending to take such adverse action shall provide to the consumer to whom the report relates" a

copy of the report and a description in writing of the consumer's rights under the FCRA.

15 U.S.C. § 1681b(b)(3)(A). A consumer reporting agency, as defined by the FCRA, is "any

person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in

whole or in part in the practice of assembling or *evaluating* consumer credit information or other

information on consumers *for the purpose of furnishing consumer reports to third parties.*" 15

U.S.C. § 1681a(f) (emphasis added). Under the plain language of this statute, the facts Plaintiffs

allege establish that First Advantage acted as a CRA when it conducted Plaintiffs' background

checks and sent the results to Wells Fargo. Nothing in the Second Amended Complaint, even

read favorably, suggests First Advantage went beyond this role.

 Plaintiffs attempt to extend liability to First Advantage by stating that First Advantage

"acts in dual roles as both consumer reporting agency and user when it both generates the

consumer report for an employer customer and also adjudicates that applicant's eligibility for

hire." (Second Am. Compl. ¶ 209.) But even a liberal reading of the facts alleged do not support

this conclusion. According to Plaintiffs, when they each applied for employment with Wells

Fargo, First Advantage prepared an employment-purposed consumer report on each Plaintiff.

First Advantage then "used the consumer reports and 'adjudicated' Plaintiffs and the putative

---

catch-all definition, adverse action constitutes "an action taken or determination that is . . . made in connection with an application that was made by . . . any consumer [and] . . . adverse to the interests of the consumer." 15 U.S.C. § 1681a(k)(1)(B)(iv).

 Given the well-established principle of statutory interpretation that the specific governs the general, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012), the Court sees the employment-specific definition of adverse action as more applicable. In doing so, the Court follows the lead of other courts that look to the employment specific definition. *See Javid v. SOS Int'l, LTD*, No. 1:12cv1218, 2013 WL 2286046, at *4 (E.D. Va. May 23, 2013) ("For purposes of the employment context, the F[CR]A defines an 'adverse action' as 'a denial of employment or any other decision for employment purposes that adversely affects any current or prospective employee.'" (quoting 15 U.S.C. § 168la(k)(B)(ii)).)

31

class members as eligible or ineligible for employment based on criteria specific to Wells

Fargo." (*Id.* ¶ 37.) Plaintiffs allege this adjudication "constituted an adverse action."[25] (*Id.* ¶ 5.)

Plaintiffs' allegations cannot overcome the plain language of the statute. The facts as

alleged in the Second Amended Complaint do not indicate that First Advantage goes beyond its

role as a CRA providing employment-purposed consumer reports to employers when it labels an

applicant as eligible or ineligible for hire. FCRA defines a CRA as "any person which . . .

regularly engages in whole or in part in the practice of . . . *evaluating* consumer credit

information or other information on consumers *for the purpose of furnishing consumer reports to*

---

[25] Although the Court will dismiss the Adverse Action Claim based on the allegations in the Second Amended Complaint, the Court briefly addresses the Parties' arguments regarding the allegations in the Second Amended Complaint as compared to the stipulated facts in *Manuel*. *See Manuel*, 123 F. Supp. 3d. 810. In *Frazier I*, the Court evaluated Plaintiffs' First Amended Complaint, noting with apprehension that "Plaintiffs' allegations that First Advantage—not Wells Fargo—adjudicated them as eligible or ineligible seem to conflict with stipulated facts in *Manuel* that Wells Fargo—not First Advantage—determined Plaintiffs' eligibility." (Sept. 24, 2018 Mem. Op. 3 n.5.)

Plaintiffs in *Manuel* stipulated that "[a]fter all application forms are completed[,] First Advantage generates the criminal background screening report and provides its findings to Wells Fargo" by entering it into a database to which both First Advantage and Wells Fargo have access. *Manuel*, 123 F. Supp. 3d. at 814. In seeming contrast to this case, Plaintiffs also stipulated that "[m]embers of Wells Fargo's Background Screening Compliance Team then review the results to make a determination as to whether the current or prospective employee was ineligible for the relevant employment position in whole or in part because of the content of the criminal background check." *Id.*

Now, instead, Plaintiffs allege that Wells Fargo adopted First Advantage's label of "eligible" or "ineligible" "wholesale and without alteration in nearly every instance." (Second Am. Compl. ¶ 42.) "There is no adjudication by First Advantage and then some other decision by Wells Fargo—First Advantage's decision is essentially Wells Fargo's decision." (*Id.* ¶ 199.) These allegations present an unavoidable inconsistency with the allegations in *Manuel*.

Ultimately, the Court need not resolve the apparent conflict between the stipulated facts in *Manuel* and the allegations in the Second Amended Complaint. Even accepting as true all well-pleaded factual allegations in the Second Amended Complaint, Plaintiffs do not allege facts from which the Court could draw a reasonable inference that First Advantage went beyond its role as a CRA when it marked Plaintiffs as ineligible based of Wells Fargo's hiring criteria. This is especially true considering that Plaintiffs still acknowledge that Wells Fargo maintained ultimate authority over the "final hiring decision" and would alter First Advantage's coding, if only "rarely." (*Id.* ¶¶ 42, 198.)

*third parties.*"  15 U.S.C. § 1681a(f) (emphasis added).  Here, no party disputes that First

Advantage is a company "regularly engaged in the business of assembling, evaluating, and

disbursing information concerning consumers for the purpose of furnishing consumer reports to

third parties."  (*Id*. ¶ 13.)  Moreover, Plaintiffs allege that First Advantage "adjudicated" the

consumer's employment eligibility "based on pre-defined Wells Fargo hiring criteria."  (*Id*. ¶ 5.)

Based on these alleged facts, First Advantage acted solely as a CRA when it evaluated Plaintiffs'

credit information solely on pre-defined hiring criteria.

### 2. <u>Wells Fargo Made the Ultimate Employment Decision Regarding Plaintiffs</u>

Furthermore, under FCRA, it is "the person *intending* to take such adverse action" who

must "provide [notice] to the consumer to whom the report relates."  15 U.S.C. § 1681b(b)(3)(A)

(emphasis added.)  Under a plain reading of the statute, First Advantage could not form the

requisite intent to take an "adverse action" against Plaintiffs because First Advantage was not

authorized to "den[y] . . . employment" or make "any other decision for employment purposes."

15 U.S.C. § 1681a(K)(1)(B)(ii).  Numerous district courts evaluating First Advantage's role as a

CRA in the employment process have reached the same conclusion.  *See Williams v. First*

*Advantage LNS Screening Sols., Inc.*, 155 F. Supp. 3d 1233, 1246 (N.D. Fla. 2015) (finding the

adjudication of an applicant's credit history "cannot *itself* be an adverse action because it is . . .

an evaluation that results in a *decision* to take adverse action." (emphasis in original)); *Muir v.*

*Early Warning Servs., LLC*, No. CV 16-521 (SRC), 2016 WL 4967792, at *4 (D.N.J. Sept. 16,

2016) ("Whether that process is performed entirely by the employer or relies on a

recommendation by a CRA makes no difference and does not transform an internal 'evaluation

that results in a *decision* to take adverse action' into an adverse action.") (emphasis in original);

*Dahy v. FedEx Ground Package Sys., Inc*., No. 17-cv-1633, 2018 WL 4328003, at *5 (W.D. Pa.

Aug. 3, 2018.)  Wells Fargo, not First Advantage, made the ultimate employment decision which

constituted the adverse action against Plaintiffs.[26]

Because First Advantage simply evaluated Plaintiffs' consumer credit information in

light of the Wells Fargo criteria, the ultimate user of the information, First Advantage's actions,

even as alleged, constitute nothing more than the actions of a CRA, as contemplated by the

FCRA.  Accordingly, even accepting as true the well-pleaded factual allegations in Plaintiffs'

Second Amended Complaint,[27] First Advantage did not act as a "user" under the plain-meaning

---

[26] Plaintiffs rely on *Goode v. LexisNexis Risk & Information Analytics Group., Inc.*, 848 F. Supp. 2d 532, 537 (E.D. Pa. 2012) for the proposition that a CRA can operate as a user under FCRA.  In that case, the district court found that a CRA acted as a "user" when the employer adopted the CRA's coding of potential applicant's wholesale, without further adjudication or discussion.  (*Id*.)  While that case, and Plaintiffs' reliance upon it, are well-reasoned and illustrative of the broader debate concerning the proper definition of an "adverse action," this Court is constrained to join a number of other district courts who have expressed concern that *Goode's* reasoning could introduce ambiguity and redundancy into FCRA's statutory scheme.

*Goode* distinguished itself from cases in which an employer denied employment after "careful consideration of the results of the background check."  *Id*. at 539.  However, it is unclear how a CRA could predict "an employer's subsequent actions or inactions based on a CRA's report."  *Muir*, 2016 WL 4967792, at *4–5; *see also Javid*, 2013 WL 2286046, at *4 ("internal discussions do not have any adverse impact on a plaintiff and a plaintiff is impacted adversely only when a withdrawal of an employment offer actually occurs.")  The CRA would be unable to determine whether they had complied with the FCRA when they furnished the report because their compliance would depend entirely on the employer's subsequent treatment of the provided information.  Here, Plaintiffs repeatedly allege Wells Fargo "seldom" or "rarely" changes First Advantage's coding result, (Second Am. Compl. ¶¶ 42, 44, 50), yet do not elaborate as to how First Advantage could tell what degree of action or inaction Wells Fargo would take with each individual employee when First Advantage furnished its evaluation.

Furthermore, the expansive definition of adverse action in *Goode* would likely require multiple entities to issue pre-adverse action notices to a consumer.  Although the FCRA protects consumers right to contest adverse employment information, it is reasonable to question whether "Congress . . . had such redundancy in mind" when it enacted FCRA.  *Williams,* 155 F. Supp. 3d at 1244.

[27] The Court's analysis on this matter is complicated by the Plaintiff's seemingly inconsistent characterizations of the relationship between First Advantage and Wells Fargo during the employment background check process.  Plaintiffs allege that both First Advantage's

of the statute.  Therefore, the Court cannot infer that First Advantage used "a consumer report for employment purposes" when it determined Plaintiffs' eligibility or ineligibility according to Wells Fargo criteria.[28]  15 U.S.C. § 1681b(b)(3)(A).

Because the Second Amended Complaint fails to plausibly allege facts that First Advantage violated § 1681b(b)(3), the Court will dismiss Count Two, the Adverse Action Claim.

---

action (applying Wells Fargo's hiring criteria to code the applicant) and Wells Fargo's action (denying employment based off the First Advantage report) constituted "part of an 'adverse action' taken against the consumer applicant."  (Second Am. Compl. ¶ 38.)  Similarly, Plaintiffs allege that "both steps and decisions were each *necessary conditions*" for the rejection of their employment, seemingly conflating both entities "use" of the report into one adverse action.  (*Id*. ¶ 38.)  This characterization possibly could raise claim preclusion issues, as Plaintiffs aver that Wells Fargo's allegedly illegal actions (settled in the *Manuel* action) create the very same harm that Plaintiffs allege First Advantage created in this case.  Yet, on the other hand, to view both entities' actions as separate, discrete "adverse actions" would present an inconsistency with Plaintiffs' claim that Wells Fargo "seldom" altered First Advantage's evaluation, and merely "parrot[ed] back" their decision.  (*Id*. ¶¶ 42, 44.)

The *Manuel* case and the issue at bar present a blurry factual scenario.  That said, at times, Defendant's characterization of these inconsistencies in Plaintiffs' pleading could be read to cast aspersions on the candor of Plaintiffss attorneys in bringing claims against both Wells Fargo and First Advantage.  The FCRA provisions in question—and the extent to which they apply to CRAs—is hardly settled law.  Today's ruling that First Advantage and Wells Fargo cannot simultaneously be "users" of Plaintiffs' consumer reports during the same employment action is based on the facts at bar.  This Court has no difficulty in finding that no unprofessional conduct has occurred on either side of the dispute.

[28] As the Court noted in *Frazier I*, the Court "does not conclude that a CRA can *never* 'us[e] a consumer report for employment purposes' and thus face liability for a violation of § 1681b(b)(3)."  (Sept. 24, 2018 Mem. Op. 25 n.25.)  In that Opinion, the Court theorized that a CRA might act as a user when conducting its own background checks, for its own internal hiring purposes.  And cases have discussed the potential to impose liability on a CRA when the CRA acts as an "agent" of the employer.  *See, e.g.*, *Williams*, 155 F. Supp. 3d at 1247.  Whatever facts may support a conclusion that an entity acts as both CRA and user, or that a CRA acts as an agent of the employer, Plaintiffs have not alleged such facts here.

**IV.**
**Analysis: Plaintiffs Fail to State a Claim for Count Three,**
**the Notice Claim, Based on First Advantage's Alleged Violation of Section 1681k(a)**

## A.    Count Three: Procedural Background

Count Three presents a procedural background that differs from that of Counts One and

Two.  Plaintiffs repleaded Count Three verbatim in their Second Amended Complaint—the same

count Plaintiffs voluntarily withdrew in response to First Advantage's initial motion to dismiss

because it did not meet the necessary pleading burden.  For this and other reasons, the Court will

dismiss this claim with prejudice.

### 1.    Arguments Related to the First Amended Complaint

Plaintiffs' Complaint and Amended Complaint initially contained three counts.[29]  In both

prior versions of Plaintiffs' complaint, Count Three stood as the Notice Claim.  (*See* Compl.,

ECF No. 1; Am. Compl., ECF No. 14.)

After Plaintiffs filed their Amended Complaint, First Advantage moved to dismiss Count

Three because Plaintiffs did not allege that the reports "contained incomplete or outdated

information," a necessary element of a § 1681k claim.  (Mem. Supp. First Mot. Dismiss 19, ECF

No. 19) (citations omitted).  First Advantage also argued that "Section 1681k does not apply

until a CRA reports information to a third-party user."  (*Id.* 20–21.)  Because First Advantage

was never a "user" of Plaintiffs' reports, "and no court has ever held a CRA to be a 'user' under

Section 1681k," First Advantage asserted that Plaintiffs did not adequately state a Section 1681k

claim as required to sustain Count Three.  (*Id.*)

---

[29] After First Advantage filed a motion for a more definite statement pursuant to Federal
Rule of Civil Procedure 12(e), (ECF No. 12), Plaintiffs amended their initial complaint as of
right in accordance with Federal Rule of Civil Procedure 15(a)(1)(B), (ECF No. 14).  First
Advantage then moved to dismiss Plaintiffs' Amended Complaint.  (ECF No. 18.)

In response to First Advantage's motion to dismiss, Plaintiffs acknowledged that they could not "meet the necessary pleading burden" for their Notice Claim "[b]ased on two recent [unidentified] decisions of this Court regarding the degree of detail a consumer must allege in their complaint."  (Resp. First Mot. Dismiss 4, ECF No. 22.)  Plaintiffs voluntarily moved to dismiss Count Three without prejudice and stated that they would "seek leave to amend at a later date if appropriate."  (*Id.*)  Thereafter, Plaintiffs, "with the consent of [First Advantage], moved the United States District Court . . . to dismiss . . . without prejudice . . . Count Three of Plaintiff's First Amended Class Action Complaint."  (ECF No. 27.)  The Court dismissed Count Three without prejudice.  (*Id.* 27.)

After the parties agreed to dismiss Count Three, the Court granted First Advantage's motion to dismiss and dismissed without prejudice Plaintiffs' Amended Complaint as to Counts One and Two and granted Plaintiffs leave to amend their Complaint.  (Mem. Op., ECF No. 32; Order, ECF No. 33.)

### 2.    Arguments Related to the Second Amended Complaint

Plaintiffs then brought their Second Amended Complaint against First Advantage.  In their Second Amended Complaint, Plaintiffs reassert Count Three verbatim.  (*See* Am. Compl. ¶¶ 162, 206–18, ECF No. 14; Second Am. Compl. ¶¶ 193, 239–51, ECF No. 34.)

In the instant Motion to Dismiss, First Advantage states that "Plaintiffs previously admitted that [Count Three] did not 'meet the necessary pleading burden.'"  (Mem. Supp. Mot. Dismiss 2, ECF No. 40 (quoting Resp. First Mot. Dismiss 4, ECF No. 22).)  First Advantage repeats that Plaintiffs fail to state a claim pursuant to Section 1681k because Plaintiffs do not allege that First Advantage furnished incomplete or inaccurate reports about them.  (*Id.* 26.)  First Advantage further contends that the relevant statute of limitations bars Plaintiffs from

asserting Count Three—the Notice Claim—because Plaintiffs waited more than two years after learning about the facts giving rise to that claim.  (*Id.* 25.)  *See* 15 U.S.C. § 1681p (stating that claims brought pursuant to FCRA must be brought by the earlier of two dates:  either two years after discovering the alleged violation or five years after the alleged violation occurred).  First Advantage seeks dismissal Count Three with prejudice.  (Mem. Supp. Mot. Dismiss 2–3.)

In response, Plaintiffs ask the Court to dismiss Count Three without prejudice in part because discovery related to the other counts will produce evidence necessary to support their Notice Claim.[30]  (Resp. Mot. Dismiss 2, ECF No. 43.)  Plaintiffs do not address First Advantage's statute of limitations argument, nor do Plaintiffs dispute First Advantage's contention that Plaintiffs failed to allege that their background reports contained incomplete or outdated public record information, as required to bring a claim under Section 1681k(a).  Plaintiffs also do not contest that they restated verbatim their Notice Claim in the Second Amended Complaint, despite previously acknowledging the legal deficiencies of that claim.

---

[30]  This argument mirrors the substantive argument Plaintiffs advanced against the first motion to dismiss.  (*Compare* Resp. First Mot. Dismiss 4, ECF No. 22; *with* Resp. Mot. Dismiss 2, ECF No. 43.)  In response to the first motion to dismiss, Plaintiffs stated:

> As to First Advantage's challenge to Plaintiffs' Section 1681k(a) claim, Plaintiffs have not yet seen their First Advantage reports. Their knowledge is limited to what happened because of those reports. Based on two recent decisions of this Court regarding the degree of detail a consumer must allege in their complaint, they cannot today meet the necessary pleading burden and move to dismiss this claim without prejudice. They will seek leave to amend at a later date if appropriate.

(Resp. First Mot. Dismiss 4.)  In response to the instant motion to dismiss, Plaintiffs state:

> As to First Advantage's challenge to Plaintiffs' Section 1681k(a) claim, Plaintiffs have still not yet been permitted to discover (let alone receive) their First Advantage reports. They therefore ask that the Court's dismissal of this claim be without prejudice, subject to their receipt and review of those reports in discovery.

(Resp. Mot. Dismiss 2.)

## B.    The Court Will Dismiss Count Three

The Court will dismiss Count Three after twice allowing Plaintiffs to amend their

complaint to sufficiently state their claims under the FCRA.  Here, Plaintiffs have not alleged

that First Advantage provided incomplete or outdated reports as required for a Section 1681k

claim.[31]  Because Plaintiffs previously agreed that this claim did not satisfy the Court's pleading

standards, the Court does not see how the same claim, reasserted verbatim in the Second

Amended Complaint, could suffice at this stage.  After considering the multiple opportunities the

Court has provided Plaintiffs to correct their pleading deficiencies for Count Three, the Court

finds appropriate dismissing Plaintiffs' Notice Claim, Count Three.

Plaintiffs chose to replead the same claim that they themselves previously recognized as

not able to "meet the necessary pleading burden."  (Resp. First Mot. Dismiss 4.)  In doing so,

Plaintiffs have failed to discharge their obligations as to Count Three.  This Court cannot allow

any plaintiff, in response to a second motion to dismiss, to replead verbatim that same count

when it was earlier withdrawn by the plaintiff because it did not meet pleading standards.  This is

what Plaintiffs seek to do with Count Three's Notice Claim.  If Plaintiffs have not yet stated a

claim, they should not expect another opportunity to amend in response to First Advantage's

challenges, which a dismissal without prejudice would afford them.  *See, e.g.*, *U.S. ex rel.*

*Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013) ("The granting of leave

---

[31]  To allege a Section 1681k violation, "a plaintiff must show that: '(1) a CRA furnished a consumer report for employment purposes compiled from public records containing adverse information; (2) the CRA failed to maintain strict procedures designed to insure that the information in that report was complete and up to date; *and* (3) the consumer report was either incomplete or not up to date.'"  *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 333 (E.D. Va. 2016) (citation omitted) (emphasis added).  Absent a showing that the defendant CRA obtained inaccurate or incomplete information, a claim brought pursuant to Section 1681k must fail.  *Id.*  Given the Court's decision to dismiss Count Three on the basis that it did not satisfy the Court's pleading standards, the Court need not reach the statute of limitations issue.

to file another amended complaint, when Relator was on notice of the deficiencies before filing the most recent amended complaint, would undermine the substantial interest of finality in litigation and unduly subject Takeda to the continued time and expense occasioned by Relator's pleading failures.") (footnote omitted).  While the Court remains mindful of the legal complexities in this field, Plaintiffs proceed with sophisticated and accomplished legal counsel. Because Plaintiffs failed to distinguish Count Three in the Second Amended Complaint from Count Three in the Amended Complaint, and Plaintiffs previously asked the Court to dismiss Count Three, the Court finds it appropriate to dismiss the Notice Claim with prejudice.

## V.  All Counts Must Be Dismissed with Prejudice

For the reasons articulated below, the Court must dismiss Counts One and Two in the second Amended Complaint with prejudice.  *See Haas v. City of Richmond*, No. 3:17-CV-260, 2018 WL 3826776, at *5 (E.D. Va. Aug. 10, 2018), *aff'd*, 745 F. App'x 503 (4th Cir. 2018) (finding further amendment prejudicial because "Plaintiffs have filed three complaints in this action and, therefore, have had three opportunities to produce a complaint that satisfies federal pleading requirements").  Although Federal Rule of Civil Procedure 15(a) does not "place[ ] [a] specific limit on the number of times a court may grant a party leave to amend," it also does not "require a court to give a party unlimited chances to amend."  STEVEN S. GENSLER, Fed. R. Civ. P. Rules & Commentary 288–89 (2019) (collecting cases).  The Supreme Court instructs that amendment may be denied after "repeated failure to cure deficiencies by amendments previously allowed."  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

When "a party is granted leave to amend but fails to address the problem, that party should not be surprised when the court does not give it a third or fourth chance."  GENSLER, Fed. R. Civ. P. Rules & Commentary 288–89 (2019) (collecting cases).  Here, Plaintiffs twice

received detailed explanations from First Advantage regarding the deficiencies of all counts in their complaints. (*See* ECF Nos. 12, 18.) Allowing a party to repeatedly amend an insufficient complaint could unfairly allow a party to refine a charge with too much insight from the adverse motions to dismiss. GENSLER, Fed. R. Civ. P. Rules & Commentary 288–89 ("the plaintiff should not assume that the court will allow the plaintiff to test the sufficiency of the amended complaint and then get another chance to replead if the amended complaint is found deficient.")

Plaintiffs have twice amended their Complaint. At this juncture, allowing Plaintiffs to amend their complaint a third time would also impair their ability to seek immediate review of their claims at the appellate level. *Goode v. Cent. Va. Legal Aid Soc'y*, 807 F.3d 619, 623–24 (4th Cir. 2015); *Williams v. Virginia*, 773 Fed. App'x 700, 700 (4th Cir. 2019) (per curiam) (after trial court provided plaintiff two opportunities to amend complaint, appellate court directed district court to either dismiss claims with prejudice to render judgment appealable or grant explicit leave to amend). Most fundamentally, allowing Plaintiffs the opportunity to amend a third time is at odds with the obligation of the Court and the parties to construe and to apply the Federal Rules of Civil Procedure in a manner that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

To render this decision a final, appealable judgment, the Fourth Circuit generally requires district courts to dismiss with prejudice all claims as to all parties. *Goode*, 807 F.3d at 623–24. *Lins v. United States*, 771 Fed. App'x 528, 530–31 (4th Cir. 2019) (holding that dismissal without prejudice of plaintiff's complaint was "not a final appealable order"). Otherwise, litigants are left without an appealable decision and have no judicial redress for their claims.

## VI. Conclusion

For the foregoing reasons, the Court will grant the Motion to Dismiss.  (ECF No. 39.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date:  September 23, 2019
Richmond, Virginia